Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

91-915 Hoomohalu Pl
Ewa Beach HI 96706

Civil

Chester A. Staples

Case No. **08-1-1499-09 JPC**

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒Yes  ☐No

–v–

BAE Systems Hawaii Shipyard Inc.

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

STATE OF HAWAII
FILED
2018 SEP 21 PM 3: 24
J. KAPAONA
CLERK

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.  The Parties to This Complaint

#### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Chester Anthony Staples |
| Street Address | 91-915 Hoomohalu Pl. |
| City and County | Ewa Beach, HI |
| State and Zip Code | 96706 |
| Telephone Number | 808-391-3512 |
| E-mail Address | anthonystaples71@yahoo.com |

#### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.



RECEIVED
$315.00

RECEIVED
$200.00

I do hereby certify that this is a full, true and
correct copy of the original on file in this office.

Clerk Circuit Court, First Circuit

Page 1 of 6

**EXHIBIT A**

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

    Name      BAE Systems Hawaii Shipyards Inc.

    Job or Title *(if known)*    Defense Contractor

    Street Address    3049 Valena St. Suite 915

    City and County    Honolulu

    State and Zip Code    HI 96819

    Telephone Number    1-855-223-4782

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

C.  **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | BAE Systems Hawaii Shipyards Inc. |
| Street Address | 3049 Valena St. |
| City and County | Honolulu |
| State and Zip Code | HI  96819 |
| Telephone Number | 1-855-223-4782 |

II.  **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

   *(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

   *(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

   *(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐  Other federal law *(specify the federal law)*:

☐  Relevant state law *(specify, if known)*:

☐  Relevant city or county law *(specify, if known)*:

### III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☒ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

**2011 - 2016**

C.   I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☒ age *(year of birth)* **1953** *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

_____

E.   The facts of my case are as follows.  Attach additional pages if needed.

**- see attachments -**

### III. Statement Claim

1. I was never got evaluated for 6 years.

2. Never promoted until 2017, when I turned them in to EEOC.

3. Even with 30 years experienced I still was not qualified for Journeyman in their eyes.

Frank Brooks set up an evaluation program for me and another African American co-worker to perform for 30 days, when no other workers had to go through it they were just got promoted.

Laurie Maruyama condone the evaluation program and she know it was morally wrong and offensive. And she is the head of the HR management.

Wayne Armstrong pushed his friends up for promotion and disregarded me as far as who I was and what my capabilities were.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

**July 8 2016**

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☒   issued a Notice of Right to Sue letter, which I received on *(date)*   **May 25, 2018**

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## V. Damages

1. $75,000 for each year I was discriminated against, total of $450,00 in 6 years.

2. Punitive damages $300,000 pain and sufferings, defamation of character, ridicule, harassment.

   a.) Defamation of character – They lied about my abilities as a welder shipfitter. Stating that I needed extra supervision to do the job.
   b.) They ridiculed me continuously about my work.
   c.) Harassment – always checking on me to see If I am working, sitting at my job for long periods of time.
   d.) Pain and suffering – The continuous pressure that they put on me to perform my job daily for years.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    9-20-2018

Signature of Plaintiff    _Chester A. Staples_

Printed Name of Plaintiff    _Chester A. Staples_

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____



# HAWAI'I CIVIL RIGHTS COMMISSION

830 PUNCHBOWL STREET, ROOM 411 • HONOLULU, HI 96813-5095 • PHONE: (808) 586-8636 • FAX: (808) 586-8655 • TTY: (808) 586-8692

June 25, 2018

Chester Staples
P.O. Box 235777
Honolulu, HI 96823

Dear Mr. Staples:

      Re:    Notice of Dismissal and Right to Sue in
               Chester Staples vs. BAE Systems Hawaii Shipyards
               <u>FEPA No. 19320; EEOC No. 486-2016-00312</u>

I have received notice that your complaint has been dismissed by the Equal Employment Opportunity Commission, on the basis of Complainant elected court action.

Therefore, in accordance with Hawaii Administrative Rules (H.A.R.) §12-46-11, your case has been closed effective the date of notice at the top of this letter, I am dismissing your complaint and issuing you a right to sue. You have the right to file a private lawsuit against the Respondent in the State Circuit Court within ninety (90) days after receipt of this notice pursuant to Hawaii Revised Statutes §368-12 and H.A.R. §12-46-20. This letter serves as your Right to Sue document and you may be required to provide it to the Court should you decide to file a private lawsuit in this matter.

Sincerely,

William D. Hoshijo
Executive Director

WDH:tsp

c:      BAE Systems Hawaii Shipyards



# HAWAI'I CIVIL RIGHTS COMMISSION

830 PUNCHBOWL STREET, ROOM 411 • HONOLULU, HI 96813-5095 • PHONE: (808) 586-8636 • FAX: (808) 586-8655 • TTY: (808) 586-8692

August 12, 2016

BAE Systems Hawaii Shipyards Inc.
c/o The Corporation Company, Inc.
1136 Union Mall, Suite 301
Honolulu HI  96813

Dear Sir or Madam:

Re:     **Chester Staples vs. BAE Systems Hawaii Shipyards
         FEPA No. 19320; EEOC No. 486-2016-00312**

## NOTICE OF CHARGE OF DISCRIMINATION

You are hereby notified that the enclosed complaint of employment discrimination under the Hawaii Employment Practices Law and the U.S. Civil Rights Act of 1964, as amended, has been filed against your organization.  This complaint will be investigated by the Equal Employment Opportunity Commission under a work-sharing agreement with that agency.

No action is required on your part at this time.  The Equal Employment Opportunity Commission will contact you when investigation commences.

Section 701(a) of the Civil Rights Act prohibits retaliation, and Section 1602.14 of the Commission's Regulations requires the preservation of all personnel records relevant to this charge.

Sincerely,

William D. Hoshijo
Executive Director

WDH:ky

Enclosure

c:  Chester Staples

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Chester Staples** | **(808) 391-9512** | **08-14-1953** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 235777, Honolulu, HI 96823** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **BAE SYSTEMS HAWAII SHIPYARDS** | **101 - 200** | **(808) 423-8888** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Bldg 1444 Dd#4 Cushing St.,  Pearl Harbor, HI 96860** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest **06-06-2016**  Latest **07-03-2016**<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired as a Ship Fitter Welder Level One in 2011.

Throughout my tenure of employment, Respondent has repeatedly failed to promote me to the Journeyman Welder position.  The most recent round of promotions was in or about May 2016, when Respondent promoted younger, non-Black Level One Welders:  Janson Keomaka (Japanese mix/mid-20s) and Jumil Tupas (Filipino/40s).

In or about May 2016, I filed an internal race and age discrimination complaint with Respondent about this matter.  In a meeting with HR Manager Laurie Maruyama, Union Representative Shane Ferreira, and Project Manager Frank Brooks (Black/late 40s), I was told that an evaluation was necessary, and that I would be evaluated for a period of three weeks and then provided some feedback.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x 8-3-16 _____  x *Chester M. Staples* _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br><br>RECEIVED<br>AUG 05 2016<br>EEOC HLO |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

On June 6, 2016, I met with Mr. Brooks and Craft Manager Brian Adams (White/50s), where I was told that my work was not   critical   enough, and that Mr. Brooks needed more   critical   work in order to evaluate me; as such, I was not being promoted.

When I asked why the other personnel were not asked to undergo a similar evaluation period, Mr. Brooks indicated that we were talking about me and not the other personnel. Mr. Adams wanted to see if I could work off a blueprint and follow a plan, so I was to be evaluated for another two weeks.

Since complaining, I have been subjected to further retaliation. On June 30, 2016, I was sent home four hours early because there was not   enough   work. However, there was enough work. On July 1, 2016, I was sent home early due to illness and then not scheduled to work that weekend.

I believe that I have been subjected to discrimination due to my race (Black), age (63), and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended. I further believe that a class of older and Black employees has also been subjected to employment discrimination.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x 8-3-16         x _Chester L. Slyter_<br>Date              Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Chester Staples<br>P.O. Box 235777<br>Honolulu, HI 96823 | From: | Honolulu Local Office<br>300 Ala Moana Blvd<br>Room 4-257<br>Honolulu, HI 96850 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 486-2016-00312 | Rogelio A Colón,<br>Investigator | (808) 541-3118 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          5/25/2016
**Glory Gervacio Saure,**          *(Date Mailed)*
**Local Office Director**

Enclosures(s)

CC:    BAE SYSTEMS HAWAII SHIPYARDS, INC.
       c/o Sarah O. Wang, Esq.
       Marr Jones & Wang
       Pauahi Tower
       1033 Bishop St., Ste. 1500
       Honolulu, HI  96813

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **BAE SYSTEM HAWAII SHIPYARD**<br>**C/O Laurie Maruyama**<br>**HR Manager**<br>**3049 Ualena St., Ste. 910**<br>**Honolulu, HI 96819** | **Chester Staples** |

| THIS PERSON (check one or both) | |
|---|---|
| X | Claims To Be Aggrieved |
| | Is Filing on Behalf of Other(s) |

| EEOC CHARGE NO. |
|---|
| **486-2016-00312** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[X] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources.  If you would like to participate, please say so on the enclosed form and respond by
to
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above.  Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Emily Mauga,**<br>**Office Automation Asst** | **Honolulu Local Office**<br>**300 Ala Moana Blvd**<br>**Room 7-127**<br>**Honolulu, HI 96850**<br>**Fax: (808) 541-3390** |
|---|---|
| *EEOC Representative* | |
| *Telephone*   **(808) 541-3118** | |

Enclosure(s): [ ]  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race  [ ] Color  [ ] Sex  [ ] Religion  [ ] National Origin  [X] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other

**ISSUES:** Promotion, Terms/Conditions

**DATE(S) (on or about):  EARLIEST: 06-06-2016   LATEST: 07-03-2016   And Continuing**

## A CHARGE WILL FOLLOW

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **July 8, 2016** | **Glory Gervacio Saure,**<br>**Local Office Director** | |

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO:   **Hawai'i Civil Rights Commission**
**830 Punchbowl Street**
**Suite 411**
**Honolulu, HI 96813**

Date   **August 9, 2016**
EEOC Charge No.
**486-2016-00312**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| | | |
|---|---|---|
| **Chester Staples** | v. | **BAE SYSTEMS HAWAII SHIPYARDS** |
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC      ☐ _____   on   **Jul 01, 2016**
*Name of FEPA*                                          *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver            ☐ FEPA waives

☐ No waiver requested               ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Glory Gervacio Saure, Local Office Director** | |

| | | |
|---|---|---|
| **Chester Staples** | v. | **BAE SYSTEMS HAWAII SHIPYARDS** |
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **William D. Hoshijo, Director** | |

TO:   **Honolulu Local Office**
**300 Ala Moana Blvd**
**Room 7-127**
**Honolulu, HI 96850**

Date   **August 9, 2016**
EEOC Charge No.
**486-2016-00312**

FEPA Charge No.

# MARR JONES & WANG

### A LIMITED LIABILITY LAW PARTNERSHIP

*Labor and Employment Law*

November 20, 2017

*Via EEOC Portal*

Mr. Rogelio Colón
U.S. Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Boulevard, Room 7-127
Honolulu, Hawaii 96850

Re:   **Chester Staples vs. BAE Systems Hawaii Shipyards Inc.**
      **EEOC No. 486-2016-00312**

Dear Mr. Colón:

This letter confirms that Marr Jones & Wang, LLP has been retained to represent BAE Systems Hawaii Shipyards Inc. in the above-referenced matter. Please direct all future correspondence to my attention. Further to the voice mail messages we have traded, I will contact you shortly regarding your request for a fact-finding conference.

Thank you for your courtesy and assistance in this matter. Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Sarah O. Wang

SW:cs 1035926

## ROGELIO COLON

| | |
|---|---|
| **From:** | ROGELIO COLON |
| **Sent:** | Wednesday, November 15, 2017 9:59 AM |
| **To:** | 'amanda.v.burns@baesystems.com' |
| **Cc:** | 'marcie.cornfield@baesystems.com' |
| **Subject:** | FW: EEOC Charge No. 486-2016-00312 (Chester Staples v. BAE Systems, Inc.) |

Good afternoon, Ms. Burns. I accidentally misspelled your name in the original e-mail and e-mail address. Please accept my apologies and refer to the e-mail below. Thank you.

**From:** ROGELIO COLON
**Sent:** Wednesday, November 15, 2017 9:57 AM
**To:** 'amanda.v.barnes@baesystems.com' <amanda.v.barnes@baesystems.com>
**Cc:** 'marcie.cornfield@baesystems.com' <marcie.cornfield@baesystems.com>
**Subject:** EEOC Charge No. 486-2016-00312 (Chester Staples v. BAE Systems, Inc.)

Good afternoon, Ms. Burns.

My name is Rogelio Colón, and I am the EEOC Investigator assigned to the above-referenced charge. I would like to conduct a fact-finding conference with the following management personnel at our office in Honolulu:

1. Frank Brooks, Director of Operations
2. Brian Adams, Craft Manager
3. Wayne Armstrong, Craft Foreperson

Please confirm that the listed personnel still work for BAE, and provide their availability for the conference for early or mid-December 2017. The conference will require that all requested personnel be present, and I am also asking that someone with settlement authority also be available (physically or via the phone). As the Director of HR, you may also attend (either physically or via the phone). I normally hold the conference beginning at 10 a.m. HST, but we can begin it earlier if we need to due to the time difference, as we are currently five (5) hours behind EST. The conference will also be attended by Mr. Staples, and I will control and direct the conference. Once we have agreed upon a date in which everyone is available, I will send out the notice of fact-finding conference as confirmation. Please provide a response at your earliest convenience, and do not hesitate to contact me should you have any questions. Thank you.

**Rogelio A Colón | Senior Investigator (Bi-lingual Spanish)**
EEOC – Honolulu Local Office | PJKK Federal Building
300 Ala Moana Blvd Rm 4-257 | Honolulu HI 96850
808-541-3121 Direct | 808-541-3118 Main | 808-541-3390 Fax

x-microsoft-antispam:
UriScan:;BCL:0;PCL:0;RULEID:(22001)(4534020)(4602075)(4627115)(201703031133081)(201702281549075)(2017052603258);SRVR:BY2PR09MB0261;

x-ms-traffictypediagnostic: BY2PR09MB0261:

x-microsoft-antispam-prvs:
<BY2PR09MB0261E4AFA096FA9DB54938D59C290@BY2PR09MB0261.namprd09.prod.outlook.com>

x-exchange-antispam-report-test: UriScan:(227612066756510)(21748063052155);

x-exchange-antispam-report-cfa-test:
BCL:0;PCL:0;RULEID:(100000700101)(100105000095)(100000701101)(100105300095)(100000702101)(100105100095)(6040450)(2401047)(8121501046)(5005006)(3231022)(3002001)(10201501046)(9300
6095)(93001095)(100000703101)(100105400095)(6041248)(20161123564025)(20161123562025)(201703131423075)(201702281528075)(201703061421075)(201703061406153)(20161133558100)(201611235
55025)(20161123560025)(6072148)(201708071742011)(100000704101)(100105200095)(100000705101
)(100105500095);SRVR:BY2PR09MB0261;BCL:0;PCL:0;RULEID:(100000800101)(100110000095)(100000
801101)(100110300095)(100000802101)(100110100095)(100000803101)(100110400095)(10000080410
1)(100110200095)(100000805101)(100110500095);SRVR:BY2PR09MB0261;

x-forefront-prvs: 0492FD61DD

x-forefront-antispam-report:
SFV:NSPM;SFS:(10019020)(6009001)(346002)(376002)(189002)(199003)(99286004)(25786009)(6873
6007)(5640700003)(5630700001)(2501003)(50986999)(2900100001)(2906002)(54896002)(566030000
1)(6436002)(9686003)(6306002)(86362001)(6506006)(54356999)(189998001)(77096006)(74316002)
(53936002)(8936002)(55016002)(230783001)(53346004)(101416001)(6916009)(97736004)(47860000
1)(7696004)(450100002)(2351001)(4326008)(790700001)(3846002)(555904003)(316002)(102836003
)(81156014)(14454004)(6116002)(3280700002)(72206003)(8676002)(105586002)(33656002)(106356
001)(3660700001)(81166006)(7736002)(66066001);DIR:OUT;SFP:1102;SCL:1;SRVR:BY2PR09MB0261;H
:BY2PR09MB0264.namprd09.prod.outlook.com;FPR:;SPF:None;PTR:InfoNoRecords;MX:1;A:1;LANG:en
;

received-spf: None (protection.outlook.com: EEOC.GOV does not designate
  permitted sender hosts)

spamdiagnosticoutput: 1:99

spamdiagnosticmetadata: NSPM

Content-Type: multipart/alternative;
        boundary="_000_BY2PR09MB0264C399055753EB4B889A309C290BY2PR09MB0264namp_"

MIME-Version: 1.0

X-OriginatorOrg: eeoc.gov

X-MS-Exchange-CrossTenant-Network-Message-Id: a32e4b00-4a93-4def-f46b-08d52c62ffd1

X-MS-Exchange-CrossTenant-originalarrivaltime: 15 Nov 2017 19:56:45.0660
  (UTC)

X-MS-Exchange-CrossTenant-fromentityheader: Hosted

X-MS-Exchange-CrossTenant-id: 3ba5b943-4e56-4a2f-9b91-b1f1c37d645b

X-MS-Exchange-Transport-CrossTenantHeadersStamped: BY2PR09MB0261



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Honolulu Local Office**

300 Ala Moana Boulevard, Room 7-127
P. O. Box 50082
Honolulu, HI 96850-0051
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Honolulu Status Line: (866) 408-8075
Honolulu Direct Dial: (808) 541-3118
TTY (808) 541-3131
FAX (808) 541-3390
Website: www.eeoc.gov

March 3, 2017

Chester Staples
P.O. Box 235777
Honolulu, HI 96823

Re: EEOC Charge No. 486-2016-00312
Chester Staples v. BAE SYSTEMS HAWAII SHIPYARDS

Dear Mr. Staples:

Enclosed with this letter is a copy of the Respondent's Position Statement with non-confidential attachments. **By accepting these documents, you agree that you will only share the contents with persons in a privileged relationship to you, such as a spouse, clergy, or legal, medical or financial advisor.**

This is your opportunity to provide additional information you feel is relevant to support your charge. If you would like to respond to what the Respondent says in its Position Statement, please do so no later than **20 calendar days from the date of this letter.**

Be sure to include your charge number on your correspondence. If you disagree with any of the information the Respondent has submitted, please point out specifically what you believe is incorrect and explain what you believe to have happened. Also, please give us any additional evidence or information that you have not already provided that you believe supports your case. For example, if applicable, identify any additional witnesses, their contact information, and a brief summary of what you think they will say.

Any information you provide will be taken into consideration during the investigation of your charge. We encourage you to contact us promptly with your response. Our address is listed in the letterhead and my email address is emily.mauga@eeoc.gov. My telephone number is 808-541-3118 and I am available Monday-Thursday from 8:00 am to 4:00 pm.

If we do not hear from you or if it is determined that no further investigation is warranted you may soon receive a Dismissal and Notice of Right to Sue. The Dismissal and Notice of Right to Sue is final. It will explain your right to pursue the matter in court. If you want to pursue your charge, you may do so on your own by filing in Federal District Court within 90-days of receiving the Notice of Right to Sue. If you do not file a lawsuit within the required 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC.

Thank you for your cooperation.

Sincerely,

*Emily Mauga*

Office Automation Assistant

Director
Equal Employment Opportunity Commission
300 Ala Moana Blvd, Room 7-127
P.O. Box 50082
Honolulu, HI 96850

Dear Director:

The undersigned would like to request a Notice of Right to Sue authorization on my charge of discrimination (**EEOC Charge Number 486-2016-00312**) because I intend to pursue this matter through private litigation.

I have not been coerced, pressured, intimidated or threatened into making this request. I have had explained to me my options, legal rights and I voluntarily elect to make this request with the full knowledge that the EEOC will terminate any and all actions in regard to my involvement in this case.  I am also aware that I must file a private suit in Federal District Court within ninety (90) days from the date of issuance of the Notice of Right to Sue.

_5-2-18_
Date

_Chester A. Staples_
SIGNATURE

_Chester A. Staples_
PRINT FULL NAME

_91-915 Hoomahalu Pl_
HOME ADDRESS

_Ewa Beach HI 96706_
CITY, STATE, ZIP CODE

_808-391-3512_
TELEPHONE NUMBER-HOME

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Chester Staples** | **(808) 391-9512** | **08-14-1953** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 235777, Honolulu, HI 96823** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BAE SYSTEMS HAWAII SHIPYARDS** | **101 - 200** | **(808) 423-8888** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Bldg 1444 Dd#4 Cushing St.,  Pearl Harbor, HI 96860** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06-06-2016**   Latest **07-03-2016**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired as a Ship Fitter Welder Level One in 2011.

Throughout my tenure of employment, Respondent has repeatedly failed to promote me to the Journeyman Welder position.  The most recent round of promotions was in or about May 2016, when Respondent promoted younger, non-Black Level One Welders:  Janson Keomaka (Japanese mix/mid-20s) and Jumil Tupas (Filipino/40s).

In or about May 2016, I filed an internal race and age discrimination complaint with Respondent about this matter.  In a meeting with HR Manager Laurie Maruyama, Union Representative Shane Ferreira, and Project Manager Frank Brooks (Black/late 40s), I was told that an evaluation was necessary, and that I would be evaluated for a period of three weeks and then provided some feedback.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |

x 8-3-16     x *[signature]*
Date        Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

RECEIVED
AUG 05 2016
EEOC HLO

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

On June 6, 2016, I met with Mr. Brooks and Craft Manager Brian Adams (White/50s), where I was told that my work was not "critical" enough, and that Mr. Brooks needed more "critical" work in order to evaluate me; as such, I was not being promoted.

When I asked why the other personnel were not asked to undergo a similar evaluation period, Mr. Brooks indicated that we were talking about me and not the other personnel. Mr. Adams wanted to see if I could work off a blueprint and follow a plan, so I was to be evaluated for another two weeks.

Since complaining, I have been subjected to further retaliation. On June 30, 2016, I was sent home four hours early because there was not "enough" work. However, there was enough work. On July 1, 2016, I was sent home early due to illness and then not scheduled to work that weekend.

I believe that I have been subjected to discrimination due to my race (Black), age (63), and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended. I further believe that a class of older and Black employees has also been subjected to employment discrimination.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x 8-3-16       x *Chester L. Style*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 212-A (3/98)

## U.S. Equal Employment Opportunity Commission

TO:   **Hawai'i Civil Rights Commission**
     **830 Punchbowl Street**
     **Suite 411**
     **Honolulu, HI 96813**

16  AUG 10  ₉11 :26

Date   **August 9, 2016**
EEOC Charge No.
     **486-2016-00312**
FEPA Charge No.   AUG 1 5 2016
     19320

RECEIVED
EEOC HLO

CHARGE TRANSMITTAL

SUBJECT:

| **Chester Staples** | v. | **BAE SYSTEMS HAWAII SHIPYARDS** |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC    ☐ _____   on    **Jul 01, 2016**
                             *Name of FEPA*                       *Date of Receipt*

☒ Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

    ☐ EEOC requests a waiver            ☐ FEPA waives

    ☐ No waiver requested            ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

Typed Name and Title of EEOC or FEPA Official         Signature/Initials
    **Glory Gervacio Saure, Local Office Director**

| **Chester Staples** | v. | **BAE SYSTEMS HAWAII SHIPYARDS** |
|---|---|---|
| *Charging Party* | | *Respondent* |

### TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☒ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.
    PER ABOVE, EEOC TO PROCESS

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

Typed Name and Title of EEOC or FEPA Official         Signature/Initials
    **William D. Hoshijo, Director**

TO:   **Honolulu Local Office**
     **300 Ala Moana Blvd**
     **Room 7-127**
     **Honolulu, HI 96850**

Date   **August 12, 2016**
EEOC Charge No.
     **486-2016-00312**
FEPA Charge No.
     19320



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
P. O. Box 50082
Honolulu, HI 96850-0051
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Honolulu Status Line: (866) 408-8075
Honolulu Direct Dial: (808) 541-3118
TTY (808) 541-3131
FAX (808) 541-3390
Website: www.eeoc.gov

Respondent: BAE SYSTEMS HAWAII SHIPYARDS
EEOC Charge No.: 486-2016-00312
FEPA Charge No.:

August 9, 2016

Chester Staples
P.O. Box 235777
Honolulu, HI 96823

Dear Staples:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

    [ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)
    [ X ]    The Age Discrimination in Employment Act (ADEA)
    [ ]      The Americans with Disabilities Act (ADA)
    [ ]      The Equal Pay Act (EPA)
    [ ]      The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to Hawai'i Civil Rights Commission 830 Punchbowl Street Suite 411 Honolulu, HI 96813 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Glory Gervacio Saure
Local Office Director
(808) 541-3118

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov
Enclosure(s)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Chester Staples** | **(808) 391-9512** | **08-14-1953** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 235777, Honolulu, HI 96823** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BAE SYSTEMS HAWAII SHIPYARDS** | **101 - 200** | **(808) 423-8888** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Bldg 1444 Dd#4 Cushing St., Pearl Harbor, HI 96860** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06-06-2016 | 07-03-2016 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired as a Ship Fitter Welder Level One in 2011.

Throughout my tenure of employment, Respondent has repeatedly failed to promote me to the Journeyman Welder position. The most recent round of promotions was in or about May 2016, when Respondent promoted younger, non-Black Level One Welders: Janson Keomaka (Japanese mix/mid-20s) and Jumil Tupas (Filipino/40s).

In or about May 2016, I filed an internal race and age discrimination complaint with Respondent about this matter. In a meeting with HR Manager Laurie Maruyama, Union Representative Shane Ferreira, and Project Manager Frank Brooks (Black/late 40s), I was told that an evaluation was necessary, and that I would be evaluated for a period of three weeks and then provided some feedback.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x _8-3-16_  x _Chester M. Staples_<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

**RECEIVED**
AUG 0 5 2016
EEOC HLO |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 486-2016-00312 |

| Hawai'i Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

On June 6, 2016, I met with Mr. Brooks and Craft Manager Brian Adams (White/50s), where I was told that my work was not critical enough, and that Mr. Brooks needed more critical work in order to evaluate me; as such, I was not being promoted.

When I asked why the other personnel were not asked to undergo a similar evaluation period, Mr. Brooks indicated that we were talking about me and not the other personnel. Mr. Adams wanted to see if I could work off a blueprint and follow a plan, so I was to be evaluated for another two weeks.

Since complaining, I have been subjected to further retaliation. On June 30, 2016, I was sent home four hours early because there was not enough work. However, there was enough work. On July 1, 2016, I was sent home early due to illness and then not scheduled to work that weekend.

I believe that I have been subjected to discrimination due to my race (Black), age (63), and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended. I further believe that a class of older and Black employees has also been subjected to employment discrimination.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x _8-3-16_   x _Chester A. Slyth_<br>Date           Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

 **U.S. Equal Employment Opportunity Commission**
**Honolulu Local Office**
300 Ala Moana Blvd
Room 7-127
Honolulu, HI 96850

## NOTICE OF CHARGE OF DISCRIMINATION

(This Notice replaces EEOC FORM 131)

### DIGITAL CHARGE SYSTEM

August 9, 2016

**To:** Ms. Laurie Maruyama
HR Manager
BAE SYSTEM HAWAII SHIPYARD
laurie.maruyama@baesystems.com

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Chester Staples, under: Title VII of the Civil Rights Act (Title VII) and The Age Discrimination in Employment Act (ADEA). The circumstances of the alleged discrimination are based on Retaliation, Race, and Age, and involve issues of Terms/Conditions and Promotion that are alleged to have occurred on or about Jun 06, 2016 through Jul 03, 2016 and may be continuing.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please follow these instructions to view the charge within ten (10) days of receiving this Notice:

1. Access EEOC's secure online system: **https://nxg.eeoc.gov/rsp/login.jsf**
2. Enter this EEOC Charge No.: **486-2016-00312**
3. Enter this password: **OX4272BG**

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses, and identify your EEOC point of contact for this charge.

If you are unable to log into the EEOC Respondent Portal or have any questions regarding the Digital Charge System, you can send an email to HLOACT@eeoc.gov.

## Preservation of Records Requirement

EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see http://eeoc.gov/employers/recordkeeping.cfm.

## Non-Retaliation Requirements

The laws enforced by the EEOC prohibit retaliation against any individual because s/he has filed a charge, testified, assisted or participated in an investigation, proceeding or hearing under these laws. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. For more information, see http://www.eeoc.gov/laws/types/facts-retal.cfm.

## Legal Representation

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please provide the attorney's contact information when you log in to the online system.

Please retain this notice for your records.

 **U.S. Equal Employment Opportunity Commission**

## FEDERAL INVESTIGATION:
## REQUEST FOR POSITION STATEMENT
## AND SUPPORTING DOCUMENTARY EVIDENCE

EEOC hereby requests that your organization submit within 30 days a Position Statement setting forth all facts which pertain to the allegations in the charge of discrimination under investigation, as well as any other facts which you deem relevant for EEOC's consideration.

We recommend you review EEOC's resource guide on "Effective Position Statements" as you prepare your response to this request.

### Fact-Based Position Statement
This is your opportunity to raise any and all defenses, legal or factual, in response to each of the allegations of the charge. The position statement should set forth all of the facts relevant to respond to the allegations in the charge, as well as any other facts the Respondent deems pertinent to EEOC's consideration. The position statement should only refer to, but not identify, information that the Respondent asserts is sensitive medical information, or confidential commercial or financial information.

EEOC also requests that you submit all documentary evidence you believe is responsive to the allegations of the charge. If you submit only an advocacy statement, unsupported by documentary evidence, EEOC may conclude that Respondent has no evidence to support its defense to the allegations of the charge.

EEOC may release your position statement and non-confidential attachments to the Charging Party and her representative and allow them to respond to enable the EEOC to assess the credibility of the information provided by both parties. It is in the Respondent's interest to provide an effective position statement that focuses on the facts. EEOC will not release the Charging Party's response, if any, to the Respondent.

If no response is received to this request, EEOC may proceed directly to a determination on the merits of the charge based on the information at its disposal.

### Signed by an Authorized Representative
The Position Statement should be signed by an officer, agent, or representative of Respondent authorized to speak officially on its behalf in this federal investigation.

## Segregate Confidential Information into Separately Designated Attachments

If you rely on confidential medical or commercial information in the position statement, you should provide such information in separate attachments to the position statement labeled "Sensitive Medical Information," "Confidential Commercial or Financial Information," or "Trade Secret Information" as applicable. Provide an explanation justifying the confidential nature of the information contained in the attachments. Medical information about the Charging Party is not sensitive or confidential medical information in relation to EEOC's investigation.

Segregate the following information into separate attachments and designate them as follows:

   a. Sensitive medical information (except for the Charging Party's medical information).
   b. Social Security Numbers
   c. Confidential commercial or financial information.
   d. Trade secrets information.
   e. Non-relevant personally identifiable information of witnesses, comparators or third parties, for example, social security numbers, dates of birth in non-age cases, home addresses, personal phone numbers and email addresses, etc.
   f. Any reference to charges filed against the Respondent by other charging parties.

## Requests for an Extension

If Respondent believes it requires additional time to respond, it must, at the *earliest possible time* in advance of the due date, make a written request for extension, explain why an extension is necessary, and specify the amount of additional time needed to reply.  Submitting a written request for extension of time does not automatically extend the deadline for providing the position statement.

## Upload the Position Statement and Attachments into the Respondent Portal

You can upload your position statement and attachments into the Respondent Portal using the **+ Upload Documents** button. Select the "Position Statement" Document Type and click the **Save Upload** button to send the Position Statement and attachments to EEOC. Once the Position Statement has been submitted, you will not be able to retract it via the Portal.



### U.S. Equal Employment Opportunity Commission
### Honolulu Local Office

300 Ala Moana Blvd
Room 7-127
Honolulu, HI 96850
(808) 541-3118
TTY (808) 541-3131
Fax: (808) 541-3390

Respondent: BAE SYSTEMS HAWAII SHIPYARDS
EEOC Inquiry No.: 486-2016-00312

July 12, 2016

Chester Staples
P.O. Box 235777
Honolulu, HI 96823

Dear  Staples:

This is with reference to your recent inquiry (an office visit, phone call, correspondence, or electronically submitted intake questionnaire) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]     Title VII of the Civil Rights Act of 1964 (Title VII)

[ X ]     The Age Discrimination in Employment Act (ADEA)

[  ]     The Americans with Disabilities Act (ADA)

[  ]     The Equal Pay Act (EPA)

[  ]     The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. To enable proper handling of this action by the Commission you should:

(1)  Review the enclosed charge form and make corrections.

(2)  Sign and date the charge in the bottom left hand block where I have made an "X".

(3)  Return the signed charge to this office.

<u>These steps are necessary if you wish to file a charge.</u>  No charge has been filed because the correspondence you submitted was not signed. Since charges should be filed within the time limits imposed by law, <u>please complete these steps as soon as possible</u>. Please call me at the number listed below if you have any questions. If you have to call long distance, please call collect.

IF WE DO NOT RECEIVE YOUR SIGNED CHARGE WITHIN 30 DAYS OR HEAR FROM YOU WITHIN 30 DAYS, WE WILL ASSUME THAT YOU DECIDED NOT TO FILE A CHARGE OF DISCRIMINATION WITH EEOC.

Please be aware that after we receive your signed charge, the EEOC will send a copy of the charge to Hawai'i Civil Rights Commission 830 Punchbowl Street Suite 411 Honolulu, HI 96813 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

Please use the "EEOC Inquiry No." listed at the top of this letter whenever you call us. Please notify this office of any change in address or of any prolonged absence from home.  Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.

Sincerely,

_____/s/_____

Rogelio A. Colon
Investigator
(808) 541-3118

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

**Intake Interview**
**Chester Staples**
**7.7.2016**

I was hired as a Ship Fitter Welder Level One in 2011.

I was just getting back into the workforce, and they asked me to take a lower-level position. I told them that I would, as I was hungry for work.

I have over 30 years of welding experience.

My direct supervisor is Waylen Armstrong, Welding Foreman (local Portuguese mix/mid-30s).

I will be 63 next month.

I have not been given a performance evaluation or been evaluated for performance during my entire tenure of employment. When I asked him about it, he said that I was not ready yet. The promotions are up to Mr. Armstrong and whoever the lead person is.

I have all of this experience (see my statement), and they are promoting younger lesser-qualified people. Two Level 1 Welders were promoted to Journeyman about a month and a half ago: Janson Keomaka (Japanese mix/mid-20s) and Jumil Tupas (40s/Filipino). Tupas has been with the shop for about 8 months to a year, and Keomaka came over from the Labor shop. He has been in our shop for 3 years. He is close friends with Waylen.

The promotions go to the Craft Manager, and he lets the Union know.

Another Black gentleman, Corey Victorian (48), has also repeatedly been passed over for promotion. Corey has been in the welding shop for 5 years. He may file a charge, and he has treated me the same way.

I filed a discrimination complaint with HR Manager Laurie Maruyama about a month and a half ago when I found out they were promoted. I mentioned that I had not been promoted due to my race and my age. We met with HR, and she took down notes. She called us back for a meeting with the Project Manager Frank Brooks (Black/late 40s), Union Rep. Shane Ferreira and Laurie, and he said that he needed an evaluation on me. He set up a timeframe to check out my jobs (three weeks) and that they would give me feedback at the end.

On June 6, 2016, I was told to meet with Craft Manager Brian Adams (White/50s) and Frank. I was told that my work was not "critical" enough, and that he needed more "critical" work to evaluate my work. So he told me that I was not getting promoted. When I asked about the other welders and how they have not been forced to do this, he

didn't want to talk about it.  He said we would look at it for another two weeks, and that we would reevaluate.  But it has been a month, so I came to you.

Mr. Adams said he wanted to give me a blueprint to see if I can follow it.  But I have been given plans and blue prints to work off of, and I have done this the whole time. They are always double checking my work.  I feel that I am being scrutinized.

I've only had about one write-up, and it was about 2 months ago.  I was burning stuff out of the overhead.  I was taken away and then put back.  When I came back, the other person had not gotten anything done.  I was frustrated, so I altered the staging (which I should not have done), and I was written up for that.

Frank is responsible, as he has seen Waylen's practices and has done nothing to stop it.

I have been passed over for promotion 2-3 times a year.

The skills and ability test checklist that I provided you is to show you that I can do all of those things.  I checked them to show you that I can do these things.

I think we have 18 people in the shop.  We are the only two African-Americans.  I am the oldest Level 1 Welder.  I am also senior for the Level 1s.  I have not been promoted.

Last week Thursday (June 30, 2016), I was sent home because they said there was not enough work.  Another guy, Gardner (Black), was also sent home.  But there was work available.  I was sent home 4 hours early, and this is unpaid.

On Friday, July 1, 2016, I was told to punch out because I was sick throwing up for an hour.  Waylen said he would tell Frank, and I was told to punch out at 1 o'clock.  I was also taken off the schedule for that weekend.

So I am noticing retaliation little by little.

Intake Phone Appt
estigator: _Rogelio_
Date: 7/7/16, Thurs
Time: 1p.

**EQUAL EMPLOYMENT OPPORTUNITY C**
**INTAKE QUESTIONNAIRE**

486-2016-00312

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.   Personal Information**

Last Name: _Staples_   First Name: _Chester_   MI: _Anthony_

Street or Mailing Address: _PO BOX 235777_   Apt Or Unit #:

City: _Honolulu_   County: _____   State: _Hawaii_   ZIP: _96823_

Phone Numbers: Home: (____) _____   Work: (_808_) _348-5661_

Cell: (_808_) _391-3512_   Email Address: _anthonystaples71@yahoo.com_

Date of Birth: _08/14/1953_   Sex: Male [✓] Female [ ]   Do You Have a Disability? [✓] Yes [ ] No

**Please answer each of the next three questions.**   i. Are you Hispanic or Latino? [ ] Yes [✓] No

ii. What is your Race? Please choose all that apply.   [ ] American Indian or Alaska Native   [ ] Asian   [ ] White
[✓] Black or African American   [ ] Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _United States_

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: _Ma. Christine JM D. Staples_   Relationship: _Spouse_

Address: _PO BOX 235777_   City: _Honolulu_   State: _HI_ Zip Code: _96823_

Home Phone: (____) _____   Other Phone: (_808_) _721-8712_

**2.   I believe that I was discriminated against by the following organization(s): (Check those that apply)**

[✓] Employer   [ ] Union   [ ] Employment Agency   [ ] Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here [ ] and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: _BAE System_

Address: _1215 Rushmore Dr._   County: _____

City: _Charlotte_   State: _NC_ Zip: _28277_   Phone: (_808_) _348-5661_

Type of Business: _Naval Ship Repair_   Job Location if different from Org. Address: _Pearl Harbor Naval Base_

Human Resources Director or Owner Name: _Laurie Maruyama_   Phone: _808-348-5661_

**Number of Employees in the Organization at All Locations: Please Check (√) One**

[ ] Fewer Than 15   [ ] 15 - 100   [✓] 101 - 200   [ ] 201 - 500   [ ] More than 500

**3.   Your Employment Data** (Complete as many items as you can)   **Are you a Federal Employee?** [ ] Yes [✓] No

Date Hired: _____   Job Title At Hire: _Ship Fitter Welder Level One_

Pay Rate When Hired: _____   Last or Current Pay Rate: _$29.25/Hour_

Job Title at Time of Alleged Discrimination: _Ship Fitter Welder Level one_   Date Quit/Discharged: _____

Name and Title of Immediate Supervisor: _Waylon Armstrong - Welding Supervisor_

RECEIVED
JUL 01 2016

2

**If Job Applicant,** Date You Applied for Job _____ Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☑ Race  ☐ Sex  ☑ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☐ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing  ☐ ii. family medical history  ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 5 - 16   Action: Passed over for promotion

Name and Title of Person(s) Responsible: Waylon Armstrong Welding Supervisor, Frank Brooks,

B) Date:   Action: Production manager   Brian Adams craft manager

Name and Title of Person(s) Responsible: _____

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

I can not get promoted for almost 6 years

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

Waylon Armstrong promotes only his close friends and younger guys

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Vanson Keomaka | Japanese Mix | Welder Journeyman |
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Jumil Tupas | ~~Japanese mix~~ Filipino | Welder Journeyman |
| Description of Treatment | | |

3

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Corey Victorian | Black, Male, 48, US, | Ship Fitter Level one welder |

Description of Treatment
Denied promotion- Other workers promoted over him with less qualification.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Answer questions 9-12 *only* if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

9. **Please check all that apply:**

   ☐ Yes, I have a disability

   ☐ I do not have a disability now but I did have one

   ☐ No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).




11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

   **Yes** ☐   **No** ☐

   If "Yes," what medication, medical equipment or other assistance do you use?




12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**

   **Yes** ☐   **No** ☐

   If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

   Who did you ask? (Provide full name and job title of person)


   Describe the changes or assistance that you asked for:



   How did your employer respond to your request?

4

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Corey Victorian | Ship Fitter .Welder Level One | 808 - 636 - 6658  703 Williwill St. Apt. #3 Honolulu, HI 968_ |

**What do you believe this person will tell us?**

He will state that both of us are being held back for promotion. And they are discriminating against both of us. I haven't gotten a promotion in almost (6)six years.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
|  |  |  |

**What do you believe this person will tell us?**



**14. Have you filed a charge previously in this matter with EEOC or another agency?**   Yes ☐   No ☑

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**



**16. Have you sought help about this situation from a union, an attorney, or any other source?**   Yes ☑   No ☐

Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Laurie Maruyama - HR BAE System Pearl Harbor

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

Box 2 ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

| _Chester A. Stephen_ | _7 - 1 - 16_ |
|---|---|
| **Signature** | **Today's Date** |

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

**Clarification Interview**
**Chester Staples**
**11.9.2017**

The issue with the blueprint was that myself and Corey would be placed on this evaluation program. I refused to do the task as I had had enough by that point.

No one else was subjected to that.

I have a 2.5 year old son. My schedule does not allow me to come in to participate with these guys. This is when Foreman Knox told me that it was to show me blueprints. I told them that I could not come in early. They made him do this in order to cover his butt. This was a one-time issue. He would also pull me off to the side for about 20 minute sessions (6 or so).

I have experience with blueprints.

The reason that I got one out of eight correct was because I was pissed off by then.

I did not have any association with Kimo. Leander was on first shift, and he came from the Mainland.

Frank Brooks initiated the program and told me with a smirk on his face that anyone could do the tasks that I completed. He was just tagging me along.

Insofar as my promotion in January 2017, they were trying to promote me before the end of the year. Maybe they thought I would back off and drop my complaint.

Corey was promoted before I was, so he did not choose to file a complaint. Corey and I had to go through hoops. I think he was promoted on July 27, 2016.

When it came to us we started raising hell about the program. This is all documented. Again, no one else was forced to go through this evaluation program.

I've talked to management throughout the years, but they never looked into my situation.

I was laid off last month from 10/9 to 11/6. We are laid off due to a slowdown in work. That is based upon seniority. But since they passed me over back in May 2016, I was kicked to the bottom of the seniority list for journeymen. There were about 5 people that were promoted ahead of me.

I passed the evaluation back when I was first hired. I was not aware of that May 2, 2014 evaluation.

I made 31.50 or so, and I now make 33.25 an hour.



<u>**VIA ELECTRONIC MAIL**</u>

September 22, 2016

Ms. Emily Mauga
Honolulu Local Office
300 Ala Moana Blvd
Room 7-127
Honolulu, HI 96850

Dear Ms. Mauga:

BAE Systems Hawaii Shipyards Inc. (the "Company" or "BAE SYSTEMS HSY") submits this position statement in response to the Charge of Discrimination brought by Mr. Chester Staples ("Mr. Staples")[1]. Mr. Staples alleges that he has been discriminated and retaliated against. Specifically, he alleges that the Company has repeatedly failed to promote him to the Journeyperson Welder position due to his race and age. In addition, Mr. Staples alleges that he experienced retaliation after filing an internal race and discrimination complaint when he was sent home four hours early on June 30, 2016 and then not scheduled to work the ensuing weekend after being sent home due to illness on July 1, 2016. This is untrue.

There is no evidence of Mr. Staples being discriminated against nor is there evidence of Mr. Staples being retaliated against. Mr. Staples was hired in 2011 as a Level 1, one of the higher levels positions in the Welding department and right below the Journeyperson level in the Welding department. The Director of Operation for the Welding Department is a 54 year old African-American male. He agrees with the Shop's assessment that Mr. Staples is not qualified for a promotion to a Journeyperson.

Further, Mr. Staples was sent home 4 hours into his shift on June 30, 2016 – at the *exact same* time – as his co-worker. He was scheduled and did in fact work the following days/hours:

| <u>Day</u> | <u>Hours Worked</u> |
|---|---|
| Friday, July 1, 2016 | 8.68 hours |
| Saturday, July 2, 2016 | 10.58 hours |
| Sunday, July 3, 2016 | 8.63 hours |

---

[1] This written position statement, including any and all attached exhibits, is regarded by The Company as confidential business information. It has been provided to the EEOC solely and exclusively for the purposes of resolving the above-referenced matter. The Company requests that its written position statement not be distributed or disseminated to any individuals or entities, except as is necessary to investigate the above-referenced matter, as is necessary to resolve the above-referenced matter or as is permitted by statute, case law or administrative regulation. The Company submits this written position statement at the request of the EEOC, and it is based solely upon the information that the Company is aware of at the present time. The Company reserves the right to amend or supplement this written position statement, if necessary, at any time in the future. Under no circumstances does the Company concede the admissibility of this written position statement, or of any of the facts or information contained herein, in connection with any future proceeding before the EEOC, any other administrative agency or in court.

1



These are the same days in which Mr. Staples stated in his Charge of Discrimination that he was sent home early due to illness and then not scheduled to work. This serves as evidence that Mr. Staples has not experienced the retaliation that he alleged. Mr. Staples remains gainfully employed by the Company. He has been offered additional training in order to assist him in being promoted. Accordingly, The Company believes the evidence set forth in this position statement will enable the EEOC to summarily dismiss Mr. Staples's Charge of Discrimination.

### Factual Background

#### a. BAE SYSTEMS HSY's Operations.

The Company is a federal contractor that provides marine construction, repair, overhaul and conversion services for ships to the United States Government. BAE SYSTEMS HSY is located on Joint Base Pearl Harbor Hickam and provides ship repair and modernization services under a competitive contract(s) with the U.S. Navy.

#### b. BAE SYSTEMS HSY's Policies

The Company "administers all employment decisions on a nondiscriminatory basis without regard to an applicant's or employees ' race, color, religion, sex, gender, national origin, age, status as a qualified individual with a disability, genetic information, pregnancy status, marital status, sexual orientation, status as a US veteran, gender identity and expression, or any other characteristic protected by law." Employment decisions include, among others, hiring, promotion, layoff and termination decisions. The Company has internalized its Equal Employment Opportunity policy in everything that it does. Creating an inclusive environment, where individuals are respected and valued for their diverse backgrounds is a core tenet of The Company's culture. Accordingly, The Company has a sound "Equal Employment Opportunity, Anti-Harassment, and Affirmative Action" Policy. (See Exhibit 1).

The Company strives to ensure that no employee is retaliated against. The Company's Equal Employment Opportunity, Anti-Harassment and Affirmative Action Policy strictly prohibits retaliation. (See Exhibit 1). Mr. Staples is familiar with such policies. As a member of the bargaining unit, he is also aware that the Collective Bargaining Agreement ("CBA") prohibits discrimination. (See Exhibit 2).

#### c. Shop Demographics establish that BAE SYSTEMS HSY is Incredibly Diverse

Mr. Staples is and has been employed in the Welding Department as a Level 1 since his date of hire, February 23, 2011, at which time Mr. Staples was 57 years of age. By way of background, the Welding Department is incredibly diverse, both from a management perspective and an employee perspective. Director of Operations, Frank Brooks is an African-American male who is age 54. Mr. Brooks was hired on or around December 30, 2013 at age 52, further evidence that the Company does not discriminate on the basis of age or race. Reporting to Mr.

BAE SYSTEMS

INSPIRED WORK

Brooks is Craft Manager, Brian Adams (White). Mr. Adams is age 51. He was hired on or around June, 2, 2015, further establishing that the Company does not discriminate on the basis of age.

Reporting to Mr. Adams are 3 Craft Forepersons and 1 Craft Leadperson. Demographics are also diverse, as shown below:

| Name | Title | Race | Age |
| --- | --- | --- | --- |
| Waylen Armstrong | Craft Foreperson | Native Hawaiian/Oth Pac Island | 34.9 |
| Kimo Kaaihue | Craft Foreperson | Native Hawaiian/Oth Pac Island | 31.6 |
| Leander Knox | Craft Foreperson | Black/African American | 27.2 |
| Ely Calaustro | Craft Leadperson | Asian | 64.8 |

In short, five of the six individuals who supervise Mr. Staples are diverse, with 2 of the 6 being African American. Note as well that Leander Knox was hired as a Foreperson in December 2015. A company that hires an African-American directly into the Foreperson role as recent as December 2015 is not a Company that discriminates against African-American employees, especially when the Director of Operations is also African-American.

The same is true with respect to Mr. Staples' allegations of age discrimination. Three of the six individuals who supervise Mr. Staples are over age 50. Both the Director of Operations and Craft Manager are in their 50s. Craft Leadperson, Ely Calaustro is actually older than Mr. Staples. These types of demographics cut against Mr. Staples claims of discrimination.

A review of the general employee demographics in the Welding department further undercuts Mr. Staples' claims of discrimination. The lowest level worker in the Welding department is a Level 4. The next lowest level worker is a Level 3, then a Level 2, and then a Level 1. Once a Level 1 learns the necessary skills for advancement, he or she is promoted to the title of "Journeyperson Welder." Demographics of the Journeypersons and lower levels are as follows:

**BAE SYSTEMS**

INSPIRED WORK

| Hire Date | Job Title | Race | Age |
|---|---|---|---|
| 10/22/2003 | 001 - Journeyperson | Native Hawaiian/Other Pac Island | 53.5 |
| 3/5/2013 | 002 - Journeyperson | Asian | 51.5 |
| 5/4/2011 | 003 - Journeyperson | Multiple Ethnicity | 32.6 |
| 3/16/2009 | 004- Journeyperson | Hispanic/Latino | 35.0 |
| 5/26/2001 | 005- Journeyperson | Asian | 55.6 |
| 7/2/2007 | 006- Journeyperson | Multiple Ethnicity | 43.4 |
| 12/19/2001 | 007- Journeyperson | Native Hawaiian/Oth Pac Island | 63.8 |
| 4/7/2015 | 008- Journeyperson | Asian | 43.0 |
| 7/27/2011 | 009- Journeyperson | Black/African American | 47.0 |
| | | | |
| 4/4/2016 | 010 - Level 1 | Asian | 57.2 |
| 3/8/2016 | 011 - Level 1 | Black/African American | 53.3 |
| 11/30/2011 | 012 - Level 1 | Hispanic/Latino | 64.5 |
| 7/13/2011 | 013 - Level 1 | Asian | 29.2 |
| 2/23/2011 | Chester Staples – Level 1 | Black/African American | 63.0 |
| | | | |
| 3/24/2015 | 015 - Level 4 | Multiple Ethnicity | 23.5 |
| 2/11/2009 | 016 - Level 4 | Native Hawaiian/Other Pac Island | 38.8 |

The above demographics establish that BAE SYSTEMS HSY employs a diverse group of employees, including an African American Journeyperson and a Journeyperson who is older than Mr. Staples. Further, BAE SYSTEMS HSY has recently hired two employees as Level 1 over the age of 50 – one of whom is African American (identified as 010 and 011 above). Mr. Adams was involved in both of these hiring decisions, further establishing that no discriminatory animus is held against older, African American employees. The two employees who are currently employed as Level 4s (the lowest level in the department) are both under age 40 and are not African American.

**d. Mr. Staples' Employment History**

Mr. Staples was hired in February 23, 2011 as a Level 1. At his time of hire, he was 57 years of age. He had been interviewed in-person. Based on his skill level, Mr. Staples was hired as an Level 1, one of the higher levels in the Welding department and the level right below Journeyperson. Note that younger non-African-American employees have been hired as Level 4s, thus showing that employment decisions are not based on age, race or any protected category. Furthermore, Mr. Adams has been involved in these hiring decisions. Mr. Adams obviously does not discriminate against older, African American employees when he makes decisions to hire older, African American employees at higher levels than younger non-African-American employees. In short, it is clear that hiring decisions, as well as promotion decisions, are based off skill and business need.

**BAE SYSTEMS**

INSPIRED WORK

Mr. Staples is directly supervised by Craft Manager Brian Adams (White – age 51). Mr. Adams is supervised by Director of Operation Frank Brooks (African-American - age 54). Of the 3 Forepersons and 1 Leadperson who assign Mr. Staples his daily work projects and assess his performance, one is African American and one is older than Mr. Staples.

Mr. Staples has been assigned to work in the Welding Department throughout his employment, which has been, for the most part, uneventful. While there have been concerns about his poor workmanship, he has never received any documented performance discussions. Mr. Staples did receive a written warning on February 12, 2016 for a safety violation. Specifically, he modified some scaffolding he was using to move a beam on the USS Halsey. Mr. Staples is not qualified to modify scaffolding and was in violation of the Company's Scaffolding and Staging Procedure 1100-42, Section 5.4.3 which states that it is the "scaffolding user's responsibility to refrain from modifying or altering the scaffold in any way." It should be noted that Frank Brooks (African American/Age 54), Director of Operations, signed off on this written warning. (See Exhibit 3).

## Response to Specific Charge Allegations

**a. Mr. Staples has not been Discriminated Against. Rather, he is not qualified for a promotion.**

Mr. Staples alleges that he has not been promoted because of his age and his race. These allegations are not true. The promotion process is heavily dictated by the Collective Bargaining Agreement. Skills and Abilities checklists are used in assessing the requirements necessary for promotion. (See Exhibit 4).

Mr. Staples was evaluated on May 2, 2014 and was found unqualified to be a Journeyperson. It was noted on the Skills and Abilities List that Mr. Staples would be, "re-evaluated at a later time," thus showing a willingness on the part of the Company to allow Mr. Staples time to improve his skills and have them reassessed at a later date. (See Exhibit 5).

On May 17, 2016 Mr. Staples was evaluated by all three Forepersons and was found unqualified to be promoted to a Journeyperson. He was again found to lack many of the skills required to be a Journeyperson. All Forepersons felt there were items on the Skills and Abilities checklist for which Mr. Staples lacked proficiency, including one Foreperson who happens to be African- American. (See Exhibit 6).

As evidence of discrimination, Mr. Staples raises the promotion of two younger, non-Black Level 1 employees to Journeypersons. It is true that Janson Keomaka (multiple ethnicities/Age 32) and Jumil Tupas (Asian/Age 43) received promotions from Level 1 to Journeyperson on May 2, 2016. This occurred only after they received evaluations from the same 3 Forepersons who evaluated Mr. Staples and after the promotions were approved by Mr. Adams. All four individuals verified their workmanship as Journeyperson level.

What Mr. Staples failed to mention is that on July 27, 2016, an African-American Level 1



employee (age 47) was also evaluated and promoted by Mr. Adams to a Journeyperson. It should be noted that this employee trained by reading blueprints on his own time before being evaluated. He also worked with Leander Knox to develop his blueprint reading skills. The following individuals have been promoted within the past 12 months:

| Name/Position | Promotion | Date of Promotion | Race | Age |
|---|---|---|---|---|
| Kimo Kaaihue | Leadperson to Craft Foreperson | 5/2/16 | Native Hawaiian/Oth Pac Island | 31.6 |
| 004- Welder | Level 1 to Journeyperson | 5/2/16 | Hispanic/Latino | 35 |
| Janson Keomaka | Level 1 to Journeyperson | 5/2/16 | Multiple Ethnicity | 32.5 |
| Jumil Tupas | Level 1 to Journeyperson | 5/2/16 | Asian | 43 |
| 009- Welder | Level 1 to Journeyperson | 7/27/16 | African American | 47 |
| 016 - Level 4 | Laborer to Level 4 | 2/1/16 | Native Hawaiian/Oth Pac Island | 38.7 |
| 015 - Level 4 | From Laborer to Level 4 | 3/28/16 | Multiple Ethnicity | 23.5 |

The above chart demonstrates that a diverse group of employees has been promoted over the past several months. An African American employee has been promoted from Level 1 to Journeyperson, and two individuals over 40 have been promoted from Level 1 to Journeyperson. What the chart also demonstrates is that two individuals under age 40 have only been promoted to a Level 4. These two employees were not promoted from Laborers straight to Journeyperson. Rather, they were promoted only one level, again demonstrating that the Company's advancement process is legitimate and non-discriminatory. In short, Mr. Staples has no proof that he has been denied a promotion because of his race or age.

**b.  Mr. Staples was not retaliated against; Rather, HSY is working with Mr. Staples to assist him in being promoted.**

It is true that Mr. Staples filed an internal complaint with the Human Resources in May of 2016 alleging that he was discriminated against insofar as he was overlooked for a promotion, among other things. His complaint was thoroughly investigated by HR Manager Laurie Maruyama and his allegations were found to be unsubstantiated, especially given that all 3 forepersons and Mr. Adams did not believe that Mr. Staples was qualified to be promoted to a Journeyperson.

Even though Mr. Staples' allegations were unfounded, Ms. Maruyama met with Mr. Staples and the union in order to address Mr. Staples' concerns. During the meeting, it was decided that Mr. Staples would be provided additional training should he so choose. Also discussed were establishing meetings with Mr. Staples and the Craft Manager so that Mr. Staples could receive feedback regarding his performance.

BAE SYSTEMS
INSPIRED WORK

True to their word, after the May meeting, both Mr. Brooks and Mr. Adams spent time evaluating Mr. Staples' skills in an effort to assist Mr. Staples in improving his performance. Both provided Mr. Staples feedback on his performance to try to help him be promoted. In fact, by August, Mr. Staples' performance had improved. An August 8, 2016 evaluation conducted by Mr. Adams indicates that Mr. Staples lacks only the blueprint reading skills necessary to become a Journeyperson, as opposed to the various performance deficiencies noted by the 3 forepersons in the May evaluation. (See Exhibit 7).

That said, Mr. Staples still lacks the blueprint reading skills. This was determined after Mr. Staples provided the correct response to only one of eight questions regarding blueprint reading. (See Exhibit 7). Both Mr. Adams and Mr. Brooks agree that Mr. Staples does not meet the requirements necessary for promotion to a Journeyperson. HSY is still attempting to assist Mr. Staples in improving his performance so that he can be promoted. In addition to a continued review of his skills, HSY has also offered Mr. Staples additional training, including the opportunity to train with Craft Foreperson Leander Knox (African American) for additional blueprint reading training. Mr. Staples has refused this opportunity, indicating that he will learn on his own. To date, HSY continues to explore training opportunities for Mr. Staples, including, but not limited to, taking online courses at the Company's expense. Mr. Staples' union rep has charged himself with the responsibility of assessing possible outside education opportunities, and the Company is open to exploring such opportunities.

As to the allegations of retaliation concerning the hours worked, these allegations are not true. Mr. Staples alleges that he was subjected to retaliation when he was sent home early on June 30, 2016 due to lack of work. Both Mr. Staples and another employee were working on the Port (left) and Starboard (right) sides of the Flat Bar Backing Strip Installation on the USS Halsey. They were told at the beginning of the shift that there was only about four hours of work left on item 243-12-001 and that they were *both* to go home when they finished as there was no other work available. Both Mr. Staples and the other employee finished their assigned work and clocked out after working 4.15 and 4.35 hours respectively. There was no retaliation involved in this decision. Both employees assigned to that specific work item were sent home for the evening at the same time.

Mr. Staples further stated that he experienced retaliation when he was not scheduled to work the weekend of July 2-3 2016 after being sent home due to illness on July 1, 2016. This is also not true. In fact, Mr. Staples was not sent home due to illness as he worked 8.68 hours. Further, he was scheduled to work over the weekend and he worked 10.58 hours on July 2, 2016 and 8.63 hours on July 3, 2016. (See Exhibit 8).

Mr. Staples cannot establish that he was retaliated against, as the written record directly contradicts his allegations. There is simply no evidence to suggest that the Company retaliated against him by sending him home after working for four hours and not scheduling him to work during the weekend. It had been made clear that there was only four hours of work available that night and not only was he on the schedule but he worked over eight hours on each of the days he claimed he was not worked. Mr. Staples simply has not been retaliated against.



## Conclusion

The facts are simple. Director of Operation Frank Brooks is an African-American male who is age 54. Craft Manager Brian Adams (White) is age 51. One of the Craft Forepersons evaluating Mr. Staples is African American. The Leadperson is older than Mr. Staples. Mr. Staples was hired as a Level 1, one of the higher level positions in the Welding department. He has been evaluated similar to all other employees in his department. Employees are evaluated and promoted when they demonstrate that they possess the skills and ability to perform work at a higher level in their classification. Other African American employees over the age of 40 in his shop, who were hired around the same time as Mr. Staples, have been promoted to the Journeyperson classification. To date, Mr. Staples has not demonstrated this capability after multiple evaluations by people of his and other ethnicities. His African American Foreperson evaluated him at the same level as other non-African American evaluators. He has not experienced any retaliation from any members of the management team. Rather, the Company has offered to assist Mr. Staples so that he can be promoted and has not only offered specialized training, but has also provided him additional feedback so that he can improve his performance. HSY continues to explore additional training opportunities for Mr. Staples. The Company requests that the Commission enter a finding of no probable cause and dismiss this Charge.

The Company intends to cooperate, to the greatest extent possible, during the course of this investigation. Consequently, if you should have any further questions regarding the Company's position in this case, please do not hesitate to contact me at 757-494-4795.

Sincerely,

Amanda V. Burns
Director, HR III

Enclosures:
Exhibits

March 22, 2017

Ms. Emily Mauga
Honolulu Office Local Office
300 Ala Moana Blvd
Room 7-127
Honolulu, HI 96850



EEOC Charge No. 486-2016-00312
Chester A. Staples v. BAE SYSTEM HAWAII SHIPYARDS

Dear Ms. Mauga:

This is Chester A. Staples responding to Respondent Position Statement by the BAE SYSTEM.

First of all the discrimination started when I first applied for the job in the interview with Nate Moeiny, Welding Craft Manager on Wednesday December 22, 2010. I had applied for the job Shipfitter Welder Journeyman online, I had downloaded the application filled it out and sent it back with the copy of my resume. BAE System Human Resources Department stated that if my qualification for the position Shipfitter Welder Journeyman matched the job they would be contacting me for an interview for the position.

Apparently my qualifications did match the position of Journeyman Welder Shipfitter and BAE set up and make and appointment for me to be hired . My interview was with Nate Moeiny, Waylan Armstrong and Miss Mano ( Head of Human Resources ). I went through a battery question from Nate Moeiny and I had passed it with dying colors, right then I know I had the job. Nate Moeiny said that they were going to hire me but he wanted to hire me as a Level 1 apprentice instead of a Journeyman Welder because it would upset the other workers in the weld shop if I was given that position. Journeyman Welder I do believe if I did not accept that position as a Level 1 Welder I would not have been hired my back was up against the wall I had to take it I was hungry for work.

Nate Moeiny also said that if I prove my self whether I could handle the job in 90 days he would give me the Journeyman position. 90 days almost, 6 years and various craft manager later and still no promotion even though I was qualified for the position. A year late, two of my friends from Pacific Shipyard were hired by the company I had worked for, Id id 5 years over there. Mister Jiang and Alex Unay were given Journeyman promotions after there 90 days, whats wrong with that picture. I had came from the same shipyard with the same credentials and I was not promoted?

All of this happen was before Frank Brooks and Brain Adams were hired with the company BAE System. Basically that is happening in this company is it's not what you know, its who you know that gets you ahead if you are in the click you get promoted and I am not in the click.

I have been with BAE System for six years and they say my work is uneventful then why am I still here with NO write ups, NO disciplinary action  taken against me with the exception of

a warning in 2016. I have well over 30 years experience in the ship repairs business, and these guys are treating me like a rookie with no experience in the welding field.

Shop demographic WHAT??? Some lawyers had to dream this stuff up. We are not talking about the whole shop make up, we are not talking about demographics of the manager we are not talking about the age of every one in the shipyard. Lets stop going in 360 degree circle and focus in on the bullseye which is ME.

Why is it that I have to be evaluated by jumping to you that I can do the job of Journeyman? What do you think I have been doing for the pass 6 (six) years man?! No one else had to jump through hoops they were just promoted by word of mouth, by the click.

I am a Vietnam Veteran, 63 Years old, I have been doing his kind of work all of my life, and with this company I am not qualified for promotion?

I was never evaluated until I spoke up about not being promoted and file a complaint.

Evaluated May 2, 2014 that did not happen dates are wrong.I got evaluated May 17, 2016. I was non responsive to the questions craft manager Brian Adams  was talking about, I was burned out and tired of jumping through hoops to prove myself.

I was retaliated against ; by Waylan Armstrong on that day the dates maybe wrong I will get back with this week with the right dates. I am always working on the week ends.

The other worker who was discriminated against is Corey Victorian he will tell you the same thing I said. Corey Victorian was promoted to Journeyman after his hoop jumping for the company.

Finally in January, I was promoted to Journeyman because of the heat you put on the company to respond.Even though I have been finally been promoted I do believe I am entitled to some type of compensation in response to being denied Journeyman, when I first came to the company because some guy didn't see that I was eligible for Journeyman, because of my qualifications.

That guy Nate Moeiny is no longer with BAE System. He got busted on a drug test for cocaine, I guess he was high when he made his decision to deny me Journeyman when i had my interview out go this.

What I want is back pay from the time I was hired as a journeyman because of Nate Moeiny, he might had been high when he denied me and made his decision. And I would like my seniority and also I would like no retaliation against me for 5 years until I retire.

Sincerely,

Chester A. Staples

My name is Chester Anthony Staples; I am Shipfitter Welder Level 1 at BAE SYSTEM, Pearl Harbor Hawaii. I have work at BAE System for almost six years as a Level 1 Welder. When I first started at BAE I have applied for the Journeyman Shipfitter Welder position which opened at that time, during the interview they had asked me, would I take a Level 1 position to start and I would have to prove myself to them that I could do the job as a Welder Shipfitter in order to be promoted to Journeyman Welder in 90 days. That has been almost six years ago, my interviews were Waylen Armstrong and Nate Moeiny.

In that almost six years I have not been evaluated for promotion or even seen an evaluation for Journeyman Welder. I have seen numerous employees promoted to Journeyman Welder during those years, and no mention of a promotion for me. For years I asked Waylen Armstong why I have not been evaluated or received a promotion to Journeyman and all he had to say was that I was not ready yet that he did not evaluated me.

I had also talked to Chuck Baker the General Manager for BAE System Hawaii, about my promotion problems that I was having. Chuck Baker told me that he would look into and would give me a feedback on that matter at later date.

I have talked to David Belchor who was the Craft Manager for the welding shop at BAE Systems Hawaii at dry dock #4. On numerous occasion I met with David Belchor and talked to about my promotional issues, all he could tell me is that he would look into it and let me know later. That never happen, no one give me the time off day for all of these years I was just a nobody.

The only thing that did matter to them is that would be there 6 to 7 days a week, 10 to 12 hours a day to do the work that they say I was not qualified to do.

I have over thirty (30) year experiences in the welding field, four years with the US NAVY as a Shipfitter Welder, seventeen years in the Pearl Harbor Shipyard as a Journeyman Welder on a submarines and surface craft. Seventeen years in the Navy Reserve Pearl Harbor Hawaii as a Welder Shipfitter for F Mag and Sima Shore Base Repair Facilities, five years in the Pacific Shipyard as a Journeyman Welder, a year at CPM Complete Plant Maintenance as P1 Pipe Welder, basically I have been welding on Naval Vessels since I was on a Navy Ship in Vietnam, with all of this welding experience under my belt I still cannot get promoted.

In 2016 two guys in the welding shop got promoted to Journeyman Welder. One of the guys had been in the Weld Shop for eight months, and before that promotion, he had started a fire onboard the Naval Ship USS Halsey costing the company thousands of dollars, and lost man hours. The other welder came from the Labor Shop and has only three years in the Weld Shop and got promoted to Journeyman.

You can check the records on promotions in the Welding Shop and see the pattern of promotion and discrimination over the years that I have been there.

After that had happened I had filed a discrimination complaint with HR Department and filed grievance with UNION. I met with the HR person (Laurie Maruyama) for an interview to find out what was going on fact finding 5-11-16 or so. I also met with mu UNION Representative Shane Ferreira.

The UNION said that they cannot act on my complaint until HR finish the investigation. The HR personnel Laurie Maruyama set up a meeting with Frank Brooks Production Manager and my UNION Rep. Shane Ferreira. The meeting lasted about an hour and half and we had a discussion on the discrimination complaint that I had filed with UNION and HR. At the end of the meeting we agreed on a time frame for evaluation of my work performance that will show them my skills and abilities for the position of Journeyman Welder. The Production Manager Frank Brooks will evaluate my performance for three weeks and make a decision on his findings and give me my Journeyman promotion.

During those three weeks I had performed various jobs such as cropping out the work areas laying out the new material for the jobs, preparing the material for fit up and eventually installing the material on the Naval Ship in at least six areas and location.

On the 6th of June 2016 I came to work and I was told by my work leader David that Brian Adams the Craft Manager wanted to see me in his office. I went to the office and met with Brian Adams and he immediate told me to go in to Frank Brooks office. I went inside and met with Frank Brooks, Brian Adams also attended the meeting with me and I didn't even have my UNION Representative at that time. I sat down to have a discussion about my evaluation over the three and half week time frame we had agreed on. Frank Brooks went on the computer and laid out all of the jobs that I had work on during that evaluation time frame. He told that all the job that I worked on were good and the fit ups were nice. He stated that he only had one discrepancy with the one plate that I had cut out in the shop. Frank said that the template that I had made for the plate cut out was too small and did not fit the plate which is 1 ½ inches larger. I had informed that I had cut the plate that size because I did not have enough time to do the final cut on the plate on the end of the shift. Frank stated his opinion on that matter saying that was double the work and did not like the way I did that job. Needless to say that the next day I did the final cut and prep the plate and it was taken to the ship and fit just right in place with no problems. Frank Brooks also said that all the work that I had done during that evaluation time frame was nothing special that anybody can fit up those plates in flat position. And the work that I had done was not critical work and he did not see as a Journeyman work, I need to do harder job to prove to him that I have skills and abilities to be a Journeyman Welder.

After hearing this let down from Frank Brooks, I asked Brain Adams who was sitting on my right hand side about what his opinion about this matter. He stated, "I would like to give you some plans or blue prints and I have you perform that job on the ship or in the shop to see if you can do it." Then he will also determine if I can also promote to Journeyman.

At that time after talking to Brian Adams I had asked Frank Brooks what about the other welders who were promoted did they have to jump through hoops to be promoted like I am doing, he stated that we are not talking about other welders we're talking about your evaluation. I tried to talk further on that matter and he just shut me down. He said we will look at this for another two weeks. ("WHAT? I gave you three weeks and nothing came out of it.") Frank Brooks is aware of Wayland Armstrong discriminatory practices for promotions. Wayland Armstrong promotes his younger buddies and close friends and passes over me all the time. That means Frank Brooks and Bryan Adams condones this kind of practices within the production department. No matter what job or task that I performed it's still not good enough for them.

MY GIEVANCE IS DISCRIMINATION IN THE WORK PLACE AT BAE IN PEARL HARBOR IN THE YEAR 2016.

IT SEEMS THAT I CAN NOT GET PROMOTED TO JOURNEYMAN IN THE WELDING SHOP IN ALMOST 6 YEARS. I HAVE WORKED AS A WELDER LEVEL 1 SINCE 2011 WHEN I FIRST GOT HIRED FOR A WELDING POSITION WITH BAE SYSTEMS. AT THAT TIME IN 2011 I HAD APPLIED FOR THE SHIPFITTER WELDER JOURNEYMAN POSITION, WHEN I HAD MY INTERVIEW WITH WAYLAND AND NATE I WAS TOLD THAT THEY WOULD HIRE ME AS A LEVEL 1 WELDER INSTEAD OF THE JOURNEYMAN POSITION, AND THAT I WOULD HAVE PROVE TO THEM THAT I WAS CAPABLE OF DOING THAT KIND OF WORK IN ORDER TO BE PROMOTED TO JOURNEYMAN. HELL THAT WAS ALMOST 6 YEARS AGO, SINCE THAT TIME I'VE HAD NO PROMOTION NO EVALUATIONS OR ANY CONSIDERATION FOR BEING PROMOTED TO JOURNEYMAN WELDER. I FEEL THAT I HAVE PROVEN MY ABILITIES AS A JOURNEYMAN WELDER 24/7, 7 DAYS A WEEK, COUNTLESS YEARS AND STILL NO RECOGNITION.

I HAVE WORKED AS A WELDER IN THE SHIP REPAIR INDUSTRY FOR OVER 30 YEARS, AND AT BAE I STILL CAN NOT GET ANY RESPECT FOR MY CONTRIBUTIONS TO THE MANY SUCCESSFUL SHIP OVERHAULS THROUGH OUT THE YEARS. THE WORK THAT I DO ON THE SHIP AND IN THE SHOP IS ALWAYS SCRUTINIZED AND PUT UNDER THE MICROSCOPE TO TRY TO FIND ANY THING WRONG WITH SO THEY CAN TALK SHIT ABOUT MY ABILITIES AS A WELDER, SUCH AS THAT OLD MAN CAN'T WELD FOR SHITH OR DON'T GIVE CHESTER THE JOB HE WILL FUCK IT UP. I WORK UNDER PRESSURE EVERYDAY TO GET THE JOB DONE SO THERE WONT BE ANY BACK TALK FROM WAYLAND AND HIS INNER CIRCLE CRONIES.

I FEEL LIKE I AM THE INVISIBLE WELDER, YOU CAN'T SEE ME YOU DON'T KNOW OF MY WORK AND YOU DON'T RECOGNIZE ME AS A PERSON WHEN IT COMES TIME FOR HANDING OUT PROMOTIONS TO THE NEXT HIGHER LEVEL IN PAY. I FEEL THAT I AM BEING DISCRIMINATED AGAINST MY RACE, MY AGE, AND MY DISABILITY. WHY IS IT THAT JANSON KEOMAKA AND JUMIL TUPAS CAN BE PROMOTED TO WELDER JOURNEYMAN AND I CAN'T. I HAVE WORKED IN THE WELDING SHOP LONGER THEN BOTH OF THEM. JANSON KEOMAKA HAS THREE YEARS IN THE SHOP AND FOUR PROMOTIONS, JUMIL TUPAS HAS 8 MONTHS IN THE WELD SHOP AND ONE FIRE UNDER HIS BELT AND HE GETS PROMOTED TO JOURNEYMAN, THATS SOME BULL SHIT THATS DISCRIMINATION. I HAVE BEEN WAITING FOR MY PROMOTION FOR YEARS. ITS NOT WHAT YOU KNOW ITS WHO YOU KNOW AND DRINK AND HANG OUT WITH THE OLD BUDDY NETWORK. THE POWER OF PROMOTING YOUR BUDDYS HAS TO BE STOPED. WE MUST TAKE THE POWER OF PROMOTING PEOPLE FROM THEM SO ALL OTHERS CAN A FAIR CHANCE OF GETING PROMOTED.

The UNION said that they cannot act on my complaint until HR finish the investigation. The HR personnel Laurie Maruyama set up a meeting with Frank Brooks Production Manager and my UNION Rep Shane Ferreira. The meeting lasted about an hour and half and we had a discussion on the discrimination complaint that I had filed with UNION and HR. At the end of the meeting we agreed on a time frame for evaluation of my work performance that will show them my skills and abilities for the position of Journeyman Welder. The Production Manager Frank Brooks will evaluate my performance for three (3) weeks and make a decision on his findings and give me my Journeyman promotion.

During those three (3) weeks I had performed various jobs such as cropping out the work areas laying out the new material for the jobs, preparing the material for fit up and eventually installing the material on the Naval Ship in at least six areas and location.

On the 6th of June 2016 I came to work and I was told by my work leader David that Brian Adams the Craft Manager wanted to see me in his office.  I went to the office and met with Brian Adams and he immediate told me to go in to Frank Brooks office. I went inside and met with Frank Brooks, Brian Adams also attended the meeting with me and I didn't even have my UNION Representative at that time. I sat down to have a discussion about my evaluation over the three and half week time frame we had agreed on. Frank Brooks went on the computer lay out of all the jobs that I had work on during that evaluation time frame. He told that all the job that I worked on were good and the fit ups were nice. He stated that he only had one discrepancy with the one plate that I had cut out in the shop. Frank said that the template that I had made for the plate cut out was too small and did not fit the plate which is 1 ½ inches larger. I had informed that I had cut the plate that size because I did not have enough time to do the final cut on the plate on the end of the shift. Frank stated his opinion on that matter saying that was double the work and did not like the way I did that job. Needless to say that the next day I did the final cut and prep the plate and it was taken to the ship and fit just right in place with no problems. Frank Brooks also said that all the work that I had done during that evaluation time frame was nothing especial that anybody can fit up those plates in flat position. And the work that I had done was not critical work and he did not see as a Journeyman work I need to do harder job to prove to him that I have skills and abilities to be a Journeyman Welder.

After hearing this let down from Frank Brooks, I asked Brain Adams who was setting on my right hand side about what his opinion about this matter. He stated I would like to give you some plans or blue prints and I have you perform that job on the ship or in the shop to see if I can do it. Then he will also determine if I can also promote to Journeyman.

At that time after talking to Brian Adams I had asked Frank Brooks what about the other welders who were promoted did they have to jump through hoops to be promoted like I am doing, he stated that we are not talking about other welders we're talking about your evaluation. I tried to talk further on that matter and he just shut me down. He said we will look at this for another two weeks. ("WHAT? I gave you three weeks and nothing came out of it.") Frank Brooks is aware of Wayland Armstrong discriminatory practices for promotions. Wayland Armstrong promotes his younger buddies and close friends and passes over me all the time. That means Frank Brooks and Bryan Adams condones this kind of practices within the production department.

# CHESTER A. STAPLES

3558 Woodlawn Drive
Honolulu, HI 96822
Cellular Phone: 808-391-3512
Email address: Anthony.Staples71@yahoo.com

**OBJECTIVE**: A challenging position in which my outstanding welding skills and experience can be put to use to contribute to the success of your Company.

**QUALIFICATION**

Welder of all positions, steel fabrication ,and layout.  Welding qualifications: HY-80 HTS, Aluminum, CRES, Oxyacetylene cutting and welding, high pressure welding.

**EDUCATION**

1985-1986  West Oahu College, Psychology Major
1994-1995  Leeward Community College, Liberal Arts, Associate of Arts
1969-1972  Crane High School, Diploma

**EMPLOYMENT**

2008-2010  HPS Construction Services
Responsibilities:
Renovation, remodeling interiors and exterior of residential and commercial properties, welding, drywall, tiling, carpentry, and plumbing.

2003-2007  Pacific Shipyards International, Journeyman Welder
Responsibilities:
Steel fabrication and welding, repair to piping systems, superstructures, water tight doors, ducking systems, fuel and water tanks, hulls and decks, helicopter tie downs.

2002-2004  Safeguard Security Services, Security Officer
Responsibilities:
To insure the safety and security of various building sites and commercial outlets, Writing reports and monitoring people and terrific through out property areas.

2001-2002  Complete Plant Maintenance Inc.  Refinery Worker and Welder
Responsibilities:
Refinery Worker for Chevron Refinery Plant, steel fabrication and welding, repair to piping systems, fuel, water and air, replacing various valves to piping systems and general maintenance of the refinery.

1999-2002  Castleforte Aviation, Inc.  Equipment Operator and Welder
Responsibilities:
Welding and equipment maintenance, 90 foot lift operator, scissor lift operator.

2000-2001  Pitts-Des Moines Inc. Tank Builder
Responsibilities:
To field erect, weld grind and inspect new steel storage tanks, vessels and structures and to make repairs to existing steel storage tanks, vessels and structures.

1997-2000  The Institute For Human Services, Inc., Operations Supervisor
Responsibilities:
Supervising and training of up to four employees at a time, observe and document performance of staff and behavior of guests, mediate guests conflicts, uphold the role of fire Marshall while on shift, consistently enforce policy and procedure, maintain community relations.

role of fire Marshall while on shift, consistently enforce policy and procedure, maintain community relations.

1977-1995   Pearl Harbor Naval Shipyard, Welder WG-10
Responsibilities:
Welding on board naval ships and submarines. Welding qualifications: HY-80, HTS, Aluminum, CRES, Oxyacetylene cutting and welding, high pressure hulls and hull inserts on board naval submarines and various welding repairs on board naval ships.

1977-1994   U.S. Naval Reserve/Hull HT-2, Welder
Responsibilities:
Supervised other personnel in damage control and fire fighting. Prepared and conducted training classes, in welding, pipefitting, shipfitting, sheetmetal, plumbing, oxyacetylene cutting and welding, steel fabrication.

1973-1977   U.S. Navy/Hull Tec HT-3, Welder
Responsibilities:
Welding repair on board naval ships, maintenance on shipboard CHT plumbing systems, and fire fighting systems. Organized PMS records and maintenance upkeep. Stocked and organized damage control lockers.


SKILLS   Hard working, dependable, works independently, willing to take responsibilities, Honest and open minded.

REFERENCES AVAILABLE UPON REQUEST

**Takashima, Kim (US SSA)**

| | |
|---|---|
| **Subject:** | RESCHEDULED ON-SITE WELD TEST  (STAPLES, Chester Anthony) |
| **Location:** | DD4 - w/ Moeiny or Armstrong |
| **Start:** | Fri 1/14/2011 9:00 AM |
| **End:** | Fri 1/14/2011 9:30 AM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Meeting organizer |
| **Required Attendees:** | Moeiny, Nathan (US SSA); Armstrong, Waylen (US SSA); Bruno, Lovell (US SSA) |
| **Optional Attendees:** | Dunn, Cynthia (US SSA) |

1/12/11 Cyndi, this is just for your information only. (Since this individual situation has been troubled, I just wanted to keep you in the loop)  Thank you for your help, Kim

Nate/Waylen/Lovell ; Please note that I've instructed Chester to come to HR on Friday 1/14/10 at 7:30am to obtain an updated temp employee badge.  He will go to Pass and ID thereafter to pickup his pass and contact Nate/Waylen by 9:00am for his appointment.

Print this and keep it handy if you think it will help!
PHONE NUMBERS:
KIM             836-7776 EXT 32
LOVELL 836-7776 EXT 39
CYNDI          423-8888 EXT 266
NATE           CELL 347-3699
WAYLEN       CELL 348-6356
CHESTER      391-3512

Takashima, Kim (US SSA)

| | |
|---|---|
| From: | Dunn, Cynthia (US SSA) |
| Sent: | Thursday, January 13, 2011 6:59 AM |
| To: | Takashima, Kim (US SSA); Bruno, Lovell (US SSA) |
| Subject: | FW: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC |
| Attachments: | BAE 1.12.2011.pdf |

Here is the approval from Pass & ID for Chester Staples as well as the endorsement letter from Code 400. Shouldn't be a problem getting him in tomorrow.

Cyndi


-----Original Message-----
From: Alderson, Justin D MA1 NAVSTA Pearl Harbor, N3AT [mailto:justin.alderson@navy.mil]
Sent: Wednesday, January 12, 2011 3:20 PM
To: Castro, Pearl L CIV PHNSY & IMF, 400/C400
Cc: Dunn, Cynthia (US SSA); Cook, Gail C CIV PHNSY & IMF, 400/C400
Subject: RE: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC

Aloha,

Your request has been received and approved; 24 hours is required for processing you may provide your contractor this information.  Since your request is submitted in advance, applicants may come in for badges/vehicle decals starting 13 January 2011. Mahalo.

V/R

MA1(SW) Justin Alderson
Pass & ID Supervisor
Navy Region Hawaii
808-471-2131


-----Original Message-----
From: Castro, Pearl L CIV PHNSY & IMF, 400/C400
Sent: Wednesday, January 12, 2011 14:15
To: Alderson, Justin D MA1 NAVSTA Pearl Harbor, N3AT
Cc: Dunn, Cynthia (US SSA); Cook, Gail C CIV PHNSY & IMF, 400/C400
Subject: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC

MA1 Alderson,

Forwarding attached request for processing.

Thanks.

vr, Pearl

Ser 400/341
11 Jan 2011

FIRST ENDORSEMENT on **BAE SYSTEMS HAWAII SHIPYARDS**
    rcvd  11 JANUARY 2011

From:  Commander, Pearl Harbor Naval Shipyard & Intermediate Maintenance Facility
To:    Commander, Joint Base Pearl Harbor – Hickam HI, Pass and ID Office

Subj:  **CONTRACTOR PASSES**

1. Forwarded with approval.  Reply only if negative.

    Contract No:  N00024-06-C-4408

    Exp. Date:  31 May 2011  (for badging purposes)

2. Number of contractor passes requested:  -01-

3. Number of contractor vehicle passes requested:  -01-

4. Contracting Officer/Agency Sponsor Point of Contact is Gail Cook at
(808) 473-8000 extension 6306.

NOTE:  Insurance, registration, safety check, etc., will be taken to your office for checking if
copy is not attached.

K. M. DOLLOFF
By direction

Copy to:
File

**Note:  This document may contain information
subject to the Privacy Act of 1974**

| 1. LAST NAME-FIRST NAME-MIDDLE NAME | | 2. SEX | 3. SOCIAL SECURITY NUMBER | | | 4. DATE OF BIRTH | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|---|
| STAPLES, CHESTER ANTHONY | | M | 328 | 48 | 7664 | | 53 | 08 | 14 |
| 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | | | 6 a. GRADE, RATE OR RANK | | | 6 b. PAY GRADE | DATE OF RANK | YEAR | MONTH | DAY |
| NAVY - USN | | | HT3 | | | E4 | | 75 | 09 | 16 |

| 7 a. SELECTIVE SERVICE NUMBER | b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE | c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code) |
|---|---|---|
| | | 2347 WEST LAKE ST CHICAGO, IL 60612 |

| 9 a. TYPE OF SEPARATION | b. STATION OR INSTALLATION AT WHICH EFFECTED |
|---|---|
| RELEASED FROM ACTIVE DUTY AND TRANS-FERRED TO NAVAL RESERVE | NAVAL STATION PEARL HARBOR, HAWAII |

c. AUTHORITY AND REASON

| | d. EFFECTIVE DATE | YEAR | MONTH | DAY |
|---|---|---|---|---|
| | | 77 | 04 | 01 |

| e. CHARACTER OF SERVICE | f. TYPE OF CERTIFICATE ISSUED | 10. REENLISTMENT CODE |
|---|---|---|
| HONORABLE | NA | |

| 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 12. COMMAND TO WHICH TRANSFERRED |
|---|---|
| USS RICHARD S. EDWARDS (DD-950) | NAVAL RESERVE PERSONNEL CENTER, NEW ORLEANS, LA 70149 |

| 13. TERMINAL DATE OF RESERVE / MBS OBLIGATION | | | 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code) | 15. DATE ENTERED ACTIVE DUTY THIS PERIOD | | |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
| 79 | 01 | 28 | CHICAGO, IL 60612 | 73 | 04 | 04 |

| 16 a. PRIMARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | 18. | RECORD OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|---|
| HT-0000-HULL MAINTENANCE TECHNICIAN | 806-SHIPFITTERS | | (a) NET ACTIVE SERVICE THIS PERIOD | 03 | 11 | 28 |
| | | | (b) PRIOR ACTIVE SERVICE | 00 | 00 | 00 |
| 17 a. SECONDARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND E.O.T. NUMBER | | (c) TOTAL ACTIVE SERVICE (a+b) | 03 | 11 | 28 |
| HT-0000 | NA | | (d) PRIOR INACTIVE SERVICE | 00 | 02 | 05 |
| | | | (e) TOTAL SERVICE FOR PAY (c+d) | 04 | 02 | 03 |
| | | | (f) FOREIGN AND/OR SEA SERVICE THIS PERIOD | 03 | 07 | 11 |

| 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964 | 20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years) |
|---|---|
| ☐ YES ☒ NO | SECONDARY / HIGH SCHOOL 12 YRS (1-12 grades)  COLLEGE ___ YRS |

| 21. TIME LOST (Preceding Two Yrs.) | 22. DAYS ACCRUED LEAVE PAID | 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | 24. DISABILITY SEVERANCE PAY | 25. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|---|---|---|
| TL-NONE | 60 | ☐ $15,000 ☐ $5,000 ☒ $20,000 ☐ $10,000 ☐ NONE | ☒ NO ☐ YES | a. TYPE | b. DATE COMPLETED |
| | | | AMOUNT | ENTNAC | 23 MAY 73 |

| 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| NATIONAL DEFENSE SERVICE MEDAL |

| 27. REMARKS |
|---|
| BASIC SHIPBOARD FIRE FIGHTING K-780-2016; DAMAGE CONTROL TEAM TRAINING; DC PWS SCL, K-00/780-2004; INDIVIDUAL REQUESTS COPY OF DD 214N |

| 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code) | 29. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| 2347 WEST LAKE ST CHICAGO, IL 60612 | |
| 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
| N.E. PEARSON, CWO2 ASSISTANT MILITARY PERSONNEL OFFICER | |

**DD FORM 214N** 1 NOV 72   PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.   S/N 0102-LF-002-0202   THIS IS AN IMPORTANT RECORD SAFEGUARD IT.   REPORT OF SEPARATION FROM ACTIVE DUTY

1

**Subject:**  Your application with BAE Systems

**From:**  noreplies@emailhr.com (noreplies@emailhr.com)

**To:**  anthonystaples71@yahoo.com;

**Date:**  Wednesday, December 15, 2010 5:04 PM


Dear Chester Staples,

Thank you for expressing an interest in the following position(s) submitted on 12/15/2010:

Shipfitter/Welders- Journeymen Level - 351422


If there is a match we will contact you to discuss your background and career interests in more detail. We value your interest in exploring new opportunities and your patience during our selection process. We also encourage you to review other current open positions on our website, http://www.baesystems.jobs and apply for any other position(s) for which you may be qualified.

Thank you,

BAESystems Human Resources

# CHESTER ANTHONY STAPLES

3558 Woodlawn Drive
Honolulu, HI 96822
Cellular Phone:  808-391-3512
Email Address:

BAE SYSTEMS
3049 UALENA  ST.
HONOLULU, HI 96819
Email:

I am very interested in the position as a Shipfitter Welder (Jouneyman Level) Job No.
351422, enclosed is a copy of my resume which shows my work history and experience
as a welder on board Navy ships and submarines.  Please  consider my qualifications for
this position.
I will be looking forward to hearing from you, and my contact number is stated above.


Respectfully,


Chester A. Staples

**Subject:** FW: BAE SYSTEMS HAWAII SHIPYARDS APPLICATION AND APPOINTMENT CONFIRMATION

**From:** Takashima, Kim (US SSA) (kim.takashima@baesystems.com)

**To:** anthonystaples71@yahoo.com;

**Date:** Friday, December 17, 2010 2:26 PM

Sorry, here are the attachments. Kim

**From:** Takashima, Kim (US SSA)
**Sent:** Friday, December 17, 2010 2:25 PM
**To:** 'anthonystaples71@yahoo.com'
**Subject:** BAE SYSTEMS HAWAII SHIPYARDS APPLICATION AND APPOINTMENT CONFIRMATION

To:  Chester Staples via email to anthonystaples71@yahoo.com

Chester:

This is to confirm your appointment for interview for the position of **(351422) Shipfitter/ Welder –
Journeyman**   with BAE Systems Hawaii Shipyards on:

Wednesday December 22, , 2010 @ 8:00am  ; please plan on coming 5-10 minutes early to turn in
your application.

Your appointment will be held at:

BAE Systems Hawaii Shipyards, Human Resources Department

3049 Ualena Street, Suite 910 Honolulu, Hawaii 96819 (AIRPORT CENTER)

Non-validated parking is available in our garage (about $2.50 per half hour).

Your appointment is with :

Nate Moeiny, Welding  Department Craft Manager

The attached files contain our Application for Employment forms.

Please print and complete all applicable areas with your most current information in full and bring with you to your appointment

(Please note that the application form requests 10 years of Employment History, print additional pages if necessary)


Should you need to contact us prior to your appointment, please call me at the number below.


Thank you



*Kim R. Takashima*

Human Resources Department Training Specialist

**BAE SYSTEMS HAWAII SHIPYARDS**

P.O. Box 30989 Honolulu HI 96820

PH (808) 836-7776 ext. 32

FX (808) 836-7882

Office: Airport Center Building 3049 Ualena Street Ste. 910 Honolulu, HI 96819

BAE Career Website: www.baesystems.jobs

*Warning & Confidentiality Notice This messge and any attachments may contain technical data whose export is restricted by the Arms Export Control Act (Title 22, USC Sec. 2751) or Executive Order 12470. Violations of these export laws are subject to severe criminal penalties. Confidential information or proprietary material in this message is intended solely for the use of the person or entity to which it is addressed. Any unauthorized review, use, disclosure or distribution of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of this communication and any attachments.*

---

## Attachments

- Application for employment 100525.pdf (104.33KB)
- Application affirmative action questionnaire.pdf (338.52KB)

**BAE SYSTEMS**        **Employee Status Report**

Emp #:   25640473            Employee Name:            Chester A. STAPLES

Division:            Production            Department:            256010 - Welding

## NEW HIRE STATUS/CHANGES

| | | **Human Resources/Payroll Dept. Use Only** |

Effective Date:   2/23/2011        Home Dept. No _____

Job Title:            2G023 - Apprentice 1        W/C Code: _____

Hire Status:  ● New Hire      ○ Rehire        Tax Status:  ○ S  ○ M

OT Status:  ● (N) Non-exempt   ○ (E) Exempt      Fed. Filing Status: _____

Status:  ● FT Reg.    ○ FT Temp    ○ PT      Fed. Extra Tax Amt.: _____
        ○ Inter-company Transfer (complete "Other Status" Section)    State Filing Status: _____
                            State Extra Tax Amt.: _____

Pay Freq:  ● Hourly / Weekly    ○ Salaried / Weekly

Hourly Calc:       $   23.7000
Weekly Calculation  $ _____
**Hourly Employee Pay Rate:**        **% Increase / (Mo./Annual)**    Monthly Calculation  $ _____
                            Annual Calculation  $ _____

Current Rate: _____    _____
New Rate:       $23.70        _____    GL Pay Type:       601
Alt. Rate 2: $ _____    _____    Indirect/Direct     Direct
Alt. Rate 3: $ _____    _____    Benefit Plan       SH4

**Salaried Employee Pay Rate:**                System Input Date:   FEB 24 2011
        **Pay Period Rate**        **% Increase / (Mo./Annual)**    Peoplesoft    already in PS CC

Current Rate: _____    _____
New Rate:     _____    _____

Remarks for any pay increase _____
_____

| | **Human Resources/Payroll Dept. Use Only** |

Distribution:
    Payroll        _____
    Employee       _____
## BONUS/COMMISSION STATUS
    Supervisor     _____
Effective Date: _____   ○ Bonus    Human Resoures   Original
Amount: _____       ○ Commission
Remarks: _____

**Human Resources/Payroll Dept. Acknowledgement**

By: _____

## OTHER STATUS (Including Inter-Company Transfers)

Title:  HR Mgr. / HR Sup /  HR Asst.

Effective Date: _____
Remarks: _____        Date:  FEB 24 2011

| **Recommended By:** | | **Approved By:** | |
Name:  Nate Moeiny (25640291)            Name:   Larry Wood
            (Signature)                    (Signature)
Title:  Craft Manager   Date: 2/23/11    Title: Production Manager   Date: 2-23-11

RECEIVED
FEB 24 2011
By _____

Revised: 11/15/04

**Takashima, Kim (US SSA)**

| | |
|---|---|
| **Subject:** | RESCHEDULED ON-SITE WELD TEST  (STAPLES, Chester Anthony) |
| **Location:** | DD4 - w/ Moeiny or Armstrong |
| **Start:** | Fri 1/14/2011 9:00 AM |
| **End:** | Fri 1/14/2011 9:30 AM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Meeting organizer |
| **Required Attendees:** | Moeiny, Nathan (US SSA); Armstrong, Waylen (US SSA); Bruno, Lovell (US SSA) |
| **Optional Attendees:** | Dunn, Cynthia (US SSA) |

1/12/11 Cyndi, this is just for your information only. (Since this individual situation has been troubled, I just wanted to keep you in the loop)  Thank you for your help, Kim

Nate/Waylen/Lovell ; Please note that I've instructed Chester to come to HR on Friday 1/14/10 at 7:30am to obtain an updated temp employee badge.  He will go to Pass and ID thereafter to pickup his pass and contact Nate/Waylen by 9:00am for his appointment.

Print this and keep it handy if you think it will help!

PHONE NUMBERS:

| | |
|---|---|
| KIM | 836-7776 EXT 32 |
| LOVELL | 836-7776 EXT 39 |
| CYNDI | 423-8888 EXT 266 |
| NATE | CELL 347-3699 |
| WAYLEN | CELL 348-6356 |
| CHESTER | 391-3512 |

Takashima, Kim (US SSA)

| | |
|---|---|
| From: | Dunn, Cynthia (US SSA) |
| Sent: | Thursday, January 13, 2011 6:59 AM |
| To: | Takashima, Kim (US SSA); Bruno, Lovell (US SSA) |
| Subject: | FW: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC |
| Attachments: | BAE 1.12.2011.pdf |

Here is the approval from Pass & ID for Chester Staples as well as the endorsement letter from Code 400. Shouldn't be a problem getting him in tomorrow.

Cyndi

-----Original Message-----
From: Alderson, Justin D MA1 NAVSTA Pearl Harbor, N3AT [mailto:justin.alderson@navy.mil]
Sent: Wednesday, January 12, 2011 3:20 PM
To: Castro, Pearl L CIV PHNSY & IMF, 400/C400
Cc: Dunn, Cynthia (US SSA); Cook, Gail C CIV PHNSY & IMF, 400/C400
Subject: RE: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC

Aloha,

Your request has been received and approved; 24 hours is required for processing you may provide your contractor this information.  Since your request is submitted in advance, applicants may come in for badges/vehicle decals starting 13 January 2011. Mahalo.

V/R

MA1(SW) Justin Alderson
Pass & ID Supervisor
Navy Region Hawaii
808-471-2131

-----Original Message-----
From: Castro, Pearl L CIV PHNSY & IMF, 400/C400
Sent: Wednesday, January 12, 2011 14:15
To: Alderson, Justin D MA1 NAVSTA Pearl Harbor, N3AT
Cc: Dunn, Cynthia (US SSA); Cook, Gail C CIV PHNSY & IMF, 400/C400
Subject: CONTRACTOR REQUEST - BAE; AMSEC, LLC; HILTI; PACIFIC POWER PRODUCTS COMPANY, LLC

MA1 Alderson,

Forwarding attached request for processing.

Thanks.

vr, Pearl

Ser 400/341
11 Jan 2011

**FIRST ENDORSEMENT on BAE SYSTEMS HAWAII SHIPYARDS**
    rcvd  11 JANUARY  2011

From:  Commander, Pearl Harbor Naval Shipyard & Intermediate Maintenance Facility
To:      Commander, Joint Base Pearl Harbor – Hickam HI, Pass and ID Office

Subj:  **CONTRACTOR PASSES**

1. Forwarded with approval.  Reply only if negative.

    Contract No:  N00024-06-C-4408

    Exp. Date:  31 May 2011   (for badging purposes)

2. Number of contractor passes requested:  -01-

3. Number of contractor vehicle passes requested:  -01-

4. Contracting Officer/Agency Sponsor Point of Contact is Gail Cook at
(808) 473-8000 extension 6306.


NOTE:  Insurance, registration, safety check, etc., will be taken to your office for checking if
copy is not attached.

K. M. DOLLOFF
By direction

Copy to:
File

Note:  **This document may contain information
subject to the Privacy Act of 1974**

# Total Hours and Contributions Summary

| Year | Hours | Contributions |
|------|-------|---------------|
| 2004 | 1,821.75 | $2,038.82 |
| 2005 | 1,435.25 | $1,943.76 |
| 2006 | 1,591.50 | $2,571.83 |
| 2007 | 1,978.75 | $3,688.01 |
| 2008 | 169.25 | $338.50 |
| 2009 | .00 | $.00 |
| 2010 | .00 | $.00 |
| *BAF* 2011 | 591.00 | $1,447.95 |
| 2012 | 1,281.00 | $3,138.45 |
| Vested As Of 09/30/2012 | | |
| 2013 | 1,769.00 | $9,340.73 |
| 2014 | 2,827.00 | $16,350.19 |
| 2015 | 2,988.00 | $17,688.96 |
| 2016 | 2,753.00 | $17,261.31 |
| 2017 | 2,499.00 | $16,543.38 |

## Pension Plan Credit Year

The Pension Plan Credit Year is from October 1 through September 30.

## Hours

| | |
|---|---|
| Total hours reported: | 21,704.50 |
| Total hours forfeited due to Breaks in Covered Employment: | .00 |
| Total hours used in your Pension calculation: | 21,704.50 |

## Accrued Contributions

| | |
|---|---|
| Total accrued contributions reported: | $92,351.89 |
| Total accrued contributions forfeited due to Breaks in Covered Employment: | .00 |
| Total accrued contributions used in your Pension calculation: | $92,351.89 |

Total accrued contributions used in your pension calculation as accrued:

| | |
|---|---|
| *Through* September 30, 2012, calculated at **33%** | $15,167.32 |
| *After* September 30, 2012, calculated at **12%** | $77,184.57 |

Accrued contributions are the total contributions less the supplemental non-accruing contributions that were in effect for hours worked from February 1, 2009 through September 30, 2012. All contributions for hours worked on or after October 1, 2012 are included in benefit accrual.

XXX-XX-7664

# 2017 Hours and Contributions Detail Statement

| Work Date | Local | Date Received | Regular Hours | Overtime Hours | Double Hours | Contrib. Amount | Employer |
|---|---|---|---|---|---|---|---|
| 10/2016 | 0627 | 11/09/2016 | 151.00 | | 0.00 | $999.62 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 11/2016 | 0627 | 12/14/2016 | 183.00 | | 0.00 | $1,211.46 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 12/2016 | 0627 | 01/11/2017 | 173.00 | | 0.00 | $1,145.26 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 01/2017 | 0627 | 02/15/2017 | 196.00 | | 0.00 | $1,297.52 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 02/2017 | 0627 | 03/14/2017 | 170.00 | | 0.00 | $1,125.40 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 03/2017 | 0627 | 04/12/2017 | 301.00 | | 0.00 | $1,992.62 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 04/2017 | 0627 | 05/10/2017 | 268.00 | | 0.00 | $1,774.16 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 05/2017 | 0627 | 06/12/2017 | 280.00 | | 0.00 | $1,853.60 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 06/2017 | 0627 | 07/12/2017 | 266.00 | | 0.00 | $1,760.92 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 07/2017 | 0627 | 08/09/2017 | 203.00 | | 0.00 | $1,343.86 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 08/2017 | 0627 | 09/13/2017 | 175.00 | | 0.00 | $1,158.50 | BAE SYSTEMS HAWAII SHIPYDS INC |
| 09/2017 | 0627 | 10/11/2017 | 133.00 | | 0.00 | $880.46 | BAE SYSTEMS HAWAII SHIPYDS INC |
| **TOTAL** | | | **2499.00** | | **0.00** | **$16,543.38** | |

Cut out and use this wallet card to verify your hours when applying for work. You may wish to laminate this card for safe-keeping.

The Total Construction Hours on this card only include hours worked as a Construction Boilermaker from December, 1976 through the present.

**BOILERMAKER-BLACKSMITH**
*"always protecting our Boilermaker family"*
NATIONAL PENSION TRUST

**CHESTER A. STAPLES**

DOB:                    08/14/1953
SSN:                    XXX-XX-7664
Home Local:             0627
Total Hours:            21,704.50
Total Construction Hours:    .00

This card shows total hours worked through 09/30/2017, which have been reported through 11/30/2017 and does not reflect any Breaks in Covered Employment, if applicable.

**BAE SYSTEMS**

# SKILL AND ABILITY LIST

Department:         Shipfitter/Welder
Classification:     Level 1

Employee's Name:   _____

| Skill and Ability | | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Knowledgeable with Navy Standard Items, general and Those that pertain to the trade, and Mil STD. | _____ | |
| 2. | Knowledgeable with mobilization requirements for work performed by the Department. | _____ | _____ |
| 3. | Knowledgeable to BAE HSY process control procedures. | _____ | _____ |
| | a. Weld 100 C-FE-1 (mild steel plate) SMAW | _____ | _____ |
| | b. Weld 200 (aluminum plate) GMAW | _____ | _____ |
| 4. | Knowledgeable in proper operation of ironworker machine. | _____ | _____ |
| 5. | Knowledgeable/capable to weld inserts/patch. | _____ | _____ |
| 6. | Knowledgeable/capable to MIG (GMAQ/Heli Arc) and TIG | _____ | |
| 7. | (GTAW on the following materials): | | |
| | a. Stainless | _____ | _____ |
| | b. Brass/bronze | _____ | _____ |
| | c. Other alloys | _____ | _____ |
| 8. | Able to perform with minimal supervision. | _____ | _____ |
| 9 | Able to lay-out inserts, ect. | _____ | _____ |
| 10. | Knowledgeable/capable with all NDT requirements. | _____ | _____ |
| 11. | Knowledgeable with shipboard terminology, nomenclature & location. | _____ | _____ |
| 12. | Knowledgeable of Blue Print Reading and Layouts. | _____ | _____ |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 13. | Attendance. | _____ | _____ |
| 14. | Attitude. | _____ | _____ |
| 15. | Ability to communicate. | _____ | _____ |
| 16. | Valid Driver's License | _____ | _____ |

Comments: _____

_____

Prepared by: _____     Date: _____
                Print Name              Signature

Acknowledged by: _____     Date: _____

# PACIFIC SHIPYARDS INTERNATIONAL (5 YEARS) WELDER SHIPFITTER



**Pacific Shipyards**
**I N T E R N A T I O N A L**

Welder Workmanship and Visual Inspection Training Program          Rev 0/Sep 2005

## *Record of Completion*

## *Welder Workmanship and Visual Inspection Training Program*

Fabrication and Acceptance Standards Covered:     MIL-STD-1689A
MIL-STD-2035A
MIL-STD-22D
S9074-AQ-GIB-010/248
T9074-AS-GIB-010/271
S9074-AR-GIB-010/278

Trainee Name:                *Chester A Staples*
Trainee ID Number:           *30039*
Date(s) of Training:         *12-10-05*
Date of Written Exam:        *12-10-05*
Written Examination Score:   *75 %*

Test Administrator:          *Jack R. Laws*

                             *Jack R. Laws*
                             Signature

WI-WP-001                                              Enclosure (C)

# Pacific Shipyards International

## ANNUAL VISION TEST
## FOR
## WELDER/BRAZER AND NONDESTRUCTIVE TEST PERSONNEL

| REQUIREMENT REFERENCE | NAVSEA S9074-AQ-GIB-010/248 | X | WELDER | X |
| | NAVSEA T9074-AS-GIB-010/271 | | BRAZER | |
| | NAVSEA 0900-LP-001-7000 | | NDT | |

**NAME:** STAPLES, CHESTER

**EMPLOYEE NO:** 90039

**SSN:** 

**DATE TESTED:** 11-03-06

**DATE OF LAST EXAM:** NOT AVAILABLE

**NEXT EYE EXAM DUE:** 11-03-07

---

### J-I JAEGER

PASS [X]    FAIL [ ]

CORRECTIVE AIDS    REQUIRED [X]    NOT REQUIRED [ ]

**TEST REQUIREMENTS:** Standards of acceptance for vision test shall be natural or corrected near distance acuity such that the individual is capable of reading the J-1 letters on the Standard JAEGER's Test Chart or equivalent for near vision at **15 inches**.

JACK R. LAWS

SIGNATURE                                        11-03-06

                                                DATE OF TEST

---

### COLOR DISCRIMINATION

PASS [X]    FAIL [ ]

LIST IMPAIRMENTS

NONE

**TEST REQUIREMENTS:** Shall be able to read the numbers on standard Pseudo-Isochromatic-Plates (PIP) or equivalent, with normal vision with no color blindness.

JACK R. LAWS   _Jack R Laws_

SIGNATURE                                        11-03-06

                                                DATE OF TEST

---

### BRIGHTNESS DISCRIMINATION
### (RADIOGRAPHIC INSPECTORS)

PASS [ ]    FAIL [ ]

CORRECTIVE AIDS    REQUIRED [ ]    NOT REQUIRED [ ]

**TEST REQUIREMENTS:** All radiographic personnel shall be tested for brightness discrimination, using test radiographs containing randomly distributed penetrameters, with varying densities and sizes.

TEST NOT REQUIRED

SIGNATURE                                        NOT REQUIRED

                                                DATE OF TEST

---

NOTES:

1. Each welder, welding operator and brazer (except for tack, fillet, spot, and stud welders) shall be required to pass an annual vision test to determine visual acuity. In addition, vision tests for welders and operators for titanium materials shall include a color discrimination test. Welders who **do not** pass the color discrimination test will not be allowed to weld on titanium materials.

2. NDT personnel shall be required to pass an annual vision test conducted by a Qualified Technician, to determine visual acuity. In addition, the individual must have the ability to distinguish between colors when required by the work. All radiographic personnel shall be tested for brightness discrimination.

Eye Examination Form: PSI-1 Rev 0

# INSPECTESTING

## WELDER QUALIFICATION INSPECTION REPORT

| VISUAL | LIQUID PENETRANT | MACRO ETCH | GUIDED BEND |
|---|---|---|---|
| NDT-4 XX | NDT-3 ____ | ____ | XX |

**DATE:** 10/11/04    **I.T. JOB #:** HI 3000

**CUSTOMER:** PSI    **PURCHASE ORDER:** TBD

**WELDER:** CHESTER STAPLES    **WELDER ID:** 90039

**TEST NO.:** 01    **PROCEDURE NO.:** KS-CS-3    **JOINT DESIGN** B1V-1

| POSITION: | FLAT | HORZ. | VERT. | OVHD. | 6G |
|---|---|---|---|---|---|
| | X | X | X | | |

**PROCESS:** SMAW

| PIPE | BASE MATERIAL: S-1 | FILLER MATERIAL: A-2A |
|---|---|---|
| PLATE X | SIZE: .375" | SIZE: 3/32" |
| SOCKET | SPECIFICATION: MIL-S-22698 | SPECIFICATION: MIL-E-22200/1 |

| STD/SPECS | | AREA/IDENTIFICATION OF INSPECTION | ACC | REJ |
|---|---|---|---|---|
| S9074-AQ-GIB-010/248 | X | 2G  VISUAL | X | |
| S9074-AR-GIB-010/278 | | ROOT BEND | X | |
| S9074-AS-GIB-010/271 | X | FACE BEND | X | |
| MIL-STD-1689A | | | | |
| MIL-STD-2035A | X | 3G  VISUAL | X | |
| | | ROOT BEND | X | |
| CLASS  1 | | FACE BEND | X | |
| LIQUID PENETRANT | | | | |
| AWS: N/A | | 4G  VISUAL | X | |
| TYPE: N/A | | ROOT BEND | X | |
| METHOD: N/A | | FACE BEND | X | |
| FORM: N/A | | | | |
| MANUF.: N/A | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

INSPECTOR:  JACK R. LAWS    LEVEL III

# PACIFIC SHIPYARDS INTERNATIONAL
### P.O. BOX 30989, HONOLULU, HI 96820   TEL#(808) 848-6211

## WELDER/OPERATOR PERFORMANCE QUALIFICATION RECORD
### NAVSEA Technical Manual S9074-AQ-GIB-010/248

| Welder or Welding Operator Information | | | |
|---|---|---|---|
| **Name** **STAPLES, CHESTER** | **Badge Number** 90039 | **Dept.** WELDING | **Date Tested** 10/12/2004 |
| **Vision Test Date** 10/12/04 | Corrective AIDS Required     No  **X**  Yes | | Welder Training Date (Workmanship)/SCORE |

| BASE MATERIAL (Table 1) | PIPE __X__ PLATE | Plate: .375" THICKNESS | Welding Process FCAW   TORCH GAS: CO2 | Weld Test No. (Table X) |
|---|---|---|---|---|
| Group: S– 1 to S– 1 | | | | 1 |
| Base Mat'l: P-1 To P-1 | | Pipe: N/A SIZE*SCHEDULE* THICKNESS | Weld Procedure No. FCAW-ABS 1.1 | Joint Design (MIL-STD-22) |
| Specification MIL-S-22698 | | | | B1V-1 |

### POSITION(S) QUALIFIED – PLATE

| PLATE (GROOVE) | | | PLATE (FILLET/TACK) | | |
|---|---|---|---|---|---|
| | Q-X | **(1G) FLAT** | T | Q | (1F) FLAT |
| T-X | Q-X | **(2G) HORZ.** | T | Q | (2F) HORZ. |
| T-X | Q-X | **(3G) VERT.** | T | Q | (3F) VERT. |
| T-X | Q-X | **(4G) OVHD** | T | Q | (4F) OVHD |
| T | Q | | T | Q | |
| | Q-X | **ALL POSITIONS** | | Q__ | ALL POSITIONS |

### POSITION(S) QUALIFIED – PIPE

| PIPE GROOVE | | | PIPE SOCKET | | |
|---|---|---|---|---|---|
| T | Q | (1G) ROLLED | T | Q | (1F) ROTATED 45º |
| T | Q | (2G) VERT. | T | Q | (2F) VERT, ROTATED |
| T | Q | (5G) HORZ. | T | Q | (2F) HORZ. |
| T | Q | (6G) INCLINED | T | Q | (4F) OVHD |
| T | Q | | T | Q | (5F) FIXED |
| | Q__ | ALL POSITIONS | | Q__ | ALL POSITIONS |

| THICKNESS RANGE QUALIFIED: .187" (min.) to .750" (max) | | | | RESTRICTED: NO |
|---|---|---|---|---|
| FILLER MATERIAL (TABLE II) | ELECTRODE | SPECIFICATION NO. | DIAMETER | QUALIFIES GROUPS (TABLE VIII) |
| GROUP A – 2D | __MIL-71T-1__ | __MIL-E-22200/1__ | __3/32"__ | __2 & 3__ |

| _ACC_ Visual Inspection (VT) | ___ Dye Penetrant Tests (PT) | ___ Other (describe below) |
|---|---|---|
| _ACC_ Physical (bend, break, etc) | ___ Magnetic Particle Test (MT) | |
| ___ Radiographic Test (RT) | ___ Ultrasonic Test (UT) | |
| ___ Macro Exam of Weld Nugget | ___ Other: | |

### PERFORMANCE QUALIFICATION TEST RESULTS (See Attached Reports)
### Qualified     YES,   ALL POSITIONS

**Certifying Signature:** *Jack R. Laws*     **LEVEL III**   **Date:**   12 OCT 2004

**WELDER or WELDING OPERATOR TRANSFER**
ATTACHMENTS: _____ Vision Test _____ NDT/Destructive Test Report(s) (Copy of Original Reports)

_____ Workmanship Training _____ Latest Update Print-out (Copy of Current and Proceeding Quarter)

**Reviewed for Transfer:** _____     **Date:** _____
                                 QA Manager or Chief Inspector

MAY-17-2007 09:26   FROM:PACIFIC SHPYD 8088486279          TO:4238395          P:5/5

PSI Welders Maintenance Log

| LAST NAME | FIRST NAME | EYE EXAM | WELDER WORKMANSHIP PRGM | INITIAL KS-CS-3 QUAL | Q-2 APR-JUN |
|---|---|---|---|---|---|
| Staples | Chester | 11/3/2006 | 10/10/2005 Pass | 10/11/2004 1G,2G,3G,4G | 04/08/2007 USS Crommelin |

MAY-17-2007 13:13  FROM:PACIFIC SHPYD 8088486279                    TO:4238395                    P:1/1



# Pacific Shipyards
### I N T E R N A T I O N A L
**PO BOX 30989 • HONOLULU, HAWAII 96820 • TEL (808) 848-6211**

## WELDER PERFORMANCE QUALIFICATION RECORD

Date Tested: *10/11/2004*

| Welder or Welding Operator | Dept | Badge No. or SSN |
|---|---|---|
| *Chester Staples* | | *90039* |

*Test for CS to CS Plate*

**Welder Information**

| Group (S-No): *S-1 to S-1* | Vision Test Date: *See Records* |
|---|---|
| Base Material: *Carbon Steel (plate) to Carbon Steel (plate)* | Corrective Aids: *See Records* |
| Specification: *ASTM A-515, Gr 65/70 to ASTM A-515, Gr 65/70* | Welder Training Date: *See Records* |

| | |
|---|---|
| Process: *SMAW-MA* | Weld Test No: *1* |
| TorchGas: *N/A* | Joint Design: *B1V.1 (3/8"T)* |
| Company Procedure No: *KS-CS-3* | Reference: *MIL-STD-22D* |
| | Mat'l Thick.: *.375* |

| Position(s) Tested | Plate Position(s) Qualified | Pipe Position(s) Qualified | Other Weld Position(s) Qualified |
|---|---|---|---|
| *2G, 3G, & 4G* | *All* | *All* | *Fillet - All* |

| Thickness Range Qualified: *.125"* (min)  To  *.750"* (max) | Restricted: *No* |
|---|---|

| Filler Material Group | Electrode | Specification | Size | Also Qualifies Groups |
|---|---|---|---|---|
| *A-2A* | *7018* | *MIL-E-22200/1* | *3/32"* | *A-1A, 2A, 3A, 4A,  6A, 7A1, 7A2* |

### Performance Qualification Test Results
## *Qualified IAW S9074-AQ-GIB-010/248*

| X | Visual Examination | | Dye Penetrant Test (PT) |
|---|---|---|---|
| X | Physical (Bend Test) | | Magnetic Particle Test (MT) |
| | Radiographic Test (RT) | | Ultrasonic Test (UT) |
| | Macro Exam of Weld Nugget | | Other (Describe under Remarks) |

Certified at:
PSI



Certifying Signature: _Jim James QA Mgr_          Date Processed: *2/17/2007*

Welder or Welding Operator Transfer:

Attachments:  ☐ Vision Test            ☐ NDT/Destructive Test Report(s) (Copy of Original)
              ☐ Workmanship Training   ☐ Latest Update (Copy of Current and Preceding Quarter

Review for Transfer (QA Manager): _____  Date: _____

# **INSPEC**TESTING

## WELDER QUALIFICATION INSPECTION REPORT

| VISUAL NDT-4 __XX__ | LIQUID PENETRANT NDT-3 __  __ | MACRO ETCH __  __ | GUIDED BEND __XX__ |

DATE: 10/11/04                                              I.T. JOB #:   HI 3000

CUSTOMER:   PSI                          PURCHASE ORDER:   TBD

WELDER:   CHESTER STAPLES              WELDER ID:   90039

TEST NO.:   01        PROCEDURE NO.:   KS-CS-3      JOINT DESIGN   B1V-1
POSITION:   FLAT   HORZ.   VERT.   OVHD.    6G
                            X        X        X        PROCESS:   SMAW

PIPE
PLATE   X        BASE MATERIAL:  S-1              FILLER MATERIAL: A-2A
SOCKET           SIZE: .375"                          SIZE: 3/32"
                 SPECIFICATION: MIL-S-22698       SPECIFICATION: MIL-E-22200/1

| STD/SPECS | | AREA/IDENTIFICATION OF INSPECTION | ACC | REJ |
|---|---|---|---|---|
| S9074-AQ-GIB-010/248 | X | 2G  VISUAL | X | |
| S9074-AR-GIB-010/278 | | ROOT BEND | X | |
| S9074-AS-GIB-010/271 | X | FACE BEND | X | |
| MIL-STD-1689A | | | | |
| MIL-STD-2035A | X | 3G  VISUAL | X | |
| | | ROOT BEND | X | |
| CLASS  1 | | FACE BEND | X | |
| LIQUID PENETRANT | | | | |
| AWS: N/A | | 4G  VISUAL | X | |
| TYPE: N/A | | ROOT BEND | X | |
| METHOD: N/A | | FACE BEND | X | |
| FORM: N/A | | | | |
| MANUF.: N/A | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | INSPECTOR:  JACK R. LAWS      LEVEL III | | |

MAY-17-2007 09:25   FROM:PACIFIC SHPYD 8088486279          TO:4238395          P:4/5

# Pacific Shipyards International

## ANNUAL VISION TEST
## FOR
## WELDER/BRAZER AND NONDESTRUCTIVE TEST PERSONNEL

| REQUIREMENT REFERENCE | NAVSEA S9074-AQ-GIB-010/248 | X | | WELDER | X |
|---|---|---|---|---|---|
| | NAVSEA T9074-AS-GIB-010/271 | | | BRAZER | |
| | NAVSEA 0900-LP-001-7000 | | | NDT | |

| NAME: | STAPLES, CHESTER | | |
|---|---|---|---|
| EMPLOYEE NO: | 90039 | DATE TESTED: | 11-03-06 |
| SSN: | | DATE OF LAST EXAM: | NOT AVAILABLE |
| | | NEXT EYE EXAM DUE: | 11-03-07 |

|   | J-1 JAEGER | | | CORRECTIVE AIDS | |
|---|---|---|---|---|---|
| PASS | X | FAIL | | REQUIRED | X | NOT REQUIRED | |

**TEST REQUIREMENTS:** Standards of acceptance for vision test shall be natural or corrected near distance acuity such that the individual is capable of reading the J-1 letters on the Standard JAEGER's Test Chart or equivalent for near vision at 15 inches.

JACK R. LAWS
_____
SIGNATURE                                    11-03-06
                                             DATE OF TEST

| COLOR DISCRIMINATION | | | LIST IMPAIRMENTS |
|---|---|---|---|
| PASS X | FAIL | | NONE |

**TEST REQUIREMENTS:** Shall be able to read the numbers on standard Pseudo-Isochromatic-Plates (PIP) or equivalent, with normal vision with no color blindness.

JACK R. LAWS   _Jack R Laws_
                SIGNATURE                      11-03-06
                                               DATE OF TEST

| BRIGHTNESS DISCRIMINATION (RADIOGRAPHIC INSPECTORS) | | CORRECTIVE AIDS | |
|---|---|---|---|
| PASS | FAIL | REQUIRED | NOT REQUIRED | |

**TEST REQUIREMENTS:** All radiographic personnel shall be tested for brightness discrimination, using test radiographs containing randomly distributed penetrameters, with varying densities and sizes.

TEST NOT REQUIRED                              NOT REQUIRED
_____                          _____
SIGNATURE                                      DATE OF TEST

NOTES:

1.  Each welder, welding operator and brazer (except for tack, fillet, spot, and stud welders) shall be required to pass an annual vision test to determine visual acuity.  In addition, vision tests for welders and operators for titanium materials shall include a color discrimination test.  Welders who do not pass the color discrimination test will not be allowed to weld on titanium materials.

2.  NDT personnel shall be required to pass an annual vision test conducted by a Qualified Technician, to determine visual acuity.  In addition, the individual must have the ability to distinguish between colors when required by the work.  All radiographic personnel shall be tested for brightness discrimination.

Eye Examination Form: PSI-1 Rev 0



**ABS**

Certificate No.   HL491186-XC

Port of   HONOLULU, HI

Date   25 FEBRUARY 2004

## WELDER PERFORMANCE QUALIFICATION TESTS

**T**HIS IS TO CERTIFY the following named welders of "Pacific Shipyards International", have satisfactorily completed and passed the Welders Performance Qualifications Test conducted and witnessede in accordance with the American Bureau of Shipping Welders Requirements and approved procedure using E7018 rods in the 6G (UP) position on 6 inch, 0 .432 inch thick pipe:

| NAME | IDENTIFICATION NUMBER |
|------|------------------------|
| WILLARD AGRAAN | 90004 |
| CLAYTON ARAUJO | 90041 |
| WILLIE ANTONIO | 90006 |
| BRANDON BODELL | 90095 |
| FRANK BOTELHO | 98392 |
| DUCK BUM CHOI | 90033 |
| SCOTT KALAHIKI | 90063 |
| ENRIQUE LIBOY | 90045 |
| JOSELITO PEJI | 90042 |
| MICHAEL ROCHELAU | 90088 |
| DANIAL BURGESS | 90077 |
| RICHARD SALIOT | 90044 |
| CHESTER STAPLES | 90039 |
| FA'ATAUAO SULA | 90416 |
| ROLANDO TIRSO | 90080 |

Jeanne Savoie SURVEYOR

Note:   This Certificate evidences compliance with one or more of the Rules, guides, standards or other criteria of American Bureau of Shipping and is issued solely for the use of ABS, its committees, its clients or other authorized entities. This Certificate is a representation only that the structure, item of material, equipment, machinery or any other item covered by this Certificate has met one or more of the Rules, guides, standards or other criteria of American Bureau of Shipping as of the date of issue. Pursuant to any agreement to issue this Certificate the terms and conditions of classification and to review the survey records for a fuller description of any restrictions or limitation on the vessel's service is contained within. The validity, applicability and interpretation of this Certificate is governed by the Rules and standards of American Bureau of Shipping who shall remain the sole judge thereof. Nothing contained in this Certificate...



**W**ELDERS **Q**UALIFICATION **R**EPORT **F**ORM

## ABS

| REPORT ON: | WELDER QUALIFICATION | |
|---|---|---|
| Report No.:<br>HL491186-B | Date:<br>25 February 2004 | |
| Vessel's Name:<br>----------------- | ABSID/PID/CID:<br>PROJECT # 1285427 | |
| Manufacturer:<br>--------------- | Mfg.No.:<br>------------------- | |
| Purchaser/Builder/S.Y.:<br>PACIFIC SHIPYARD | PO No./Hull No.:<br>------------------- | |
| Location:<br>123 AHUI ST., HONOLULU, HI | | |
| Material Test Report No.:<br>SEE ATTACHED | | |
| Welding Procedure & Date Approved:<br>FCAW-ABS-1 | | |

**Details, etc.**

The following named welders of "Pacific Shipyards International", have satisfactorily completed and passed the Welders Performance Qualifications Test conducted and witnessed in accordance with the American Bureau of Shipping Welders Requirements and approved procedure using 0.045"E71T-1 wire in the horizontal, vertical (up) and overhead positions on 3/8" thick ABS Gr. A (mild steel) plate:

| <u>NAME</u> | <u>IDENTIFICATION NUMBER</u> |
|---|---|
| CLAYTON ARAUJO | 90041 |
| WILLIE ANTONIO | 90006 |
| BRANDON BODELL | 90095 |
| SCOTT KALAHIKI | 90063 |
| ENRIQUE LIBOY | 90045 |
| JOSELITO PEJI | 90042 |
| MICHAEL ROCHELAU | 90088 |
| CHESTER STAPLES | 90039 |
| RICHARD SALIOT | 90044 |
| ROLANDO TIRSU | 90080 |

NOTE:  This Report evidences compliance with one or more of the Rules, guides, standards or other criteria of American Bureau of Shipping and is issued solely for the use of the Bureau, its committees, its clients or other authorized entities. This Report is a representation only that the vessel, structure, item of material, equipment, machinery or any other item covered by this Report has met one or more of the Rules, guides, standards or other criteria of American Bureau of Shipping as of the date of issue. Parties are advised to review the Rules for the scope and conditions of classification and to review the survey records for a fuller description of any restrictions or limitations on the vessel's service or surveys. The validity, applicability and interpretation of this Report is governed by the Rules and standards of American Bureau of Shipping who shall remain the sole judge thereof. Nothing contained in this Report or in any notation made in contemplation of this Report shall be deemed to relieve any designer, builder, owner, manufacturer, seller, supplier, repairer, operator or other entity of any warranty express or implied.

# Welders Qualification Report Form

Details (continued)

| | | YES | NO | N/A |
|---|---|:---:|:---:|:---:|
| 1. | Welding Qualification approval or finishing carried out according to: | | | |
| | a) Approved by ABS procedures. | ☒ | ☐ | ☐ |
| | b) _____ specifications. | ☐ | ☐ | ☒ |
| 2. | Were the welding consumables and the welding process in accordance with item 1? | ☒ | ☐ | |
| 3. | Did the welder or operator follow the approved procedure and positions in item 1? | ☒ | ☐ | |
| 4. | Testing carried out as required by approved procedure/specifications and as reported herein. | ☒ | ☐ | ☐ |
| 5. | Was the welder or welding operator 's qualification test record completed by the manufacturer? | ☒ | ☐ | |
| 6. | Calibration of testing/measuring equipment confirmed, with records maintained at facility or located _____ | ☒ | ☐ | |
| 7. | Is an invoice required for this qualification? | ☐ | ☒ | |

_____
Jeanne Savoie Surveyor, American Bureau of Shipping

_____
Surveyor, American Bureau of Shipping

## AB WQ Distribution

| | |
|---|---|
| Purchaser | 2 |
| ABS Office @ Destination | 1 |
| ABS Houston CDC | 1 |
| Local | 1 |
| Other | ___ |

Reviewed By: _____

| Signature | Date | Port |
|---|---|---|

Form AB WQ                              Revision 1

# PACIFIC SHIPYARDS INTERNATIONAL
### P.O. BOX 30989, HONOLULU, HI 96820  TEL#(808) 848-6211

## WELDER/OPERATOR PERFORMANCE QUALIFICATION RECORD
### NAVSEA Technical Manual S9074-AQ-GIB-010/248

**Welder or Welding Operator Information**

| Name **STAPLES, CHESTER** | Badge Number **90039** | Dept. **WELDING** | Date Tested **10/11/2004** |
|---|---|---|---|
| Vision Test Date **10/11/04** | Corrective AIDS Required  No  **X**  Yes | | Welder Training Date (Workmanship)/SCORE |

| BASE MATERIAL (Table 1) | ____ PIPE  **X**  PLATE | Plate: **.375"** THICKNESS | Welding Process **SMAW** TORCH GAS: N/A | Weld Test No. (Table X) **1** |
|---|---|---|---|---|
| Group: S- **1** to S- **1** | | | | |
| Base Mat'l: **P-1** To **P-1** | | Pipe: **N/A** SIZE*SCHEDULE* THICKNESS | Weld Procedure No. **KS-CS-3** | Joint Design (MIL-STD-22) **B1V-1** |
| Specification **MIL-S-22698** | | | | |

### POSITION(S) QUALIFIED – PLATE

| PLATE (GROOVE) | | | PLATE (FILLET/TACK) | | |
|---|---|---|---|---|---|
| | Q -X | (1G) FLAT | T | Q | (1F) FLAT |
| T-X | Q -X | (2G) HORZ. | T | Q | (2F) HORZ. |
| T-X | Q -X | (3G) VERT. | T | Q | (3F) VERT. |
| T-X | Q -X | (4G) OVHD | T | Q | (4F) OVHD |
| | | | T | Q | |
| | Q -X | ALL POSITIONS | | Q_ | ALL POSITIONS |

### POSITION(S) QUALIFIED – PIPE

| PIPE GROOVE | | | PIPE SOCKET | | |
|---|---|---|---|---|---|
| T | Q | (1G) ROLLED | T | Q | (1F) ROTATED 45° |
| T | Q | (2G) VERT. | T | Q | (2FR) VERT, ROTATED |
| T | Q | (5G) HORZ. | T | Q | (2F) HORZ. |
| T | Q | (6G) INCLINED | T | Q | (4F) OVHD |
| T | Q | | T | Q | (5F) FIXED |
| | Q_ | ALL POSITIONS | | Q_ | ALL POSITIONS |

| THICKNESS RANGE QUALIFIED: **.187"** (min.) to **.750"** (max) | RESTRICTED: **NO** |
|---|---|

| FILLER MATERIAL (TABLE II) | ELECTRODE | SPECIFICATION NO. | DIAMETER | QUALIFIES GROUPS (TABLE VIII) |
|---|---|---|---|---|
| GROUP A - **2A** | **MIL-7018** | **MIL-E-22200/1** | **3/32"** | **2 & 3** |

| _ACC_ Visual Inspection (VT) | ____ Dye Penetrant Tests (PT) | ____ Other (describe below) |
|---|---|---|
| _ACC_ Physical (bend, break, etc) | ____ Magnetic Particle Test (MT) | |
| ____ Radiographic Test (RT) | ____ Ultrasonic Test (UT) | |
| ____ Macro Exam of Weld Nugget | ____ Other: | |

### PERFORMANCE QUALIFICATION TEST RESULTS (See Attached Reports)
### Qualified ____ YES, ALL POSITIONS ____

Certifying Signature: *Jack R. Laws*  LEVEL III ____ Date: **11 OCT 2004** ____

**WELDER or WELDING OPERATOR TRANSFER**
ATTACHMENTS: _____ Vision Test _____ NDT/Destructive Test Report(s) *(Copy of Original Reports)*

_____ Workmanship Training  _____ Latest Update Print-out *(Copy of Current and Proceeding Quarter)*

Reviewed for Transfer: _____  Date: _____
QA Manager or Chief Inspector

# PACIFIC SHIPYARDS INTERNATIONAL
*P.O. BOX 30989, HONOLULU, HI 96820   TEL#(808) 848-6211*

## WELDER/OPERATOR PERFORMANCE QUALIFICATION RECORD
### NAVSEA Technical Manual S9074-AQ-GIB-010/248

*Welder or Welding Operator Information*

| Name **STAPLES, CHESTER** | Badge Number **90039** | Dept. **WELDING** | Date Tested **10/12/2004** |
|---|---|---|---|

| Vision Test Date **10/12/04** | Corrective AIDS Required   No **X**   Yes | Welder Training Date (Workmanship)/SCORE |
|---|---|---|

| BASE MATERIAL (Table 1) | ___ PIPE   X   PLATE | Plate: **.375"** THICKNESS | Welding Process **FCAW** TORCH GAS: CO2 | Weld Test No. (Table X) **1** |
|---|---|---|---|---|
| Group: S- **1** to S- **1** | | | | |
| Base Mat'l: P-1 To P-1 Specification **MIL-S-22698** | | Pipe: **N/A** SIZE*SCHEDULE* THICKNESS | Weld Procedure No. **FCAW-ABS 1.1** | Joint Design (MIL-STD-22) **B1V-1** |

### POSITION(S) QUALIFIED – PLATE

| PLATE (GROOVE) | | | PLATE (FILLET/TACK) | | |
|---|---|---|---|---|---|
| | Q-X | (1G) FLAT | T | Q | (1F) FLAT |
| T-X | Q-X | (2G) HORZ. | T | Q | (2F) HORZ. |
| T-X | Q-X | (3G) VERT. | T | Q | (3F) HORZ. |
| T-X | Q-X | (4G) OVHD | T | Q | (4F) OVHD |
| T | Q | | T | Q | |
| | Q-X | ALL POSITIONS | | Q_ | ALL POSITIONS |

### POSITION(S) QUALIFIED – PIPE

| PIPE GROOVE | | | PIPE SOCKET | | |
|---|---|---|---|---|---|
| T | Q | (1G) ROLLED | T | Q | (1F) ROTATED 45⁰ |
| T | Q | (2G) VERT. | T | Q | (2FR) VERT, ROTATED |
| T | Q | (5G) HORZ. | T | Q | (2F) HORZ. |
| T | Q | (6G) INCLINED | T | Q | (4F) OVHD |
| T | Q | | T | Q | (5F) FIXED |
| | Q_ | ALL POSITIONS | | Q_ | ALL POSITIONS |

| THICKNESS RANGE QUALIFIED: **.187"** (min.) to **.750"** (max) | RESTRICTED: **NO** |
|---|---|

| FILLER MATERIAL (TABLE II) GROUP A- **2D** | ELECTRODE ___**MIL-71T-1**___ | SPECIFICATION NO. _**MIL-E-22200/1**_ | DIAMETER ___**3/32"**___ | QUALIFIES GROUPS (TABLE VIII) ___**2 & 3**___ |
|---|---|---|---|---|

| _**ACC**_  Visual Inspection (VT) | _____ Dye Penetrant Tests (PT) | _____ Other (describe below) |
|---|---|---|
| _**ACC**_  Physical (bend, break, etc) | _____ Magnetic Particle Test (MT) | |
| _____ Radiographic Test (RT) | _____ Ultrasonic Test (UT) | |
| _____ Macro Exam of Weld Nugget | _____ Other: | |

### PERFORMANCE QUALIFICATION TEST RESULTS (See Attached Reports)
### Qualified ___ YES, __ALL POSITIONS___

Certifying Signature: *Jack R. Laws*   LEVEL III   Date:   **12 OCT 2004**

**WELDER or WELDING OPERATOR TRANSFER**
ATTACHMENTS: _____ Vision Test _____ NDT/Destructive Test Report(s) *(Copy of Original Reports)*

__Workmanship Training__ _____ Latest Update Print-out *(Copy of Current and Proceeding Quarter)*

Reviewed for Transfer:_____  Date:_____
          **QA Manager or Chief Inspector**

# Pearl Harbor

## SHIPYARD

### (17 YEARS)

*VISION TEST - w~ 3/19/82*    85

**RECORD OF WELDER QUALIFICATION TEST**
14ND-SYD-9000/18 (Rev. 75)

TEST ASSEMBLY NO. *SQ341-33*

NAME: *STAPLES, C*     BADGE NO. *32056*     DATE OF TEST *5/25/82*

PROCEDURE/DATA SHEET NO. *WE 861*

**POSITION**

| QUALIFICATION TEST NO. | | PROCESS | |
|---|---|---|---|
| ☐ NO. 2   ☑ NO. 1 | | ☐ SMAW | |
| ☐ NO. 4   ☐ NO. 8 | | ☐ GTAW | |
| ☐ NO. 9   ☐ NO. 6 | | ☑ GMAW (SPRAY) | ☐ GMAW (PULSE) |
| ☐ OTHER (ATTACH SKETCH) | | ☐ GMAW (SHORT ARC) | |
| | | ☐ OTHER (SPECIFY) | |

**POSITION**
- ☐ ROLLED PIPE   – 1G
- ☐ VERT PIPE   – 2G
- ☐ HORIZ PIPE   – 5G
- ☐ INCLINED PIPE   – 6G
- ☐ FLAT PLATE   – 1G
- ☐ HORIZ PLATE   – 2G
- ☑ VERT PLATE   – 3G
- ☐ OH PLATE   – 4G
- ☐ FLAT FILLET   – 1F
- ☐ HORIZ FILLET   – 2F
- ☐ VERT FILLET   – 3F
- ☐ OH FILLET   – 4F
- ☐ OTHER (ATTACH SKETCH)

BASE MATERIAL TYPE *H·3Y5086 AL QQA250/7*   THICKNESS *7/8*

FILLER METAL TYPE *MIL 5356*   SIZE *3/64"*

SPACE RESTRICTION (PIPE)   ☐ YES   ☑ NO   ☐ SPECIAL (ATTACH SKETCH)

| IN-PROCESS INSPECTION | ACCEPT | REJECT | WELDING INSTRUCTOR | DATE |
|---|---|---|---|---|
| FIT UP | ✓ | | *J. Fadao* | 5/25/82 |
| PREHEAT AND INTERPASS TEMP. | ✓ | | *J. Fadao* | 5/25/82 |
| WELDING PARAMETERS | ✓ | | *J. Fadao* | 5/25/82 |
| FINAL VISUAL, N/S 0900-003-8000 CL. 1 | ✓ | | *J. Fadao* | 5/25/82 |

**NONDESTRUCTIVE TEST INSPECTION**

| INSPECTION METHOD | ACCEPTANCE STANDARDS | ACCEPT | REJECT | NDT REPORT NO. (ATTACHED) | DATE |
|---|---|---|---|---|---|
| ☐ PT | N/S 0900-003-8000 CL. 1 | | | | |
| ☐ MT | N/S 0900-003-8000 CL. 1 | | | | |
| ☐ RT | N/S 0900-003-9000 CL. 1 | | | | |
| ☐ UT | N/S 0900-006-3010 CL. 1 | | | | |

| DESTRUCTIVE TEST INSPECTION | ACCEPTANCE STDS (MIL-STD-248) | ACCEPT | REJECT | ITL NO. (ATTACHED) | DATE |
|---|---|---|---|---|---|
| ☐ BREAK TEST | PARA. 5.4.2.2 | | | | |
| ☑ FACE AND ROOT BENDS | PARA. 5.4.2.1 | ✓ | | (see attached report) | 6-17-82 |
| ☐ SIDE BENDS | PARA. 5.4.2.1 | | | | |
| ☐ MACRO-ETCH EXAMINATION | PARA. 5.4.2.3 | | | | |
| ☐ PEEL TEST | PARA. 6.4 | | | | |

IN ADDITION TO THE PROCEDURE LISTED ABOVE, THE WELDER HAS BEEN INSTRUCTED IN THE FOLLOWING PHNS PROCEDURE(S) IN ACCORDANCE WITH THE REQUIREMENTS OF PARAGRAPH 5.2.2 OF MIL-STD-248: *NA*

WELDING INSTRUCTOR *J. Fadao*   DATE *5/25/82*

**CODE 138 SHALL COMPLETE FORM BELOW THIS LINE**

- ☐ NOT QUALIFIED.  REASON: _____
- ☑ QUALIFIED TO CATEGORY *S47(b)* UNTIL: *9-30-82* THICKNESS RANGE QUALIFIED: *.058" & greater*
- ☑ ADDITIONAL QUALIFICATIONS OR LIMITATIONS:
  - CATEGORIES: *flat* ~~error 6-18-82~~ *3G941*
  - POSITIONS: *flat*

REMARKS: _____

| ENGINEER OR TECHNICIAN | DATE | SUPV. WELDING ENGINEER | DATE |
|---|---|---|---|
| *Donald Gemmiti* | *6-18-82* | *R. L. Jablonski* | *6/18/82* |

*HY-80 Qualification*
*(Pass)*

# RECORD OF WELDER QUALIFICATION TEST
## 14ND-SYD-9000/18 (Rev.    75)

| | |
|---|---|
| **TEST ASSEMBLY NO.** | 96 512-33 |

| NAME | BADGE NO. | DATE OF TEST |
|---|---|---|
| STAPLES CHESTER | 32056 | 10-16-79 |

**PROCEDURE/DATA SHEET NO.** WE 860   Rev C

**POSITION**

| | | |
|---|---|---|
| ☐ ROLLED PIPE | - 1G |
| ☐ VERT PIPE | - 2G |
| ☐ HORIZ PIPE | - 5G |
| ☐ INCLINED PIPE | - 6G |
| ☐ FLAT PLATE | - 1G |
| ☐ HORIZ PLATE | - 2G |
| ☐ VERT PLATE | - 3G |
| ☒ OH PLATE | - 4G |
| ☐ FLAT FILLET | - 1F |
| ☐ HORIZ FILLET | - 2F |
| ☐ VERT FILLET | - 3F |
| ☐ OH FILLET | - 4F |
| ☐ OTHER (ATTACH SKETCH) | |

**QUALIFICATION TEST NO.**

| | | |
|---|---|---|
| ☐ NO. 2 | ☒ NO. 1 |
| ☐ NO. 4 | ☐ NO. 8 |
| ☐ NO. 9 | ☐ NO. 6 |
| ☐ OTHER (ATTACH SKETCH) | |

**PROCESS**

| | |
|---|---|
| ☒ SMAW | |
| ☐ GTAW | |
| ☐ GMAW (SPRAY) | ☐ GMAW (PULSE) |
| ☐ GMAW (SHORT ARC) | |
| ☐ OTHER (SPECIFY) | |

| BASE MATERIAL TYPE | THICKNESS |
|---|---|
| C.S. | 3/8 |

| FILLER METAL TYPE | SIZE |
|---|---|
| MIL 8018 | 3/32 |

**SPACE RESTRICTION (PIPE)**

☐ YES  ☒ NO  ☐ SPECIAL (ATTACH SKETCH)

| IN-PROCESS INSPECTION | ACCEPT | REJECT | WELDING INSTRUCTOR | DATE |
|---|---|---|---|---|
| FIT UP | ✓ | | L Thomas | 10-16-79 |
| PREHEAT AND INTERPASS TEMP. | ✓ | | L Thomas | 10-16-79 |
| WELDING PARAMETERS | ✓ | | L Thomas | 10-16-79 |
| FINAL VISUAL, N/S 0900-003-8000 CL. 1 | ✓ | | L Thomas | 10-16-79 |

### NONDESTRUCTIVE TEST INSPECTION

| INSPECTION METHOD. | ACCEPTANCE STANDARDS | ACCEPT | REJECT | NDT REPORT NO. (ATTACHED) | DATE |
|---|---|---|---|---|---|
| ☐ PT | N/S 0900-003-8000 CL. 1 | | | | |
| ☐ MT | N/S 0900-003-8000 CL. 1 | | | | |
| ☒ RT | N/S 0900-003-9000 CL. 1 | ✓ | | 9-120 | 10-17-79 |
| ☐ UT | N/S 0900-006-3010 CL. 1 | | | | |

| DESTRUCTIVE TEST INSPECTION | ACCEPTANCE STDS (MIL-STD-248) | ACCEPT | REJECT | ITL NO. (ATTACHED) | DATE |
|---|---|---|---|---|---|
| ☐ BREAK TEST | PARA. 5.4.2.2 | | | | |
| ☐ FACE AND ROOT BENDS | PARA. 5.4.2.1 | | | | |
| ☐ SIDE BENDS | PARA. 5.4.2.1 | | | | |
| ☐ MACRO-ETCH EXAMINATION | PARA. 5.4.2.3 | | | | |
| ☐ PEEL TEST | PARA. 6.4 | | | | |

| IN ADDITION TO THE PROCEDURE LISTED ABOVE, THE WELDER HAS BEEN INSTRUCTED IN THE FOLLOWING PHNS PROCEDURE(S) IN ACCORDANCE WITH THE REQUIREMENTS OF PARAGRAPH 5.2.2 OF MIL-STD-248 51.800 | WELDING INSTRUCTOR | DATE |
|---|---|---|
| | Bill and Thomas | 10-16-79 |

## CODE 138 SHALL COMPLETE FORM BELOW THIS LINE

☐ NOT QUALIFIED.  REASON:

☒ QUALIFIED TO CATEGORY 512 13  UNTIL: 3-31 80  THICKNESS RANGE QUALIFIED: .125 & greater

☐ ADDITIONAL QUALIFICATIONS OR LIMITATIONS:

    CATEGORIES: 513 D

    POSITIONS: Overhead Plate Only

REMARKS: ☒ HORIZONTAL POSITION FOR FILLET WELDS ONLY

| ENGINEER OR TECHNICIAN | DATE | SUPV. WELDING ENGINEER | DATE |
|---|---|---|---|
| RY Sheck | 10-25-79 | J Hallinburg | 10/25/79 |

HTS Qualification

PASS

# RECORD OF WELDER QUALIFICATION TEST
14ND-SYD-9000/18 (Rev. 7-75)

| | | TEST ASSEMBLY NO. |
|---|---|---|
| NAME | STAPLES CHESTER | BADGE NO. 32056 | DATE OF TEST 10-26-79 |

PROCEDURE/DATA SHEET NO.  WE 860   REV C

| POSITION | | | QUALIFICATION TEST NO. | | PROCESS | |
|---|---|---|---|---|---|---|
| ☐ ROLLED PIPE | - 1G | | ☐ NO. 2 | ☑ NO. 1 | ☑ SMAW | |
| ☐ VERT PIPE | - 2G | | ☐ NO. 4 | ☐ NO. 8 | ☐ GTAW | |
| ☐ HORIZ PIPE | - 5G | | ☐ NO. 9 | ☐ NO. 6 | ☐ GMAW (SPRAY) | ☐ GMAW (PULSE) |
| ☐ INCLINED PIPE | - 6G | | ☐ OTHER (ATTACH SKETCH) | | ☐ GMAW (SHORT ARC) | |
| ☐ FLAT PLATE | - 1G | | | | ☐ OTHER (SPECIFY) | |
| ☐ HORIZ PLATE | - 2G | | | | | |
| ☑ VERT PLATE | - 3G | | BASE MATERIAL TYPE  C.S. | | THICKNESS  3/8 5/16 | |
| ☐ OH PLATE | - 4G | | | | | |
| ☐ FLAT FILLET | - 1F | | FILLER METAL TYPE  MIL 8018 | | SIZE  5/32 | |
| ☐ HORIZ FILLET | - 2F | | | | | |
| ☐ VERT FILLET | - 3F | | SPACE RESTRICTION (PIPE) | | | |
| ☐ OH FILLET | - 4F | | ☐ YES | ☐ NO | ☐ SPECIAL (ATTACH SKETCH) | |
| ☐ OTHER (ATTACH SKETCH) | | | | | | |

| IN-PROCESS INSPECTION | ACCEPT | REJECT | WELDING INSTRUCTOR | DATE |
|---|---|---|---|---|
| FIT UP | ✓ | | G Torres | 10-26-79 |
| PREHEAT AND INTERPASS TEMP. | ✓ | | G Torres | 10-26-79 |
| WELDING PARAMETERS | ✓ | | G Torres | 10-26-79 |
| FINAL VISUAL, N/S 0900-003-8000 CL. 1 | ✓ | | G Torres | 10-26-79 |

| NONDESTRUCTIVE TEST INSPECTION | | | | | | |
|---|---|---|---|---|---|---|
| INSPECTION METHOD | ACCEPTANCE STANDARDS | | ACCEPT | REJECT | NDT REPORT NO. (ATTACHED) | DATE |
| ☐ PT | N/S 0900-003-8000 CL. 1 | | | | | |
| ☐ MT | N/S 0900-003-8000 CL. 1 | | | | | |
| ☑ RT | N/S 0900-003-9000 CL. 1 | | ✓ | | 9-131 | 11-1-79 |
| ☐ UT | N/S 0900-006-3010 CL. 1 | | | | | |

| DESTRUCTIVE TEST INSPECTION | ACCEPTANCE STDS (MIL-STD-248) | ACCEPT | REJECT | ITL NO. (ATTACHED) | DATE |
|---|---|---|---|---|---|
| ☐ BREAK TEST | PARA. 5.4.2.2 | | | | |
| ☐ FACE AND ROOT BENDS | PARA. 5.4.2.1 | | | | |
| ☐ SIDE BENDS | PARA. 5.4.2.1 | | | | |
| ☐ MACRO-ETCH EXAMINATION | PARA. 5.4.2.3 | | | | |
| ☐ PEEL TEST | PARA. 6.4 | | | | |

| IN ADDITION TO THE PROCEDURE LISTED ABOVE, THE WELDER HAS BEEN INSTRUCTED IN THE FOLLOWING PHNS PROCEDURE(S) IN ACCORDANCE WITH THE REQUIREMENTS OF PARAGRAPH 5.2.2 OF MIL-STD-248: | WELDING INSTRUCTOR | DATE |
|---|---|---|
| | Gilberto Torres | 10-26-79 |

### CODE 138 SHALL COMPLETE FORM BELOW THIS LINE

☐ NOT QUALIFIED. REASON:

☑ QUALIFIED TO CATEGORY  S 12   UNTIL: 3-31-80   THICKNESS RANGE QUALIFIED: .035" & GREATER

☑ ADDITIONAL QUALIFICATIONS OR LIMITATIONS:

    CATEGORIES:  S 13

    POSITIONS:  ALL

REMARKS: SEE BUHI & 9RS12-33   ETA O.H. & THAT

| ENGINEER OR TECHNICIAN | DATE | SUPV. WELDING ENGINEER | DATE |
|---|---|---|---|
| Ray West | 11-1-79 | J Ballantyne | 11/1/79 |

Aluminum Qual
(PASS) 3 posit
320547-71 (Horiz.)



**DEPARTMENT OF THE NAVY**
NAVAL SEA SYSTEMS COMMAND
WASHINGTON, DC 20362-5101

IN REPLY REFER TO
5305
OPR  OOR31/259S
Ser 07/186

2 5 APR 1988

From:  Commander, Naval Sea Systems Command
To:    Mr. Chester A. Staples
Via:   Commander, Pearl Harbor Naval Shipyard

Subj:  NAVY SUPERIOR CIVILIAN SERVICE AWARD

Encl:  (1) Certificate, medal and lapel bar

1.  It is a pleasure to approve the Navy Superior Civilian
Service Award in recognition of your heroic act.  You rescued a
fellow worker who had succumbed to asphyxiation following
descent into the Ship's Sanitary Tank #3 during overhaul of USS
NEW YORK CITY (SSN 696).

2.  On the scene when two fellow workers became unconscious
following entry into the tank, you, of your own volition,
entered the tank to rescue the men.  Although aware of the
dangers involved, you, nevertheless, descended into the tank.
Your heroic effort and quick thinking prevented a casualty from
becoming a fatality.

3.  Your dedication and unselfishness in helping a fellow
worker in distress are sincerely appreciated.  You went beyond
the call of duty when you disregarded your own health and
welfare to rescue your fellow worker from the tank.  Your act
of heroism reflects favorably upon you, Pearl Harbor Naval
Shipyard and the Department of the Navy.  Congratulations!

R B Horne Jr

R. B. HORNE, JR.
Deputy Commander for
Industrial and Facility
Management



## DEPARTMENT OF THE NAVY
PEARL HARBOR NAVAL SHIPYARD
BOX 400
PEARL HARBOR, HAWAII 96860-5350

IN REPLY REFER TO:

5305
Ser 100/462
10 May 1988

FIRST ENDORSEMENT on COMNAVSEA ltr 5305 OPR 00R31/259S Ser 07/186
of 25 Apr 1988

From:   Commander, Pearl Harbor Naval Shipyard
To:     Mr. Chester A. Staples, Badge No. 026-032056

Subj:   NAVY SUPERIOR CIVILIAN SERVICE AWARD

1.   Forwarded with great pleasure and pride.

2.   Your unselfish action on behalf of a fellow shipyard employee
will long be remembered by all who know you.  Thank you!

ROBERT E. TRAISTER



US NAVY
RESERVE
17 years



# Letter Of Commendation

## Commander, Naval Surface Reserve Force

takes pleasure in presenting a Letter of Commendation to

HULL MAINTENANCE TECHNICIAN SECOND CLASS
CHESTER ANTHONY STAPLES
UNITED STATES NAVAL RESERVE

for service as set forth in the following

## Citation:

"For professional achievement in the performance of his duties while serving as Project Technician of Naval Reserve Shore Intermediate Maintenance Activity Pearl Harbor Three Two Zero in conjunction with Naval Air Reserve Center, Barbers Point, Hawaii, Special Projects from 18 November 1989 to 30 August 1991. Petty Officer Staples consistently performed his demanding duties in an exemplary and highly professional manner. He was a KEY member of the Special Projects Team utilizing Naval Reserve assets to manufacture two prototype 25MM Gun Pod Maintenance Stands for AV-8B Harrier aircrafts. His inspirational leadership and outstanding technical knowledge in special welding techniques enabled the project team to successfully meet its production goal of two maintenance stands within schedule and significantly under budget. His persistent efforts and 'can do' spirit contributed significantly to the smooth operation of the structural shop and the completion of this project. Petty Officer Staples' exceptional professional ability, initiative, and loyal dedication to duty reflected great credit upon himself and were in keeping with the highest traditions of the United States Naval Service."

M. J. BRESNAHAN, JR.
Rear Admiral, U. S. Naval Reserve



# DEPARTMENT OF THE NAVY
COMMANDER NAVAL SURFACE RESERVE FORCE
NEW ORLEANS, LOUISIANA 70146-5100

IN REPLY REFER TO

1650
3CA
11 FEB 1992

From:   Commander, Naval Surface Reserve Force
To:     Commanding Officer, Naval Reserve Sima Pearl Harbor 320,
        Honolulu

Subj:   AWARD IN THE CASE OF HT1 CHESTER A. STAPLES, USNR,
        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

Ref:    (a) MILPERSMAN 3420100

Encl:   (1) Letter of Commendation

1.   I take pleasure in forwarding, with congratulations,
enclosure (1).

2.   Presentation of this award should be made per reference (a).

J. A. OTTUM
By direction

Copy to:  (w/o encl)
NAVRESREDCOM REG Twenty
NAVMARCORESCEN Honolulu



**DEPARTMENT OF THE NAVY**
NA    AND MARINE CORPS RESERVE READINESS CENTE
530 PELTIER AVENUE
HONOLULU, HAWAII 96818-3753

IN REPLY REFER TO:
1650
Ser 037
04 APR 93

From:   Commanding Officer, NR SIMA Pearl Coord 120, Honolulu, Hawaii
To:     HT2 Chester A. Staples, USNR, 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

Subj:   LETTER OF APPRICIATION

1.   It is with great pleasure that I convey my sincere appreciation for your efforts in assisting with the repair of dive stand covers for the USS SAFEGUARD (ARS-50) on 10 January 93.

2.   It took long, extended hours of work to fabricate, assemble and weld three dive stand units for the USS SAFEGUARD (ARS-50).   Through your dedication and resourcefulness, the ship was able to meet Diving Operational Readiness Assessment Requirements.   Your professional performance while providing First Class Repair from those who care reflects positively on this unit and the Naval Reserve.

3.   I applaud your accomplishments and extend to you my personal **WELL DONE!**

R. H. Y. KIM

Copy to:
Service record

US NAVY



**DEPARTMENT OF VETERANS AFFAIRS**
Medical & Regional Office Center
PO Box 50188
Honolulu HI 96850

March 5, 1996

Chester A. Staples
6081 Keoki Place
Honolulu, HI 96821

In Reply Refer To: 459/271/do
CSS-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

The records of the Department of Veterans Affairs show that STAPLES, CHESTER, ANTHONY
served in the Armed Forces of the United States as follows:

| ENTERED ON ACTIVE DUTY | RELEASED FROM ACTIVE DUTY | |
|---|---|---|
| APRIL 4, 1973 | APRIL 1, 1977 | |
| BRANCH OF SERVICE | | |
| NAVY | | |
| *CHARACTER OF DISCHARGE | | |
| HONORABLE | | |
| SERVICE SERIAL NO. | RANK AND ORGANIZATION | DATE OF BIRTH |
| 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 | E-4/ORGANIZATION UNVERIFIED | AUGUST 14, 1953 |

*As certified to VA by military branch of service or shown on official military documents.

Sincerely yours,

Lionel K. Parker, Jr.
Veterans Services Officer

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

*Cert True Copy*
**ALFRE**. PURVIS *Alfred J. Purvis*
**AUTHORITY** - VA FORM 4505

| 1. LAST NAME—FIRST NAME—MIDDLE Name | | 2. SEX | 3. SOCIAL SECURITY NUMBER | | 4. DATE OF BIRTH | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|
| STAPLES, CHESTER ANTHONY | | M | 328 48 7664 | | | 53 | 08 | 14 |

| 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | 6 a. GRADE, RATE OR RANK | b. PAY GRADE | 7. DATE OF RANK | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|
| NAVY - USN | HT3 | E4 | | 75 | 09 | 16 |

| 8 a. SELECTIVE SERVICE NUMBER | b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE | c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code) |
|---|---|---|
| | | 2347 WEST LAKE ST CHICAGO, IL 60612 |

| 9 a. TYPE OF SEPARATION | b. STATION OR INSTALLATION AT WHICH EFFECTED |
|---|---|
| RELEASED FROM ACTIVE DUTY AND TRANSFERRED TO NAVAL RESERVE | NAVAL STATION PEARL HARBOR, HAWAII |

| c. AUTHORITY AND REASON | d. EFFECTIVE DATE | YEAR | MONTH | DAY |
|---|---|---|---|---|
| | | 77 | 04 | 01 |

| 9. CHARACTER OF SERVICE | f. TYPE OF CERTIFICATE ISSUED | 10. REENLISTMENT CODE |
|---|---|---|
| HONORABLE | NA | |

| 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 12. COMMAND TO WHICH TRANSFERRED |
|---|---|
| USS RICHARD S. EDWARDS (DD-950) | NAVAL RESERVE PERSONNEL CENTER, NEW ORLEANS, LA 70149 |

| 13. TERMINAL DATE OF RESERVE/ MSO OBLIGATION | | | 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code) | 15. DATE ENTERED ACTIVE DUTY THIS PERIOD | | |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
| 79 | 01 | 28 | CHICAGO, IL 60612 | 73 | 04 | 04 |

| 16. a. PRIMARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | 18. RECORD OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| HT-0000-HULL MAINTENANCE TECHNICIAN | 806-SHIPFITTERS | (a) NET ACTIVE SERVICE THIS PERIOD | 03 | 11 | 28 |
| | | (b) PRIOR ACTIVE SERVICE | 00 | 00 | 00 |
| 17. a. SECONDARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | (c) TOTAL ACTIVE SERVICE (a+b) | 03 | 11 | 28 |
| HT-0000 | NA | (d) PRIOR INACTIVE SERVICE | 00 | 02 | 05 |
| | | (e) TOTAL SERVICE FOR PAY (c+d) | 04 | 02 | 03 |
| | | (f) FOREIGN AND/OR SEA SERVICE THIS PERIOD | 03 | 07 | 11 |

| 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964 | 20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years) |
|---|---|
| ☐ YES ☒ NO | SECONDARY/HIGH SCHOOL 12 YRS (1-12 grades)   COLLEGE ____ YRS |

| 21. TIME LOST (Preceding Two Yrs.) | 22. DAYS ACCRUED LEAVE PAID | 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | 24. DISABILITY SEVERANCE PAY | 25. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|---|---|---|
| TL-NONE | 60 | ☐ $15,000  ☐ $5,000 $20,000 ☐ $10,000  ☐ NONE | ☒ NO  ☐ YES  AMOUNT | a. TYPE ENTNAC | b. DATE COMPLETED 23 MAY 73 |

26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED

NATIONAL DEFENSE SERVICE MEDAL

27. REMARKS

BASIC SHIPBOARD FIRE FIGHTING K-780-2016; DAMAGE CONTROL TEAM TRAINING; DC PWS SCL, K-00/780-2004; INDIVIDUAL REQUESTS COPY OF DD 214N

| 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code) | 29. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| 2347 WEST LAKE ST CHICAGO, IL 60612 | *C. Kester A. Staples* |

| 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| N.E.PEARSON, CWO2 ASSISTANT MILITARY PERSONNEL OFFICER | |

**DD FORM 214N**   PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE   THIS IS AN IMPORTANT RECORD   REPORT OF SEPARATION FROM ACTIVE DUTY

# COMPLETE PLANT MAINTENANCE
## PI Pipe Welder



**FINLAY TESTING LABORATORIES, I**
**707 KAKOI STREET**
**HONOLULU, HI 96819**
TEL (808) 838-1575 FAX (808) 838-1574

Test Report No. _____ 282

## WELDER QUALIFICATION TEST

Company & Procedure No. _____ COMPLETE PLANT MAINTENANCE, HI

Welding Process _____ SMAW _____ Date FEBRUARY 5, 2001

Welder _____ CHESTER STAPLES _____ Designating Symbol 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

Progress of Welding _____ UPHILL _____ Position(s) 6G

Conducted by _____ L. ONUMA _____ Laboratory Test No. 01899702

### PARENT METAL

P Group No. _____ 1 _____ TO _____ 1 _____ Specifications N/A

Pipe size _____ 8" _____ Wall thickness SCH 80

### FILLER METAL

AWS Class E6010 E7018 F NO. 3 4 _____ Polarity of Welding REVERSE

Gas Type _____ N/A _____ Current DIRECT CURRENT

Electrode size 3/32 1/8 5/32 _____ Amps (Range) 60 - 130

### JOINT DESIGN

Pipe Bevel _____ 37.5 _____ Backing Ring Used N/A

Pipe Land _____ 1/16 _____ Joint Opening 3/32

### RESULTS OF TEST

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Radiographic | ACCEPTABLE | | | | 1. Radiographic | N/A | | | |
| 2. Tensile | #1 | N/A | #2 | N/A | 2. Macroetch | #1 | N/A | #2 | N/A |
| 3. Root Bend | #1 | N/A | #2 | N/A | 3. Macroetch | #1 | N/A | #2 | N/A |
| 4. Face Bend | #1 | N/A | #2 | N/A | 4. Nick Bend | #1 | N/A | #2 | N/A |
| 5. Nick Bend | #1 | N/A | #2 | N/A | 5. Nick Bend | #1 | N/A | #2 | N/A |

Visual Inspection ACCEPTABLE

We certify that the statements in this record are correct and that the test welds were prepared and welded in accordance with the requirements of the _____ Date _____

We certify that the test welds submitted to us were tested in accordance with the _____ ASME SECTION IX

Date _____ 2/5/2001 _____ Signature W. ONUMA _____

FINLAY TESTING LABORATORIES



**DEPARTMENT OF THE NAVY**
NAVAL SEA SYSTEMS COMMAND
WASHINGTON, DC 20362-5101

IN REPLY REFER TO
5305
OPR  OOR31/259S
Ser 07/186

2 5 APR 1988

From:   Commander, Naval Sea Systems Command
To:     Mr. Chester A. Staples
Via:    Commander, Pearl Harbor Naval Shipyard

Subj:   NAVY SUPERIOR CIVILIAN SERVICE AWARD

Encl:   (1) Certificate, medal and lapel bar

1.  It is a pleasure to approve the Navy Superior Civilian Service Award in recognition of your heroic act.  You rescued a fellow worker who had succumbed to asphyxiation following descent into the Ship's Sanitary Tank #3 during overhaul of USS NEW YORK CITY (SSN 696).

2.  On the scene when two fellow workers became unconscious following entry into the tank, you, of your own volition, entered the tank to rescue the men.  Although aware of the dangers involved, you, nevertheless, descended into the tank. Your heroic effort and quick thinking prevented a casualty from becoming a fatality.

3.  Your dedication and unselfishness in helping a fellow worker in distress are sincerely appreciated.  You went beyond the call of duty when you disregarded your own health and welfare to rescue your fellow worker from the tank.  Your act of heroism reflects favorably upon you, Pearl Harbor Naval Shipyard and the Department of the Navy.  Congratulations!

R. B. HORNE, JR.
Deputy Commander for
Industrial and Facility
Management



## DEPARTMENT OF THE NAVY
PEARL HARBOR NAVAL SHIPYARD
BOX 400
PEARL HARBOR, HAWAII 96860-5350

IN REPLY REFER TO:

5305
Ser 100/462
10 May 1988

FIRST ENDORSEMENT on COMNAVSEA ltr 5305 OPR 00R31/259S Ser 07/186
of 25 Apr 1988

From:  Commander, Pearl Harbor Naval Shipyard
To:    Mr. Chester A. Staples, Badge No. 026-032056

Subj:  NAVY SUPERIOR CIVILIAN SERVICE AWARD

1.  Forwarded with great pleasure and pride.

2.  Your unselfish action on behalf of a fellow shipyard employee
will long be remembered by all who know you.  Thank you!

ROBERT E. TRAISTER

# Yarders honored for heroism

Two welders were honored by NAVSEA for saving fellow workers who had been asphyxiated in a tank aboard the USS NEW YORK CITY. Chester Staples and Charles Mosier received Navy Superior Civilian Service medals. The SCS award is the highest honorary award for civilians that NAVSEA can confer.

In October 1986, during the overhaul of the USS NEW YORK CITY, a welding supervisor went into a sanitary tank to check out a purging problem. However, argon gas had leaked and displaced much of the oxygen in the lower levels of the tank. When he reached the area, he passed out.

Welders at the manhole on top of the tank heard the supervisor's flashlight drop. The tank was dark and the supervisor was in a location not visible from the top. They called to him but got no reply.

They lowered a light and Mosier, concerned about his foreman, entered the tank. Upon finding him, Mosier noticed the man's unconscious state. He yelled to the welders above that something was wrong and there was no breathing air. Mosier then collapsed.

The others immediately cut air hoses and started to blow air into the tank.

Staples, although he did not reply.

They lowered a light and Mosier, concerned about his foreman, entered the tank. Upon finding him, Mosier noticed the man's unconscious state. He yelled to the welders above that something was wrong and there was no breathing air. Mosier then collapsed.

The others immediately cut air hoses and started to blow air into the tank.

Staples, although he did not know what had caused the problem or the degree of hazard, went down into the tank. He lifted Mosier so the others could pull Mosier out, then exited the tank. A ship's officer, LT JG James Happe, descended and rescued the supervisor.

HEROES — Welders Charles Mosier (left) and Chester Staples display their Navy Superior Service commendation letters and medals. Mosier credited fellow workers Mike Bueno, Dennis Inamine and Gene Hori for their unsung roles in the rescue. Inamine cut the pneumatic hose to allow air into the tank. Ship supt. LT James Happe, then assigned to the ship, brought up the foreman.

Mosier was commended for probably saving the supervisor's life and for his quick thinking that enabled others to rescue himself and his supervisor. Staples was recognized for disregarding his own safety to help a fellow worker in distress.

# NUTS & BOLTS

## OPM WALK-IN TESTING

The Office of Personnel Management for the Honolulu area has extended its walk-in testing for clerical and administrative support positions. Under the walk-in system, applicants report to the test room and are tested on a first come, first served basis.

Testing will be for clerical and administrative support positions, GS-2 through 4, and for clerk-stenographers, GS-3 through 5. The tests will be given in Room 5318 of the Prince Kuhio Federal Building at 300 Ala Moana Blvd.

The test schedule this month is: Aug. 11, 2:00 p.m.; Aug. 15 and 17, 8:00 a.m.; Aug. 19, 1:00 p.m.; Aug. 23 and 25, 2:00 p.m.; Aug. 29, 8:00 a.m.; and Aug. 31, 2:00 p.m.

## BASKETBALL SIGNUP

The deadline for teams to sign up for the PHNSY Basketball League is Monday, Aug. 22. Team rosters must be turned in by that day.

An organizational meeting will be held on Aug. 25, 11:00 a.m. in Shop 31, Training Rm 1. For further information, call Ralph Dela Calsada at 474-4250 or Richard Miyamoto at 474-5040.



# iljs NEWSLETTER

**The Institute for Human Services**
*"The Peanut Butter Ministry"*
**DECEMBER 1998**

350 SUMNER STREET AND 546 KA'AAHI STREET, HONOLULU, HAWAII (808) 845-7052 OR 845-7150

# *Acts of Kindness*

*E*veryday, year-round, people give of themselves and their hearts at IHS....

An Air Force Reservist provides air cargo support in Bosnia and two days later delivers hot food to the homeless at IHS.

A child chooses to give her birthday cake to homeless children; a year later her friends continue the tradition with cake, ice cream and gifts for every child at IHS.

A former IHS guest earns his cosmetology credential and comes back to provide free hair cuts.

A prominent Kailua realtor spends one morning a month cutting up and cooking 20 pounds of potatoes for his share of his church's dinner for IHS.

A married couple, an attorney and a florist, see that every child at IHS goes to the movies, with popcorn and sodas for all, each month. They provide fresh roses for each table to celebrate the opening of the family dining room.

A prominent state department head and his wife, newly arrived from the mainland, spend their first Thanksgiving in Hawaii serving food to the homeless at IHS.

Two sisters, with their churches, have served a delicious dinner for twelve years, filling the shelter with the unforgettable aroma of their special bread pudding.

A teacher at a prestigious private school brings his students to IHS eight times a year to learn about charity, volunteerism and poverty.

An off-duty IHS employee celebrated her birthday by "dialing for dollars" on a shift of the annual Phone/Mail campaign because, "It is the best way to spend a birthday"—and then returned to make more calls on the next evening!

A kamaaina physician volunteers in the medical clinic because working with the poor is the most satisfying work of her medical career.

A retired military man comes to the IHS kitchen seven days a week at 4:00 a.m. to prepare 300 breakfasts.

A group of Mormon women set a goal to make quilts for every bed in the family dorm.

A young man who prevailed over a disabling childhood illness grew up to become a successful attorney known for great compassion; he and his friends feed the homeless at IHS.

A woman keeps a promise she made to the Reverend Claude Du Teil in 1987, when she was homeless, to give back to IHS; she volunteers full-time as a janitor and "auntie" at IHS.

A gospel church at Schofield Barracks serves homemade fried chicken, baked ham, and hamburger with mushroom/onion gravy each month at IHS—saying "We want them to smell the love that's in this food!"

A young New Jersey woman spends a semester at Hawaii Pacific University and weekday mornings volunteering with homeless preschoolers.

A Petty Officer in the United States Coast Guard comes to his wife's office at IHS to repair computers and scrub her office floor.

An off-duty IHS employee purchases extra fireworks and brings her children to IHS to celebrate the 4th of July with the children.

One day in 1978 an Episcopalian minister made peanut butter sandwiches and hot coffee and carried his humble gifts to Fort Street to serve to a few street people.

*Founded in 1978 by the Reverend Claude F. Du Teil*

# WorkHawaii Selects IHS for "Most Outstanding Employer Award"

### IHS Employee Chester Staples honored as WorkHawaii Participant

In September Mayor Jeremy Harris and Susie Thieman, Chair of the Oahu Private Industry Council, named IHS as one of fourteen employers to receive this year's "Most Outstanding Award". The award recipients were selected based on their commitment to improving the quality of Oahu's local workforce by providing outstanding employment and training opportunities to their employees.

IHS duty manager Chester Staples was honored as one of twelve WorkHawaii trainees for demonstrating the dedication necessary to become a vital and pro-ductive member of the community.

WorkHawaii is jointly administered by the Mayor of the City and County of Honolulu and the Oahu Private Industry Council, and provides education and training to help Oahu residents to gain skills and obtain employment.

Senator Akaka extended best wishes to all recipients. "I am pleased that WorkHawaii and the Oahu Private Industry Council are honoring these distinguished individuals for their fervor and extraordinary managerial skills, and for their expertise, dedication and professionalism to their businesses and employees." ❈



*Ron Dumlao, IHS Operations Manager and Chester Staples, IHS Duty Manager*

❈ ❈ ❈

# Hilton Hawaiian Village Serves Thanksgiving Dinner at IHS

"My plate was piled high and it was so good!" This grateful report was given after the delicious Thanksgiving dinner provided by the Hilton Hawaiian Village's management and staff. A traditional dinner of roast turkey, dressing, rice, gravy, cranberry sauce, fresh fruit, fresh vegetables and pumpkin pie was enjoyed by over 500 guests. The Hilton also furnished delightful entertainment and everyone had a great time. Over 40 community volunteers helped to serve, decorate and spread holiday cheer. Thank you so much, Hilton, for making the Thanksgiving holiday so special at IHS! The Hilton Hawaiian Village has provided Thanksgiving dinner at IHS since 1996. ❈

## BOARD OF DIRECTORS

Colleen Minami, *President*
Ellen Godbey Carson, Esq.,
*Vice President*
Philip Ching, *Treasurer*
James C. M. Young, *AIA, Secretary*

Margery Chapman
Molly Egged
Beth-An Gilbert-Nishijima
Sherman Hee, Esq.
David A. Houle
The Rev. Canon F. Kay Johnson
Julia Kaiwi
Robert Ko
Jean Kondo
Peter Lewis
Violet Loo
Dee Jay Mailer
Ko Miyataki
Pepi Nieva
Gary Rodrigues
Claudia L. Schmidt
Manuel Sylvester
The Rev. Msgr. Terrence Watanabe
The Honorable Patrick K.S.L. Yim
Martin H. Zais, DDS

Management Staff
*Executive Director,* Lynn C.Z. Maunakea
*Business Manager,* Pauline Thomson
*Director of Development,*
Elizabeth A. Aulsebrook
*Director of Human Resources,*
Sasi McKeel
*Operations Manager/Men's Shelter,*
Ronald Dumlao
*Operations Manager/Women's*
*& Families' Shelter,* Cody Welch
*Public Relations & Volunteer Services*
*Coordinator,* Catherine Graham
*Director of Social Services,*
Hans Bochentin

IHS, The Institute for Human Services, Inc. works with the homeless, advocating for their needs, and providing temporary shelter, food, clothing, and support services so that they may achieve higher levels of self-reliance.

This newsletter is published by IHS for friends, supporters, guests, and employees. Its publication is made possible by financial gifts. Please send comments and changes of address to the IHS Business Office at 845-7150 (phone) or 845-7190 (fax).

IHS is an independent not-for-profit organization registered with the Hawaii State Department of Commerce and Consumer Affairs and the Better Business Bureau.






**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL SURFACE RESERVE FORCE
NEW ORLEANS, LOUISIANA 70146-5100

IN REPLY REFER TO

1650
3CA
**11 FEB 1992**

From:  Commander, Naval Surface Reserve Force
To:    Commanding Officer, Naval Reserve Sima Pearl Harbor 320, Honolulu

Subj:  AWARD IN THE CASE OF HT1 CHESTER A. STAPLES, USNR, 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

Ref:   (a) MILPERSMAN 3420100

Encl:  (1) Letter of Commendation

1.  I take pleasure in forwarding, with congratulations, enclosure (1).

2.  Presentation of this award should be made per reference (a).

J. A.  OTTUM
By direction

Copy to:  (w/o encl)
NAVRESREDCOM REG Twenty
NAVMARCORESCEN Honolulu

DEPARTMENT OF THE NAVY
U.S.S. DELIVER (ARS-23)
FPO SAN FRANCISCO 96601

ARS23:SJW:tm
1650
11 November 197.

From: Commanding Officer, USS DELIVER (ARS-23)
To:   HT3 Chester A. STAPLES, USN, 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
Via:  Commanding Officer, USS RICHARD EDWARDS (DD-950)

Subj: Meritorious Unit Commendation awarded to Task Unit 73.4.1

Encl: (1) Meritorious Unit Commendation Citation

1.  Enclosure (1) is forwarded for presentation at an appropriate ceremony.

S. J. WINOWICZ, Jr.
By direction



THE SECRETARY OF THE NAVY
WASHINGTON, D. C. 20350

The Secretary of the Navy takes pleasure in presenting

MERITORIOUS UNIT COMMENDATION to

TASK UNIT 73.4.1

for service as set forth in the following

CITATION:

For meritorious service from 13 April to 27 April 1975 while conducting C-5A aircraft wreckage search and recovery operations near Vung Tau, Republic of Vietnam. Task Unit 73.4.1, consisting of USS DELIVER (ARS-23), USS QUAPAW (ATF-110), USS ABNAKI (ATF-96), divers from USS PRAIRIE (AD-15), Explosive Ordnance Disposal Group ONE Detachment Subic Bay, EOD Detachment USS MOUNT HOOD (AE-29), and the SEVENTH Fleet Salvage Officer, conducted arduous and highly successful underwater diver and side scan sonar operations in search of wreckage of a U. S. Air Force C-5A Galaxy lost at sea. Working exceptionally long hours under extremely demanding conditions while remaining within sight of shore in a rapidly deteriorating combat situation, Task Unit 73.4.1 conducted salvage operations in a truly exemplary and dedicated manner. By demonstrating outstanding professionalism and perseverance in the face of imminent withdrawal, the efforts of the Task Unit culminated in the recovery of both the C-5A cargo ramp and pressure door, deemed vital by the U. S. Air Force Accident Investigation Board for not only investigative purposes, but also for the safety of other C-5A aircraft. By their initiative and unfailing devotion to duty, the officers and men of Task Unit 73.4.1 upheld the highest traditions of the United States Naval Service.

D. S. Potter

Secretary of the Navy
(Acting)

DEPARTMENT OF THE NAVY
U.S.S. DELIVER (ARS-23)
FPO SAN FRANCISCO 96601

ARS23:
1650
28 Apr

From:   Commanding Officer, USS DELIVER (ARS-23)
To:     FN Chester STAPLES, USN, 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

Subj:   Letter of Appreciation

1.  During the period 11-27 April 1975, the USS DELIVER (ARS-23) was involved in salvage operations recovering the cargo door and ramp from a U. S. Air Force C-5A transport aircraft off the coast of Vung Tau, Republic of South Vietnam.  Also, during the period 28 April to 4 May 1975 the USS DELIVER (ARS-23) was involved in South Vietnam refugee evacuation support operations in the South China Sea.  During these times of high operational commitments, you displayed high motivation in the performance of your duties.  Your hours were long and the demands were great.  In the process of the salvage and assistance operations, you directly contributed to supporting the vital functions of engineering requirements.  The hard work on a ship of DELIVER's age and the strenuous demands placed on the Equipment could have only been handled by a person of your skills.  By maintaining all engineering equipment at operational readiness level, the ship successfully completed both missions.  As a result, the DELIVER has been commended for its outstanding performance by higher authority.

2.  As a member of USS DELIVER's Engineering Department you are hereby commended for your display of professional knowledge, initiative and dedication to duty which had contributed significantly to the successful recovery of the cargo door and ramp and allowing one group of refugees to gain a "New Life".

G. L. ANDERSON

| 1. NAME | 2. | 3. SOCIAL SECURITY NUMBER | 4. DATE OF BIRTH | | |
|---|---|---|---|---|---|
| STAPLES, CHESTER ANTHONY | M | 328 48 7664 | 53 | 08 | 14 |

| 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | 6. a. GRADE, RATE OR RANK | 6. b. PAY GRADE | 7. DATE OF RANK | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|
| NAVY - USN | HT3 | E4 | | 75 | 09 | 16 |

| 8. a. SELECTIVE SERVICE NUMBER | b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE | c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code) |
|---|---|---|
| _ _ _ - _ _ - _ _ _ _ | | 2347 WEST LAKE ST CHICAGO, IL  60612 |

| 9. a. TYPE OF SEPARATION | b. STATION OR INSTALLATION AT WHICH EFFECTED |
|---|---|
| RELEASED FROM ACTIVE DUTY AND TRANS-FERRED TO NAVAL RESERVE | NAVAL STATION PEARL HARBOR, HAWAII |

| c. AUTHORITY AND REASON | d. EFFECTIVE DATE | YEAR | MONTH | DAY |
|---|---|---|---|---|
| | | 77 | 04 | 01 |

| e. CHARACTER OF SERVICE | f. TYPE OF CERTIFICATE ISSUED | 10. REENLISTMENT CODE |
|---|---|---|
| HONORABLE | NA | _ _ _ - _ _ _ - _ _ _ |

| 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 12. COMMAND TO WHICH TRANSFERRED |
|---|---|
| USS RICHARD S. EDWARDS (DD-950) | NAVAL RESERVE PERSONNEL CENTER, NEW ORLEANS, LA 70149 |

| 13. TERMINAL DATE OF RESERVE/MSO OBLIGATION | | | 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code) | 15. DATE ENTERED ACTIVE DUTY THIS PERIOD | | |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
| 79 | 01 | 28 | CHICAGO, IL 60612 | 73 | 04 | 04 |

| 16. a. PRIMARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | 18. RECORD OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| HT-0000-HULL MAINTENANCE TECHNICIAN | 806-SHIPFITTERS | (a) NET ACTIVE SERVICE THIS PERIOD | 03 | 11 | 28 |
| | | (b) PRIOR ACTIVE SERVICE | 00 | 00 | 00 |
| 17. a. SECONDARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | (c) TOTAL ACTIVE SERVICE (a + b) | 03 | 11 | 28 |
| HT-0000 | NA | (d) PRIOR INACTIVE SERVICE | 00 | 02 | 05 |
| | | (e) TOTAL SERVICE FOR PAY (c + d) | 04 | 02 | 03 |
| | | (f) FOREIGN AND/OR SEA SERVICE THIS PERIOD | 03 | 07 | 11 |

| 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964 |
|---|
| ☐ YES  ☒ NO |

20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years)
SECONDARY/HIGH SCHOOL **12** YRS (1-12 grades)   COLLEGE_____ YRS

| 21. TIME LOST (Preceding Two Yrs.) | 22. DAYS ACCRUED LEAVE PAID | 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | 24. DISABILITY SEVERANCE PAY | 25. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|---|---|---|
| TL-NONE | 60 | ☐ $15,000  ☐ $5,000  $20,000 ☐ $10,000  ☐ NONE | ☒ NO  ☐ YES   AMOUNT_____ | a. TYPE  ENTNAC | b. DATE COMPLETED  23 MAY 73 |

| 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| NATIONAL DEFENSE SERVICE MEDAL |

27. REMARKS

BASIC SHIPBOARD FIRE FIGHTING K-780-2016; DAMAGE CONTROL TEAM TRAINING, DC PWS SCL, K-00/780-2004; INDIVIDUAL REQUESTS COPY OF DD 214N

| 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code) | 29. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| 2347 WEST LAKE ST CHICAGO, IL  60612 | |

| 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| N.E. PEARSON, CWO2 ASSISTANT MILITARY PERSONNEL OFFICER | |

**DD FORM 214N**
1 NOV 72

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.
S/N 0102-LF-002-0202

THIS IS AN IMPORTANT RECORD SAFEGUARD IT.

REPORT OF SEPARATION FROM ACTIVE DUTY

# HISTORY OF ASSIGNMENTS

LEGEND: THE FOLLOWING ABBREVIATIONS WILL BE USED IN GAIN ENTRY & LOSS ENTRY COLUMNS.

**GAINS:**

| | |
|---|---|
| ENL | – ENLISTED |
| REEN | – REENLISTED |
| EXTENL | – EXTENDED ENLISTMENT |
| RECACDU | – RECALLED TO ACTIVE DUTY |
| RECDUT | – RECEIVED FOR DUTY |
| RECTAD | – RECEIVED FOR TAD |
| RECTD | – RECEIVED FOR TEMPORARY DUTY |
| RECTEMDUINS | – RECEIVED FOR TEMPORARY DUTY UNDER INSTRUCTION |
| RECDUINS | – RECEIVED FOR DUTY UNDER INSTRUCTION |

| | |
|---|---|
| RECTADUINS | – RECEIVED FOR TEMPORARY ADDITIONAL DUTY UNDER INSTRUCTION |
| RECTREAT | – RECEIVED FOR TREATMENT |
| RECCFO | – RECEIVED IN CONNECTION WITH FITTING OUT |

**LOSSES:**

| | |
|---|---|
| RELACDU | – RELEASED FROM ACTIVE DUTY |
| DISCH | – DISCHARGED |
| TRAN | – TRANSFERRED |

| 1. TYPE AND DATE OF GAIN ENTRY | 2. ACTIVITY | 3. DUTIES | 4. TYPE AND DATE OF LOSS ENTRY | 5. INITIALS |
|---|---|---|---|---|
| ENL APR 0 4 1973 | AFEES Chicago Ill | RECRUIT FR | TRAN APR 0 4 1973 | E.A.M. |
| RECTEMDUINS APR 0 5 1973 | NTC GREAT LAKES, ILL. | RECRUIT TRAINING (03 RICK) FR | TRAN JUN 1 9 1973 | E.A.M. |
| RECDUT 18JUL73 | USS DELIVER (ARS-23) PACFLT PEARL SDCD JUL73 | OF RATE FA FN | 22JUL75 TRAN | RAM |
| 20AUG75 | USS RICHARD S EDWARDS DD-950 PACFLT/PHARBOR, HI SDCD; | JUL73 OF RATE HTFN | 25MAR77 TRAN | KDB |
| RECDUT RECTD 25MAR77 | NAVSTA PEARL | SEPARATIONS | RELACDU 1APR77 | GDB |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| NAME (LAST, FIRST, MIDDLE) | SOC. SEC. NO. |
|---|---|
| STAPLES CHESTER ANTHONY | 328 48 7664 |

NAVPERS 601-5 (REV. 12-60) 1A-0105-401-1202



**DEPARTMENT OF THE NAVY**
NAVAL AND MARINE CORPS RESERVE READINESS CENTER
530 PELTIER AVENUE
HONOLULU, HAWAII  96818-3753

IN REPLY REFER TO:

1650
Ser 037
04 APR 93

From:   Commanding Officer, NR SIMA Pearl Coord 120, Honolulu, Hawaii
To:     HT2 Chester A. Staples, USNR, 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

Subj:   LETTER OF APPRICIATION

1.   It is with great pleasure that I convey my sincere appreciation for your efforts in assisting with the repair of dive stand covers for the USS SAFEGUARD (ARS-50) on 10 January 93.

2.   It took long, extended hours of work to fabricate, assemble and weld three dive stand units for the USS SAFEGUARD (ARS-50).   Through your dedication and resourcefulness, the ship was able to meet Diving Operational Readiness Assessment Requirements.   Your professional performance while providing First Class Repair from those who care reflects positively on this unit and the Naval Reserve.

3.   I applaud your accomplishments and extend to you my personal **WELL DONE!**

R. H. Y. KIM

Copy to:
Service record

# DA BIG MAHALO



## MAHALO BRADDAH AWARD

*This certificate of award is*
*presented to*

### *Chester Staples*

*Michael Bueno    Gene Hori    Dennis Inamine*

*In recognition of and appreciation for*
*Lifesaving Actions*

During overhaul of USS New York City (SSN 696), October 1986, our supervisor descended into CHT Tank #3 to investigate an argon purge problem, and fell victim to argon asphyxiation. I, Tiger Mosier, entered the tank in order to render aid and succumbed to the hazardous environment. Quickly analyzing the situation, Dennis cut a nearby air hose and put it into the tank so as to displace the argon. This allowed Chester to enter the tank and lift me up to where Gene and Mike were able to pull me (*by my hair*) to safety, whereby Ship's Force was then able to rescue our supervisor. **These actions saved our lives**, and for that I and my family are truly grateful, and offer our deepest Mahalo and Aloha.

_____
Dec. 17, 1988
Date

_____
tiger mosier
*Official Oxygen Analyzer*

Standard Form 50
Rev. January 1982
US Office of Personnel Management
FPM Chapter 296

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | | | 2. SSN | 3. Position Sensitivity (Opt.) | 4. Date of Birth |
|---|---|---|---|---|---|---|---|
| STAPLES, CHESTER A | | | | | 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 | 1 | 08/14/53 |

| 5. Veteran Preference | | | | 6. Serv. Comp. Date (Leave) | 7. Tenure | 8. Retirement | |
|---|---|---|---|---|---|---|---|
| 2 | 1—None<br>2—5 Pt. | 3—10 Pt. Disab.<br>4—10 Pt. Comp. | 5—10 Pt. Other<br>6—10 Pt./30% Comp. | 06/03/73 | 1 | 1 | 1-CS   3-FS   5-Other<br>2-FICA 4-None 6-CS Spec. |

| 9. FEGLI | 10. FLSA | 11. Sex | 12. Citizenship | 13. Comp. Level. (Opt.) |
|---|---|---|---|---|
| V | BASIC PLUS ADD'L OPT WITH 4 TIMES PAY, STANDARD OPT, AND FAMILY OPT | N | E-Exempt<br>N-Nonexempt | M | 1 | 1-US<br>8-Other | 000 |

| 14. Effective Date | 15. Annuitant Indicator | | 16. Work Schedule | | 17. (Reserved for OPM Use) |
|---|---|---|---|---|---|
| 05/17/84 | 9 | 1-Reempl Ann-CS  3-RETM<br>2-RETO         4-RETO & CS | 5-RETM & CS<br>9-Not Applicable | F | F—Full-time  G—FT Seasonal<br>P—Part-time  Q—PT Seasonal<br>I—Intermittent J—INT Seasonal | |

| 18-A. NOAC | 18-B. Nature of Action | | 19-A. NOAC | 19-B. Nature of Action |
|---|---|---|---|---|
| 916 | INCENTIVE AWARD | | | |

| 18-C. Auth Code | 18-D. Authority | | 19-C. Auth Code | 19-D. Authority |
|---|---|---|---|---|
| ZLM | OTHER CITATION (SEE REMARKS) | | | |

| 18-E. Auth Code | 18-F. Authority | | 19-E. Auth Code | 19-F. Authority |
|---|---|---|---|---|
| ZLM | OTHER CITATION (SEE REMARKS) | | | |

| 20. FROM: Position Title and Number | 27. To: Position Title and Number |
|---|---|
| | WELDING WORKER<br>9202820000 |

| 21. Name and Location of Employing Office | 28. Name and Location of Employing Office |
|---|---|
| | PRODUCTION DEPARTMENT<br>STRUCTURAL SHOP GROUP — X92<br>WELDING SHOP<br>NAVSEASYSCOM, PEARL HARBOR NAVAL SHIPYD |

| 22. Pay Plan & Occupational Code | 23. Grade or Level | 24. Step or Rate | 25. Salary | 26. Pay Basis | 29. Pay Plan & Occupational Code | 30. Grade or Level | 31. Step or Rate | 32. Salary | 33. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | $65.82 | |

| 34. Duty Station | 35. Position Occupied | | 36. Appropriation Code (Optional) |
|---|---|---|---|
| PEARL HARBOR, HONOLULU, HAWAII | 1 | 1-Competitive  3-SES General<br>2-Excepted     4-SES Career Reserved | |

37. Remarks                    APPROPRIATION CODE:
AUTH:ZLM CPI 451
AUTH:ZLM  SECNAV LTR OF 16 SEP 82
SAS-84-194
I.C. 16645

SPECIAL ACT OR SERVICE AWARD

SAS:0 SPID:00 POS STS:P
FROM LOC ID:026-032056   CFI:   LST EQV INC:03/22/82 PROJ DTE NEXT WGI:08/19/84
TO LOC ID:026-032056                                           TYPED:05/21/84 EC

| 38. Approval | | 39. FPMIS Data | | | | |
|---|---|---|---|---|---|---|
| A. Title of Approving Official | B. Date | A. Supv. or Manage. Ind. | B. VEV IND | C. PRD | D. Barg. Unit Status | E. Functional Class |
| AUTH'D APPOINTING OFFIC | 05/17/84 | 8C | V | 0 | 2560 | |
| C. Signature/Authentication of Approving Official | | F. Ed. Level | G. Year Degree Attained | H. Academic Discipline | I. Agency Code | |
| *[signature]* | | 10 | | | NV24 | |
| | | J. Location Code | | | K. SON | |
| | | 15-8205-003 | | | 2431 | |
| 4C. Employing Department or Agency | | M. | N. UIC | O. ORG CD | P. | Q. |
| DEPARTMENT OF THE NAVY | | | 00511 | 57C | | |

Previous Editions Unusable After 12/31/81<br>NSN 7540-01-110-4907

## PHNSY RECOMMENDATION FOR SPECIAL ACT OR SERVICE AWARD

PH-SYD-12450/11 (3-83)   7530-LL-L06-6246

TO:  INCENTIVE AWARDS OFFICE, Code 165.2                    DATE: __2 April 1984__

VIA:

I recommend that the employee(s) listed be granted a Special Act or Service Award for performance of the special achievement described below.

| RECOMMENDED BY (Name, Signature) | POSITION (Dept., Office, Shop, or Div.) |
|---|---|
| H. HINAZUMI | WELDER FOREMAN, Shop 26 |

| EMPLOYEE (Name: Last, First, M.I.; Shop Prefix and Badge No.) | POSITION TITLE | GRADE | HOURLY PAY | AWARD AMOUNT RECOMMENDED |
|---|---|---|---|---|
|  |  |  |  |  |

(If this is a group award, use reverse side for all employees included.)

DATE(s) OF ACHIEVEMENT:   FROM:   17 Oct 1983          TO:   20 Feb 1984

### ESTIMATE OF BENEFITS

**A.  INTANGIBLE BENEFITS:**  [X] SAFETY     [X] IMPROVED METHOD     [X] MORALE     [ ] Quality/Productivity  OTHER (Specify)

**VALUE**         [ ] MODERATE      [ ] SUBSTANTIAL      [ ] HIGH      [X] EXCEPTIONAL

**EXTENT OF APPLICATION**   [ ] LIMITED      [X] EXTENDED      [ ] BROAD      [ ] GENERAL

**B.  TANGIBLE BENEFITS**  (In table below compute labor savings at actual cost.)

| ITEM | LABOR | | | | MATERIAL | | | TOTAL (LABOR AND MATERIALS) |
|---|---|---|---|---|---|---|---|---|
|  | MAN-HRS. PER | DOLLARS PER | ACCELERATION 29% | TOTAL | UNITS PER | COST PER UNIT | TOTAL | |
| FORMER METHOD | 9,738 | $13.61 | $17.56 | $170,999 | | $ | $ | $ |
| NEW METHOD | 9,400 | | | 165.066 | | | | |
| SAVINGS | 338 | | | 5,935 | | | | |

DESCRIPTION OF ACHIEVEMENT:   (The description need not be lengthy but should clearly show how employee(s) exceeded job expectations.)

1.  This group of welders is recommended for a Group Superior Achievement Award for having accomplished an outstanding job on the towed array system installation from 17 Oct 1983 to 20 Feb 1984 on the USS INDIANAPOLIS (SSN 697) during her SRA period here at Pearl Harbor.  Job Order 3024943002 applies.  A substantial amount of ripout was accomplished ahead of schedule.  This involved air-arc gauging and oxy-acetylene burning of Hy 80 pressure hull and hull support structures.  Many miles of welding was accomplished under difficult environmental conditions, and in many cases, in tight confined spaces.  Welding of submarine Hy 80 steel requires pre-heating of the base metal and many of the weldments were made at $200^0$ F.  Virtually all welds were documented and non-destructively tested by either X-ray, magnetic particle or dye penetrant examinations.  Sustaining a low defect rate for these tests was a tremendous accomplishment, crediting the welders dedication to zero-defect workmanship.  Another exceptional feat was the high productivity/low reject rate for the more than 200 pipe joints that were welded in conjunction with this ship's alteration.  Close attention to details and a desire for perfection produced this accomplishment rarely found in critical submarine pipe welding.

_S. F. Sylvester_
S. F. SYLVESTER/Code 926

| APPROVED BY: (Name and title) | DATE |
|---|---|
| T. MOON /Code 920 | 4/11/84 |

4-10-84

2.   Although no substantial amount of manhours were returned, several intangible elements were realized besides the early completion of the overhaul.   One of these was the high quality/quantity output without sacrifice to safety.

3.   Another element of noteworthy mention is the close teamwork experienced by this group with other tradesmen.   The close unity and willingness to assist one another produced high morale among everyone involved in the success of this over-haul.

4.   Needless to say, the high quality productivity with almost error free welding negated many lost shifts and manhours of repair welding and contributed to the ahead of schedule completion of this job.

5.   I highly recommend a Special Act Award for this group of dedicated people. They showed a superior improvement to completing the towed-array job.   Recommend an award of $3094 (tangible $5,935.00 and intangible benefits of $2500.00) to be divided equally.

H. HINAZUMI

SHOP 26 INDV TOWED ARRAY

| BADGE # | EMPLOYEE | POSITION TITLE | HRLY PAY |
|---------|----------|----------------|----------|
| 36015 | DEMETRIO FLORINO | WELDER APPRENTICE WT 10 | $ 10.55 |
| 36586 | GREGORY AGUSTIN | WELDER WORKER WG 8 | $ 12.05 |
| 36700 | MARCIANO BUCASAS | WELDER WORKER WG 8 | $ 12.05 |
| 36715 | REGINALD ABRIGO | WELDER WORKER WG 8 | $ 12.05 |
| 36748 | MOLLY AUYUEN | WELDER HELPER WG 5 | $ 10.16 |
| 36749 | RANDALL AMONICO | WELDER WORKER WG 8 | $ 12.05 |
| 36768 | MICHALE OSHIRO | WELDER HELPER WG 5 | $ 10.16 |
| 36769 | H. SAVET | WELDER WORKER WG 8 | $ 12.05 |
| 37046 | GARY MANCHAVEZ | WELDER WORKER WG 8 | $ 12.45 |
| 37292 | TERRY YONASHIRO | WELDER APPRENTICE WT 10 | $ 9.43 |
| 37320 | ALDRIDGE SPENCER | WELDER WORKER WG 8 | $ 11.58 |
| 37321 | PAUL TAKAMOTO | WELDER WORKER WG 8 | $ 12.45 |
| 37452 | PAUL SOLOMON | WELDER WORKER WG 8 | $ 14.25 |

0648-DLF Complete - 47 Record(s) Qualified In The File

2

| BADGE # | EMPLOYEE | POSITION TITLE | HRLY PAY |
|---------|----------|----------------|----------|
| 20545 | LOUIS ROYLO | WELDER WG 10 | $ 14.33 |
| 20653 | JAMES TANAKA | WELDER WG 11 | $ 16.11 |
| 21154 | ZACARIAS ABREGANO | WELDER WG 10 | $ 15.40 |
| 21397 | CLARENCE MAU | WELDER WG 11 | $ 14.99 |
| 21424 | BENNY BENZON | WELDER WG 11 | $ 16.49 |
| 22392 | STANLEY NAKAMA | WELDER WG 10 | $ 15.41 |
| 22476 | YUKIO YAMAGATA | WELDER WG 10 | $ 15.40 |
| 22791 | HARRY ABE | WELDER WG 10 | $ 14.33 |
| 24232 | ALVIN FUKUMOTO | WELDER WG 11 | $ 14.99 |
| 24326 | KENNETH SHIMABUKURO | WELDER WG 10 | $ 14.33 |
| 25515 | DENNIS INAMINE | WELDER WG 11 | $ 14.99 |
| 25591 | ALLAN HAMAMOTO | WELDER WG 10 | $ 14.33 |
| 25923 | ALFRED CASTILLO | WELDER WG 11 | $ 16.11 |
| 27473 | GILBERT FERRIERA | WELDER WG 11 | $ 16.11 |
| 27557 | ALEJANDRO GANETANO | WELDER WG 10 | $ 14.30 |
| 27633 | JERRY KAMAKELE | WELDER WG 10 | $ 15.76 |
| 30870 | RANDALL SOONG | WELDER WG 10 | $ 14.85 |
| 30906 | JAMES MENSE | WELDER WG 10 | $ 15.19 |
| 31346 | ANDREW TOBOSA | WELDER WG 10 | $ 15.76 |
| 31472 | MICHAEL PASCUAL | WELDER WG 10 | $ 13.75 |
| 31683 | ALFRED KELIINOI | WELDER WG 11 | $ 13.92 |
| 32056 | CHESTER STAPLES | WELDER WORKER WG 8 | $ 12.05 |
| 32322 | LANCE KUROSU | WELDER WG 10 | $ 14.63 |
| 32372 | MICHAEL HIGA | WELDER WG 10 | $ 13.30 |
| 32452 | CONSTANTE CASTRO | WELDER WG 10 | $ 13.75 |
| 32634 | ROGER SANTOS | WELDER WORKER WG 8 | $ 13.26 |
| 33392 | JOHN HATTON | WELDER WG 10 | $ 14.30 |
| 33928 | A. ARCALAS | WELDER WG 10 | $ 12.79 |
| 33942 | DEAN TAKASONO | WELDER WG 10 | $ 12.79 |
| 34501 | LEONARD ALEJADO | WELDER WG 10 | $ 13.30 |
| 34502 | VELDON CLOSE | WELDER WG 10 | $ 14.30 |
| 34697 | JOHN KING | WELDER WG 10 | $ 13.30 |
| 34703 | JOSEPH ALEXANDER | WELDER WG 10 | $ 13.30 |
| 36014 | MICHAEL CARREIRO | WELDER APPRENTICE WT 10 | $ 10.55 |

1

# DEPARTMENT OF THE NAVY

PEARL HARBOR NAVAL SHIPYARD
BOX 400
PEARL HARBOR, HAWAII 96860

IN REPLY REFER TO:

Code 302

1 2 APR 1984

FIRST ENDORSEMENT on Mr. Hinazumi's Recommendation of 2 Apr 1984

From:   Production Officer
To:     Performance Rating/Awards Board

Subj:   Group Special Act or Service Award Recommendation

1.   The proposed Group Special Act or Service Award has been investigated.
I concur in the recommendation.

H. C. HUNTER

Copy to:
Code 920



# Letter Of Commendation

## Commander, Naval Surface Reserve Force

takes pleasure in presenting a Letter of Commendation to

HULL MAINTENANCE TECHNICIAN SECOND CLASS
CHESTER ANTHONY STAPLES
UNITED STATES NAVAL RESERVE

for service as set forth in the following

## Citation:

"For professional achievement in the performance of his duties while serving as Project Technician of Naval Reserve Shore Intermediate Maintenance Activity Pearl Harbor Three Two Zero in conjunction with Naval Air Reserve Center, Barbers Point, Hawaii, Special Projects from 18 November 1989 to 30 August 1991. Petty Officer Staples consistently performed his demanding duties in an exemplary and highly professional manner. He was a KEY member of the Special Projects Team utilizing Naval Reserve assets to manufacture two prototype 25MM Gun Pod Maintenance Stands for AV-8B Harrier aircrafts. His inspirational leadership and outstanding technical knowledge in special welding techniques enabled the project team to successfully meet its production goal of two maintenance stands within schedule and significantly under budget. His persistent efforts and 'can do' spirit contributed significantly to the smooth operation of the structural shop and the completion of this project. Petty Officer Staples' exceptional professional ability, initiative, and loyal dedication to duty reflected great credit upon himself and were in keeping with the highest traditions of the United States Naval Service."

M. J. BRESNAHAN, JR.
Rear Admiral, U. S. Naval Reserve
Commander, Naval Surface Reserve Force



★ ★ ★ PEARL HARBOR NAVAL SHIPYARD

Superior Accomplishment Award

*Presented to*

CHESTER A. STAPLES

*in recognition of initiative and resourcefulness rare and above normal job expectancy which has contributed significantly to improved government operations*

17 MAY 1984

*Date*

*Shipyard Commander*

Awarded $65.82 (share of $3094.00) for Group Special Act or Service (SAS-84-194)(47)



# ON-THE-SP⊙T AWARD

D 0534

9/10  19 91

Pay to the order of   C. STAPLES

badge no.   026  32056

☐ SUPERVISOR   ☒ NON-SUPERVISOR

the sum of **$75.00** *

For:  OUTSTANDING WORKMANSHIP USS CHOSIN

*Recommender*

*Approval*

## PEARL HARBOR NAVAL SHIPYARD

* Taxes to be deducted

---

# ON-THE-SP⊙T AWARD

00296

September 05  19 90

Pay to the order of   Chester Staples

badge no.   026 – 32056

☐ SUPERVISOR   ☒ NON-SUPERVISOR

the sum of **$50.00** *

For:  Exceptional Work on the USS HOUSTON MBT 5A, in support of TLTA
Storage Drum Patch installation.  Work involved welding in restricted
areas under pressure to meet scheduled completion dates.  These dates
were met without sacrificing quality work.

*Recommender*

*Approval*

## PEARL HARBOR NAVAL SHIPYARD

* Taxes to be deducted



# ON-THE-SP☉T AWARD

01770

July 18, 1991

*Pay to the order of* ___C. STAPLES___

*badge no.* ___026 – 32056___

☐ SUPERVISOR  ☒ NON-SUPERVISOR

*the sum of* **$50.00** *

*For :* Your outstanding performance, professionalism, and team work rendered during the USS COMPETENT (AFDM-6) ROH from Jan 91 – Jun 91, has demonstrated that we are still the "NO KA OI" Shipyard.

## PEARL HARBOR NAVAL SHIPYARD

\* Taxes to be deducted

Recommender

Approval



HIGH-GEAR HUSTLE - The fleet foursome of Chester Staples, Bill Cory, Nolan Kurohashi and Manny Bernardino barrel down the Ala Moana Park racecourse. This year's bed racing and parade were moved to Ala Moana because of road construction in Waikiki.

# 'like going 70 mph in a drop

200 yards away. Braking to a turned the bed around and e as a fresh team took over for alf.

**DSTS OF COMPETITION**

of competition took its toll on and beds. Several foursomes of came threesomes as a team denly dropped out with a pulled wisted ankle. Some teams lost

changeover at the turnaround. Once, a three-man team took off toward the finish line: the tardy member had to sprint nearly halfway down the course before he finally caught up with his bedpushing teammates.

A local bank's team lost control at the finish-line and plowed into some spectators. The announcers warned the audience to keep themselves and their children out of harm's way.

Mechanical failure plagued some teams. A quartet of Marines lunged forward at the starting gun and wrenched apart the right front joint of their bedframe. The women's team from a local T-shirt company blazed out to a commanding lead, only to lose a wheel during the turnaround. Dras from the frozen wheel proved too much as the more team swept past as the home stretch. Other teams lost their sheet metal screws, making from vibrating wheels.

## OTHER ATTRACTIONS

At one point during the competition, a helicopter hovered overhead and showered hundreds of roses onto the crowd below. Other activities attracted the audience. Nearby food booths served chili, tacos, shaved ice, chips and sodas, while other booths were stocked with special bed race handbags, caps, visors, mugs and other souvenirs.

At the Koko Head side of the park, Pacific Handicrafters' Guild members offered ceramics, wall hangings, clothing, paintings, dolls and other handmade items. The riding unit of Paniola O Pupukea Hui Holoholo offered its horses for children to ride. Part of the ride fees and booth fees went to the benefit the Variety school.



RT wasn't quite enough as this team lost by a quarter-bed-length.




David Hayes, Shop 06 Fijian, described the race. "On the way down, it looked neck and neck. The turnaround slowed our guys down. Give credit where credit is due. The Fijians were good!"

Shipyard first race runner Matthew Abellanida, a Code 530 procurement clerk, described the action from a mattress-level viewpoint. "The race ride was like being in a dropped-front-end Volkswagon going 70 mph on a bumpy old hao bush road," she said. "The turnaround at the halfway point 'happened so fast, like a gust of wind picking you up and spinning you around. The crowd, the noise, didn't bother me at all. I was just excited about the whole thing. It's quite a ride. I really enjoyed it!"

## WORTHY CAUSE

The day's activities began with a bed decoration contest at Fort DeRussy, followed by a parade along Ala Moana Boulevard, and the races at Ala Moana Park. More than 90 entries made this year's event the largest ever. Sponsors contributed $500 per entry. Proceeds went to benefit the Variety Club's Learning Disability School for Children and other children's charities in Hawaii. The Pearl Harbor Association donated the fee for the Shipyard entry.

Earlier in the day, the Shipyard and the awesome Fijians had set up next to each other at Fort DeRussy, giving ample time to check each other out. Shipyard team captain Emil "Roy" Gomez, Shop 38 marine machinist, was undaunted. "We should have had more practice," he said, but "there was a lot of last-minute stuff. We're not afraid of anybody. We're here to win!"

Fellow teammate Lee sounded less confident. "I saw them on TV the night before. I told myself, What! We're supposed to race them?"

## EXPERIENCED OPPONENT

Tai Rarase, Fijian team captain, commented his team had been training since January. The Fiji National Championships were held at the end of February, and his team beat 27 others in order to represent their country here in Hawaii.

In every round, two crews of four runners each manned the beds. One crew propelled the bed from the starting line to the midway

## OTHER ATTRACTIONS

At one point during the competition, a helicopter hovered overhead and showered hundreds of roses onto the crowd below. Other activities attracted the audience. Nearby food booths served chili, shaved ice, chips and sodas, while other booths were stocked with special hats, handbags, caps, visors, mugs and souvenirs.

At the Koko Head side of the park, Variety Handicrafters' Guild members offered ceramics, wall hangings, clothing, paintings, dolls and other handmade items. The riding unit of Paniola O Pupukea Hui Hou Holo offered its horses for children to ride. Part of the ride fees and booth fees went to benefit the Variety school.



VOCAL SUPPORT wasn't quite enough as this team lost by a quarter-bed length.

YARDBIRDS TEAM and all other bed race entrants had to be at Fort DeRussy by 8:00 a.m. for the decorated bed contest judging. First row: Ernest Masilon, Shop 71; Lee Lee, Shop 31; Nolan Kurobashi, Shop 38; Kathleen Abellanida, Code 530; Emil "Roy" Gomez, Shop 38; David Hayes, Shop 06; Bill Carr, Shop 38. Back row: Manny Bernardino, Shop 72; Alvin Oyadomari and Ramon Ancheta, Shop 26. Chester Siraplos, Shop 26.



BRING OUT YOUR BEST - The Bu... thirsty parade viewers a refreshi...



**STAFF**
The Institute for Human Services

**CHESTER STAPLES**
Duty Manager

















* 5 punctures to this tire.

- there was another tire with 6 puncture hole that I had to replace.

- scarth on the hood from side to side (L to R)

* white indicates punctures.

— VANDALISM AT THE JOB.









# BAE SYSTEMS

**BAE Systems, Inc.**
**Management Policy**

| | |
|---|---|
| **SUBJECT:** | **Standards of Conduct and Corrective Action** |
| **NUMBER:** | **100** |
| **REVISION:** | **Three** |
| **EFFECTIVE:** | **November 1, 2015** |

*Gerard J. DeMuro*

## 1.    POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses located in the United States require standards of employee conduct consistent with the BAE Systems Code of Conduct, our high ethical standards, our desired culture and work environment, as well as all legal requirements. Should a violation of these standards occur, the appropriate Inc. Business will consider the nature and circumstances of each infraction and implement corrective action at a level appropriate to the seriousness of each violation, up to and including termination of employment.

## 2.    PURPOSE AND SCOPE

It is the purpose of this policy to ensure that each employee recognizes that he or she must take responsibility for him or herself and for his or her co-workers in order to provide a safe, productive, ethical, and agreeable place to work. In accordance with this requirement, each employee has a duty and responsibility to familiarize him or herself with this policy and all other policies, directives, guidelines, and work rules that govern conduct in the workplace. Any employee who violates our standards of work conduct, whether through carelessness, neglect, willful disregard, or lack of awareness of information that the employee should have known, will be subject to corrective action.

This policy can be changed at any time by BAE Systems, Inc. in its sole discretion. It is neither intended to nor does it create any contractual relationship between an employee and an Inc. Business. Once printed or duplicated, this policy is not a controlled document. The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

## 3.    DEFINITIONS

3.1    **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses. For purposes of this policy, this term shall refer to Inc. Businesses located in the United States, unless otherwise specified.

**3.2** **Verbal Warning** is a corrective action generally used for minor infractions, which, if continued, could become significant. A verbal warning means that a member of management will explain the nature of the violation to the employee and will reinforce the required behaviors. The manager will make note of the date and reasons for the warning.

**3.3** **Written Warning** is a corrective action generally used in cases of serious or repeated infractions. A written warning means that a member of management will document and explain the nature of the violation and the required corrective actions. A written record of the action will be retained in the employee's personnel file.

**3.4** **Unpaid Disciplinary Suspension** is a corrective action that is generally used in cases of serious infractions or when previous corrective actions failed to achieve the desired employee conduct. An unpaid disciplinary suspension means that a member of management will document and explain the nature of the violation and the required corrective actions. As appropriate, a final written warning may be used in place of a disciplinary suspension with the same level of severity. Depending on the circumstances, this could be the first and final warning.

**3.5** **Administrative Leave** is a temporary removal of an employee from the work environment during the investigation of an allegation. An Administrative Leave may be with or without pay at the discretion of Human Resources and may be converted to an unpaid disciplinary suspension or termination of employment based on the outcome of the investigation.

**4.** **APPLICABILITY**

This policy applies to all Inc. Businesses.  Non-United States based businesses should follow local in-country laws and policies.  For those employees subject to a collective bargaining agreement (CBA), if there is any conflict between this policy and the applicable CBA, the CBA will govern with the exception of those provisions mandated by law.

This policy is not intended to interfere with or infringe on employees' rights under Section 7 of the National Labor Relations Act to communicate with others about wages, hours, or other terms and conditions of employment or to otherwise engage in protected, concerted activity.

Violations of this Policy are subject to disciplinary measures up to and including termination.

## 5.    CORRECTIVE ACTION

5.1    Each Inc. Business reserves and maintains the right to take any corrective action it deems appropriate, up to and including termination of employment at any time. The Company's general approach to corrective action is that the level of corrective action should be appropriate to the nature of the problem.  Corrective action may include but is not limited to Verbal Warnings, Written Warnings, Unpaid Disciplinary Suspensions, and termination of employment. Decisions on corrective action for violations of the standards of conduct take into account, among other things, the nature and severity of the misconduct. As it is not possible to list all of the potential reasons for corrective action, employees must be aware that a violation of laws, regulations, policies, standards, processes, practices or guidelines may result in corrective action.

5.2    The following is a non-exhaustive list of examples of infractions that may result in immediate corrective action, up to and including termination of employment. This list is only exemplary and is not intended to be comprehensive.

   a.  Violation of any Company policy, procedure, practice, standard, or violations of applicable laws or regulations

   b.  Unauthorized and/or excessive tardiness or absence, including job abandonment

   c.  Falsification or violation of time, labor-charging, or expense-reporting policies

   d.  Violation of security policies or security breaches, including but not limited to discussion, release, abuse or misuse of classified, export controlled, or proprietary information

   e.  Theft or misuse of funds, stealing, or embezzlement

   f.  Deliberately damaging any property belonging to Inc. Businesses, a customer, supplier, vendor, or employee

   g.  Violation of the Drug Free Workplace Policy

   h.  Any action that threatens the safety, health, or well-being of the employee or any other individual while in the course of work or while on property owned or leased by Inc. Businesses

   i.  Falsification or omission of material information on an employment application

   j.  Falsifying or omitting pertinent facts on personnel, security, quality, or work records

**k.** Being insubordinate, threatening, intimidating, disrespectful or assaulting a manager/supervisor, coworker, customer, or vendor

**l.** Personal conduct that is disruptive to the efficiency of the work environment

**m.** Conduct prohibited by the global Code of Conduct

**n.** Acts of harassment, sexual harassment, or unlawful discrimination

**o.** Misuse or unauthorized use of the assets of Inc. Businesses, including equipment, products, materials, credit cards, supplies, networks, e-mail, or software

**p.** Violations of the Prohibition Against and Prevention of Workplace Violence Policy, including unauthorized weapons possession

**5.3** When delivering a corrective action, each manager should ensure that the employee is aware of the nature of the violation(s), the required behaviors, the consequences of the violation(s), and the consequences of future violations/failure to improve.

**5.4** Corrective actions will be considered during the subsequent performance management and compensation planning processes and may significantly impact performance reviews and other compensation-related actions as appropriate to the timing and seriousness of the issue.

## 6.     APPLICATION OF CORRECTIVE ACTION

**6.1** Employees under investigation may be placed on Administrative Leave with or without pay, pending completion of the investigation, at the discretion of Human Resources. Employees placed on Administrative Leave are required to remain available during normal work hours to participate in the investigation as required.

**6.2** Before administration of a corrective action that is greater than a Verbal Warning, managers should first consult with Human Resources, which will review the nature and circumstances of the infraction and the proposed corrective action(s).

**6.3** Application of a Disciplinary Suspension or a termination of employment requires, at a minimum, approval of the next level of management and a Human Resources Business Partner prior to execution of the corrective action or discharge of the employee.

**6.4** Different violations may have a cumulative effect that may be considered in determining appropriate corrective action.

## 7.    EMPLOYEE APPEAL OF CORRECTIVE ACTION

An employee who has received a corrective action may present information that they believe challenges information used as the basis for the corrective action. Employees may use any existing internal-concern reporting process, including but not limited to speaking with the next level of management, contacting Human Resources, or notifying the BAE Systems, Inc. Ethics Helpline.

## 8.    REFERENCES

BAE Systems, Inc. Management Policy 102 – Prohibition Against Harassment and Sexual Harassment
BAE Systems, Inc. Management Policy 124 – Prohibition Against and Prevention of Workplace Violence

## 9.    EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the President & CEO of BAE Systems, Inc. or the BAE Systems, Inc. Senior Vice President, Human Resources and Administration (or designee).

**BAE SYSTEMS**

BAE Systems, Inc.
Management Policy

| SUBJECT: | Equal Employment Opportunity, Anti-Harassment & Affirmative Action |
| --- | --- |
| NUMBER: | 101 |
| REVISION: | Eleven |
| EFFECTIVE: | March 15, 2017 |

Gerard J. DeMuro

## 1. POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses be equal opportunity employers and comply with all applicable federal, state and local anti-discrimination laws, orders, directives and regulations. As U.S. Government federal contractors, Inc. Businesses are required to maintain affirmative action programs in compliance with Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, as amended, and Section 402 of the Vietnam Era Veteran's Readjustment Assistance Act of 1974, as amended.

Inc. Businesses administer all employment decisions on a nondiscriminatory basis without regard to an applicant's or employee's race, color, religion, sex, gender, national origin, ancestry, age, status as a qualified individual with a disability, genetic information, pregnancy status, medical condition, marital status, sexual orientation, status as a U.S. veteran, gender identity and expression, or any other characteristic protected by applicable federal, state, or local law. In addition, Inc. Businesses prohibit Harassment on the basis of these protected characteristics. This policy extends to all terms, conditions, and privileges of employment including but not limited to: job advertisement; recruitment and hiring; promotion; demotion; transfers; layoff and termination; compensation; benefits; education and training; reasonable accommodation due to disability or religion; work assignments; social and recreational programs, and other working conditions.

All employees are responsible, in accordance with this policy and the BAE Systems Code of Conduct, for promoting a work environment that is free of discrimination and Harassment, supports diversity and inclusion, and encourages dignity and respect for others. Inc. Businesses do not tolerate unlawful discrimination or Harassment by any employee. Overall responsibility for the establishment and enforcement of this policy is vested with the President and Chief Executive Officer of BAE Systems, Inc.

## 2.    PURPOSE AND SCOPE

The purpose of this policy is to identify and define the Company's policy regarding Equal Employment Opportunity and Affirmative Action.  This policy can be changed at any time by BAE Systems, Inc. in its sole discretion.  It is neither intended to, nor does it create, any contractual relationship between an employee and an Inc. Business.  Once printed or duplicated this policy is not a controlled document.  The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

## 3.    DEFINITIONS

3.1    **Color** means an individual's pigmentation, complexion, or skin shade or tone. This could include lightness or darkness of the skin and discrimination based on color can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity.

3.2    **Gender Expression** means any or all of the external characteristics and behaviors that are socially defined as either masculine or feminine, such as dress, grooming, mannerisms, speech patterns, and social interactions, whether or not stereotypically associated with the person's designated sex at birth.

3.3    **Gender Identity** means a person's innate, deeply felt psychological identification as male or female, which may or may not correspond to the person's body or designated sex at birth.

3.4    **Harassment** means unwelcome conduct that intimidates, threatens, or coerces a person based on employee's race, color, religion, sex, gender, national origin, ancestry, age, status as a qualified individual with a disability, genetic information, pregnancy status, medical condition, marital status, sexual orientation, status as a U.S. veteran, gender identity and expression, or any other characteristic protected by applicable federal, state, or local law that: (1) has the purpose or effect of creating an intimidating, hostile, or offensive work environment; (2) has the purpose or effect of unreasonably interfering with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities.

3.5    **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses. For purposes of this policy, this term shall refer to Inc. Businesses located in the United States, unless otherwise specified.

3.6    **National Origin** means the place of origin of an individual or his or her ancestors, or because an individual has the physical, cultural, or linguistic characteristics of a national origin group.

3.7    **Qualified Individual with a Disability** means an individual with a physical or mental impairment that substantially limits one or more aspects of the individual's

2

major life activities, and who, with or without reasonable accommodation, can perform the essential functions of a position that the individual holds or has applied for. This definition includes individuals who have a record of such impairment or who are regarded as having such impairment.

3.8    **Race** means belonging to or being perceived as belonging to a particular grouping of persons related by common ancestry or heredity. Discrimination based on race generally encompasses discrimination due to a person's racial or ethnic ancestry; physical characteristics such as a person's color, hair, facial features, height and weight; race-linked illnesses such as sickle cell anemia; and cultural characteristics such as a person's name, cultural dress and grooming practices, or accent or manner of speech.

3.9    **Religion** means an individual's beliefs, observances, or practices concerning the ultimate ideas about life, purpose, and death, as well as the morals or standards of belief as to what is right and wrong that are held with the strength of traditional religious views.

3.10   **Sexual Harassment** means unwelcome or unwanted conduct of a sexual nature that: (1) creates an intimidating, hostile or offensive work environment; (2) influences or tends to affect the individual's career, compensation, working conditions, responsibilities, duties, or other aspects of the employment relationship; or (3) creates an explicit or implicit term or condition of an individual's employment (e.g., where an employee's submission or rejection of this conduct affects decisions regarding hiring, evaluation, promotion, or some other aspects of employment). This includes gender-based Harassment of a person of the same or opposite gender. The victim can be anyone affected by the conduct, not just the individual at whom the offensive conduct is directed.

3.11   **Sexual Orientation** means having or being perceived as having an orientation toward heterosexuality, bisexuality, or homosexuality.

3.12   **Veteran Status** means a classification of past U.S. Military service, which may include discharge status and protected veteran status under applicable non-discrimination and affirmative action provisions (i.e., disabled veteran, recently separated veteran, active duty wartime or campaign badge veteran, an Armed Forces service medal veteran, or any other veteran status protected by applicable law).

4.   **APPLICABILITY**

This policy applies to all Inc. Businesses.  Employees of Inc. Businesses who are U.S. citizens and work in a foreign country are specifically covered by this policy (unless application of this policy would violate the law of the foreign country in which the workplace is located).   Subject to the above exception, non-United States-based businesses should follow local in-country laws and policies.

For those employees subject to a collective bargaining agreement (CBA), if there is a conflict between this policy and the applicable CBA, the CBA will govern with the exception of those provisions mandated by law.

Inc. Businesses will communicate the requirements of this policy to outside firms responsible for providing temporary workers and employment candidates to the Inc. Businesses.  This policy also applies to contractors, vendors, and non-employees while performing work for or on behalf of Inc. Businesses. The policy applies to any Harassment that occurs during employment or application for employment regardless of whether it occurs on the premises of an Inc. Business workplace or at a work-related setting, such as business trips, customer sites, or Company social events and functions.

5.   **EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION PRACTICES**

5.1   The Company is committed to equal employment opportunity, which means that all applicants and employees have access to employment and advancement opportunities on the basis of qualifications, performance, and other job-related factors, without regard to their membership in a protected class.  To this end, the Company is committed to taking reasonable steps to prevent unlawful discrimination from occurring.

5.2   The Company is committed to providing a reasonable accommodation to employees and applicants for employment in order to assure that individuals with disabilities enjoy full access to equal employment opportunity.  Inc. Businesses will engage in an interactive dialogue with employees who request reasonable accommodations due to their disability.  Inc. Businesses shall provide a reasonable accommodation to such employee and/or applicant unless the accommodation would result in an undue hardship to the employer.[1]  The applicable Inc. Business is responsible for determining the most appropriate accommodations to be made, if any.

---

[1]   For example, if a pregnant employee requests an accommodation for a disability caused or contributed to by the pregnancy, the employer is to explore reasonable accommodations, including leave, with the pregnant employee, and will endeavor to provide a reasonable accommodation unless doing so would impose an undue hardship on the employer.  In determining undue hardship, consideration is given to the employer's size, financial resources, and the needs of the business.

5.3     The Company also is committed to providing reasonable accommodations to employees and applicants due to their religion. Inc. Businesses will engage in an interactive dialogue with employees who request reasonable accommodations because of their religious beliefs.  Inc. Businesses shall provide a reasonable accommodation to such employee and/or applicant unless the accommodation would result in an undue hardship to the employer.[2]  The applicable Inc. Business is responsible for determining the most appropriate accommodations to be made, if any.

5.4     Inc. Businesses shall not refuse to hire or terminate an individual because of his or her citizenship or because of the individual's national origin.  Further, in verifying or re-verifying an individual's eligibility to work in the United States (e.g., through the E-Verify process and form I-9), Inc. Businesses shall not treat an employee or candidate for employment differently because of his or her citizenship or national origin.  Notwithstanding any of the foregoing, when required or permitted by applicable law, regulation, or other U.S. Governmental directive (e.g., to meet ITAR compliance or security clearance requirements), Inc. Businesses shall conduct a separate and discrete review of any existing employee's or new hire candidate's eligibility to meet such position requirements, including where applicable his or her citizenship or national origin.  Failure to meet such eligibility requirements may preclude an individual from being hired or in the case of an existing employee, may result in reassignment or termination.

5.5     The Company will not discharge or in any other manner discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant.  However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions cannot disclose the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is: (a) in response to a formal complaint or charge; (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the Company; or (c) consistent with the Company's legal duty to furnish information.  41 CFR 60-1.35(c).

5.6     The Company is committed to complying with its affirmative action obligations, as required by applicable law, including by taking positive actions and making good-faith efforts to ensure equal employment opportunities without regard to race, color, religion, sex, national origin, disability or status as a protected veteran. The Company's commitment to affirmative action in this regard does not require or permit any quota systems.

5.7     Implementation of this policy, including the development and management of the Inc. Businesses' affirmative action programs, shall be the responsibility of the Inc. SVP - Human Resources & Administration (or designee).

---

[2]      In determining undue hardship, consideration is given to the employer's size, financial resources, and the needs of the business.

6. **HARASSMENT**

**6.1** Any type of Harassment or Sexual Harassment, whether engaged in by fellow employees, supervisors, or non-employees with whom an employee or applicant comes into contact during the course of employment (e.g., customers, vendors, suppliers, etc.) or application for employment, is contrary to this policy and will not be tolerated.

**6.2** Examples of harassing conduct that violate this policy and will not be tolerated include, but are not limited to:

    **a.** Verbal or physical contact related to a person's protected class (e.g., epithets, belittling jokes, slurs or negative stereotyping)

    **b.** Threatening, intimidating, or hostile acts that relate to a person's protected class

    **c.** Display or circulation in the workplace of written or graphic material that demeans or shows hostility or aversion toward an individual or group because of their protected class

    **d.** "Jokes," "pranks" or other forms of "humor" that are demeaning and/or hostile with regard to a person's protected class

**6.3** Examples of Sexual Harassment that violate this policy and will not be tolerated include, but are not limited to:

    **a.** Unwanted sexual advances, including sexual flirting and propositions

    **b.** Direct or implied requests for sexual favors

    **c.** Verbal, nonverbal, or written communications of a sexual nature (such as sexual innuendo and language); suggestive or lewd comments; comments about an individual's dress or physical appearance; gestures; leering; sexually oriented jokes or teasing; or using sexually degrading words to describe an individual

    **d.** Display of visual objects, images, pictures, or printed matter of a sexual nature, such as sexually suggestive or pornographic pictures, videos, cartoons or posters

    **e.** Unwanted physical contact or conduct of any kind, including touching, patting, pinching, purposefully brushing against, assaulting, impeding, or blocking movements

**6.4**   Harassment and Sexual Harassment includes any of the above types of behaviors initiated using electronic media, including but not limited to blogs, text messages, e-mails, social networking, message boards, and/or instant messaging. Further, statements or actions need not be intended to be offensive to be in violation of this policy.

## 7.   PERSONAL RELATIONSHIPS IN THE WORKPLACE

Personal relationships, such as dating, romantic, or sexual, between employees in the workplace must be carefully managed to ensure the effective operation of the workplace. The following considerations apply:

**7.1**   The relationships must not create an uncomfortable work environment for others.

**7.2**   Neither of the employees may have a direct supervisory, disciplinary, or evaluative responsibility with respect to the other employee.

**7.3**   Any employee with potential control or influence over the terms and conditions of employment for someone they are romantically or sexually involved with must disclose this relationship to Human Resources and/or their management chain immediately. Failure to do so is a serious violation.

**7.4**   Any employee who has been involved in a romantic or sexual relationship with another employee and who believes that he or she has been adversely affected by such a relationship, notwithstanding its disclosure, must make his or her views about the matter known to management and/or Human Resources.

**7.5**   This policy shall apply without regard to gender and without regard to the sexual orientations of the participants in a relationship described above.

## 8.   REPORTING AND RESPONDING TO CONCERNS

**8.1**   Any individual who experiences or witnesses what he or she perceives to be discrimination or Harassment in violation of this policy is required to immediately report the alleged act to one or more of the following:

   **a.**   His/her immediate supervisor, supervisor's manager, or any member of management;

   **b.**   A Human Resources Department representative; and/or

   **c.**   A business conduct (ethics) officer or the BAE Systems, Inc. Ethics Helpline.

7

**8.2**     If the alleged perpetrator is the employee's supervisor, the employee should direct his or her complaint to any Human Resources Department representative or business conduct (ethics) officer.  Human Resources Department employees with personal concerns regarding Harassment or discrimination should report those concerns to the BAE Systems, Inc. Ethics Helpline, or to line management.

**8.3**     To the extent practicable, the investigation will be conducted in a manner so as to protect the confidentiality of all individuals involved.  In certain cases, the Inc. Business may be able to address and remedy concerns without revealing who brought the complaint.  In other situations, however, it may be necessary to disclose the complainant's identity to fully investigate the matter or allow the accused to respond to the allegations against him or her.

**8.4**     All allegations of Harassment or discrimination will be promptly reviewed by the Human Resources Department, and if necessary, an investigation will be conducted in a prompt, thorough, and impartial manner.  If the preliminary inquiry indicates that any applicable laws and/or regulations may have been violated, then the investigator shall promptly consult the cognizant Legal Department office.

**8.5**     The appropriate Inc. Business shall take corrective action, up to and including termination, against any employee violating this policy.

**8.6**     Anyone who files a complaint pursuant to this policy in which he or she knowingly makes false allegations of fact shall be in violation of this policy, and may be subject to corrective action, up to and including termination of employment.

**9.     RETALIATION**

**9.1**     The Company strictly prohibits any form of retaliation (e.g., Harassment, intimidation, threats, coercion, discrimination, etc.) by an Inc. Business against an applicant or employee who in good faith makes or files a complaint; raises a concern; opposes any unlawful act or practice; provides information, or otherwise assists in an investigation, compliance evaluation, hearing, other proceeding or any other activity; regarding any conduct that he or she has a reasonable objective belief to be in violation of the Code of Conduct, Company policies, or as a protected right by applicable laws, rules or regulations.

**9.2**     No Inc. Business may engage in any retaliation against an applicant or employee even if his or her complaints are proven unfounded by an investigation, unless the applicant or employee knowingly made a false allegation, provided false or misleading information in the course of an investigation, or otherwise acted in bad faith.  Applicants and employees have an obligation to participate in good faith in any internal investigation of retaliation.

**9.3** Any applicant or employee who believes he or she has been retaliated against must report such belief to any of the individuals listed in Section 8.1 immediately. Inc. Businesses shall take all complaints of retaliation very seriously.  All such complaints will be reviewed promptly and, where appropriate, investigated. Anyone found to have intentionally engaged in retaliation shall be subjected to immediate corrective action, up to and including termination of employment.

## 10. RESPONSIBILITIES

**10.1** All managers and supervisors are responsible for:

    **a.** Immediately informing their local Human Resources representative of any observations or complaints of discrimination or Harassment;

    **b.** Ensuring that their employees are aware that discrimination and Harassment, in any form, is prohibited, and that any perceived incidents of discrimination or Harassment are to be reported immediately; and

    **c.** Informing employees that any reported discrimination or Harassment will be promptly investigated and appropriate disciplinary action will be taken, up to and including termination of employment.

**10.2** Human Resources is responsible for:

    **a.** Actively participating in and/or taking the lead in resolving any complaint and ensuring that appropriate corrective action is taken; and

    **b.** Leading investigations and ensuring that complaints are thoroughly resolved.

## 11. REFERENCES

EEO is the Law
EEO is the Law Supplement

## 12. EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the President & CEO of BAE Systems, Inc. and the Inc. SVP, Human Resources & Administration.

# BAE SYSTEMS

**BAE Systems, Inc.
Management Policy**

| | |
|---|---|
| **SUBJECT:** Prohibition Against and Prevention of Workplace Violence | |
| **NUMBER:** | 124 |
| **REVISION:** | Original |
| **EFFECTIVE:** | September 1, 2011 |

*Linda P. Hudson*
Linda P. Hudson

## 1.    POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses strive to establish and provide for all employees and visitors a safe, professional working environment that is free from violence, threats of violence, harassment, intimidation, or other disruptive behavior. Any form or manner of threatening remark, gesture, or violent behavior in the workplace is unacceptable and will not be tolerated. Inc. Businesses will investigate concerns and take appropriate action, up to and including termination of employment, on violators of this policy. Retaliation in any manner against anyone who has reported a concern related to workplace violence or who has participated in a related investigation is strictly prohibited and anyone who is found to have engaged in retaliation will be subject to corrective action, up to and including termination of employment.

## 2.    PURPOSE AND SCOPE

The purpose of this policy is to communicate BAE Systems, Inc.'s policy toward workplace violence against or by employees or other covered individuals listed in Section 4 below. It is also to make employees aware of the potential for violence in the workplace, to increase the ability of an employee to recognize early-warning signs of potentially violent situations, and provide guidance on how to report or respond to violent incidents.

This policy can be changed at any time by BAE Systems, Inc. in its sole discretion. It is neither intended to nor does it create any contractual relationship between an employee and an Inc. Business. Once printed or duplicated, this policy is not a controlled document. The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

## 3.    DEFINITIONS

3.1    **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses. For purposes of this policy, this term shall refer to Inc. Businesses located in the United States, unless otherwise specified.

**3.2**   **Workplace violence** means any act or implied act of violence against an employee, visitor, client, or other individual that injures, attempts to physically injure, or otherwise threatens that individual's safety, or negatively affects the individual physically, or subjects him or her to emotional distress. This includes but is not limited to physical or verbal assaults, threats, coercion, intimidation, bullying, and all forms of prohibited harassment. Any loud, angry or disruptive behavior that creates discord in the work environment will not be tolerated. Intentionally damaging property or threatening to damage property and any conduct that a reasonable person would perceive as constituting a threat of violence will be defined as a violent act.

## 4.    APPLICABILITY

This policy applies to all employees, contractors, customers, vendors, and any other visitors to an Inc. Business work environment. This policy is to be considered in effect at all Inc. Business owned or leased facilities (including parking lots), at customer sites, and for all personnel who are officially representing the Company, using Company assets such as Blackberries, cell phones or laptops, during any Company-sponsored event.

## 5.    REQUIREMENTS

It is expected that every employee will act with professionalism at all times while they are in an Inc. Business owned or leased facility (including parking lots), at customer sites, during any period where they are officially representing the Company, or during any Company-sponsored event. Acts of violence, threats of violence, harassment, intimidation, or other disruptive behavior will not be tolerated. Any employee engaging in such act(s), regardless of the location or manner of the act(s), will be subject to disciplinary action up to and including termination of employment.

Inc. Businesses support the criminal prosecution of those who threaten or commit work-related violence against employees, customers, vendors, contractors, visitors, and property.

**5.1**   All individuals covered by this policy are responsible for:

   **a.** Their own behavior and for interacting responsibly with fellow employees, managers, and anyone they come in contact with while covered by this policy

   **b.** Promptly reporting (anonymously if necessary) to appropriate persons identified at each site any acts or threats of violence, individuals expressing suicidal thoughts, or disruptive behavior in the workplace. Concerns may be reported to Human Resources, security, management, or to the BAE Systems, Inc. Ethics Helpline.

   c. Informing management and Human Resources of any restraining orders or other protective court orders related to domestic violence so assistance can be offered and precautions taken at the worksite as appropriate to the situation.

   d. Fully cooperating in any investigations of workplace violence.

   e. Not carrying dangerous weapons, dangerous materials, or brandishing any item in a fashion that would put a reasonable person in fear that it may be used as a weapon at any time while covered by this policy, except when authorized to do so in advance by BAE Systems, Inc. security or in accordance with site-specific procedures that reflect different legal requirements due to local or state law.

   f. Attending periodic training as required by their Inc. Business.

   g. Following local emergency-reporting procedures when there is an immediate threat of violence.

**5.2** Managers/Leaders are responsible for:

   a. Informing Human Resources and security about restraining orders and other protective court orders as they become known so that assistance can be offered and precautions taken at the worksite.

   b. Encouraging employees who show signs of stress, exhibit concerning signs of potential violence, express suicidal thoughts, or exhibit evidence of possible intimate partner/domestic violence to be evaluated through an Employee Assistance Program, a provider of their choice, a local medical department, or a domestic-violence community advocate.

   c. Documenting allegations of workplace violence in a timely fashion and reporting them to Human Resources and/or security personnel for investigation and action as soon as possible after they become aware of a concern.

**5.3** Individuals who are required to possess weapons during the normal course of their duties are expected to handle their weapons responsibly while covered by this policy. Examples include but are not limited to visiting law enforcement, military personnel, and employees who may be working with weapons in the course of program execution.

# 6.   REFERENCES

Standards of Conduct and Corrective Action Policy

## 7.    EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the BAE Systems, Inc. Senior Vice President, Human Resources and Administration (or designee).

3.2 **Covered Servicemember** means a current member of the armed forces, including a member of the National Guard or Reserves, who is undergoing medical treatment, recuperation, or therapy, or is otherwise in outpatient status, or is otherwise on the temporary disability retired list for a serious injury or illness; or a Covered Veteran who is undergoing medical treatment, recuperation, or therapy for a serious injury or illness.

3.3 **Covered Veteran** means an individual who was a member of the armed forces (including a member of the National Guard or Reserves), and was discharged or released under conditions other than dishonorable at any time during the five year period prior to the first date the eligible employee takes FMLA leave to care for the Covered Veteran.

3.4 **FMLA Leave** means a job-protected unpaid leave of 12 or 26 weeks, as appropriate, taken by an eligible employee for a qualifying reason under the Family and Medical Leave Act.

3.5 **Health Care Provider** means a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the state in which the doctor practices; podiatrists, dentists, clinical psychologists, optometrists, chiropractors (limited treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist) authorized to practice under state law and performing within the scope of their practice as defined by state law; nurse practitioners, nurse-midwives, clinical social workers and physician assistants authorized under state law and performing within the scope of their practice as defined by state law; Christian Science practitioners (may be required to submit to second or third certification through examination – not treatment – by a health care provider); any other health care provider from whom the employer or the employee's group health plan benefits manager will accept certification of the existence of a serious health condition to substantiate a claim for benefits; or a health care provider who practices in a country other than the United States and is authorized to practice in accordance with the laws of that country and is performing within the scope of his or her practice as defined under such law. For military caregiver leave (as defined below), a health care provider is defined at Section 825.310 of the FMLA regulations.

3.6 **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses.

3.7 **Leave Administrator** means the administrator designated by the applicable Inc. Business for FMLA and other similar state and local leaves.

3.8 **Next-of-Kin of a Covered Servicemember** means the nearest blood relative other than the Covered Servicemember's spouse, parent, son, or daughter in the following order of priority: blood relatives who have been granted legal custody of the Covered Servicemember by court decree or statutory provisions, siblings,

2



| | |
|---|---|
| **SUBJECT:** | **Family and Medical Leave of Absence** |
| **NUMBER:** | **141** |
| **REVISION:** | **Two** |
| **EFFECTIVE:** | **March 27, 2015** |

**BAE Systems, Inc.**
**Management Policy**

*Gerard J. DeMuro*

Gerard J. DeMuro

## 1.    POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses provide leave of absences to eligible employees for qualifying family and medical reasons in accordance with the Family and Medical Leave Act (FMLA) and its regulations for Inc. Businesses in the United States.

## 2.    PURPOSE AND SCOPE

It is the purpose of this policy is to define the provisions governing leaves of absence in compliance with the Family and Medical Leave Act of 1993, as amended. Leaves under this policy are referred to as "FMLA leaves." If a state or local law provides for similar or greater leave, Inc. Businesses will provide the leave most favorable to the employee. Additional leave entitlements and obligations when FMLA leave is either not available or exhausted also may be provided. Employees should consult the Company's other leave policies listed in the References section in this document.

This policy can be changed at any time by BAE Systems, Inc. in its sole discretion. It is neither intended to nor does it create any contractual relationship between an employee and an Inc. Business. Once printed or duplicated, this policy is not a controlled document. The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

## 3.    DEFINITIONS

**3.1    Covered Active Duty or Call to Covered Active Duty** means leave granted to a member of the Regular U.S. Armed Forces for duty during the deployment of the member with the armed forces to a foreign country, and in the case of a member of the reserve component of the armed forces, for duty during the deployment of the member with the armed forces to a foreign country under a federal call or order to active duty in support of a covered contingency operation.

1

grandparents, aunts and uncles, and first cousins – unless the Covered Servicemember has specifically designated in writing another blood relative as his or her nearest blood-relative for purposes of military caregiver leave under the FMLA. When no such designation is made and there are multiple family members with the same level of relationship to the Covered Servicemember, all such family members shall be considered the Covered Servicemember's next-of-kin and may take FMLA leave to provide care to the Covered Servicemember, either consecutively or simultaneously. When such designation has been made, the designated individual shall be deemed to be the Covered Servicemember's only next-of-kin.

3.9     **Outpatient Status** with respect to a Covered Servicemember, means the status of a member of the armed forces assigned to a military medical treatment facility as an outpatient or to a unit established for the purpose of providing command and control of members of the armed forces receiving medical care as outpatients.

3.10    **Parent** means the biological, adoptive, step or foster father or mother, or any other individual who stands or has stood in loco parentis to the employee. For the purposes of servicemember leave, a parent is a Covered Servicemember's biological, adoptive, step or foster father or mother, or any individual who stood in loco parentis to the Covered Servicemember. As used in this policy, the term "parent" does not include parents-in-law.

3.11    **Qualifying Exigency** is defined in detail in Section 825.126 of the FMLA regulations and includes: (1) short-notice deployment in which leave entitlement is limited to a maximum of seven calendar days per leave; (2) military events and related activities; (3) childcare and school activities; (4) financial and legal arrangements; (5) counseling; (6) rest and recuperation for up to a maximum of fifteen calendar days per leave; (7) post-deployment activities; (8) parental care; and additional activities as agreed upon by the employer and employee.

3.12    **Rolling Backward** is a method of measuring an eligible employee's annual 12 week FMLA leave entitlement.  It is a rolling 12-month period that is measured backward from the date an employee uses any FMLA leave.  For example, if an employee was entitled to 12 weeks of FMLA leave, and the employee had taken eight weeks of leave during the past twelve months, an additional four weeks of leave could be taken.  Another calculation method may be used if required by state or local law.

3.13    **Rolling Forward** is the method for measuring an eligible employee's 26 week FMLA entitlement to care for a Covered Servicemember.  It is a single rolling 12-month period that is measured from the first day that FMLA leave is taken and expires 12 months from that first day of leave.  Another calculation method may be used if required by state or local law.

**3.14** **Serious Health Condition** means an illness, injury, impairment, or physical or mental condition that involves either an overnight stay in a medical care facility or continuing treatment by a health-care provider for a condition that either prevents the employee from performing the functions of the employee's job or prevents the qualified family member from participating in school or other daily activities. Subject to certain conditions, the continuing treatment requirement may be met by a period of incapacity of more than three consecutive calendar days combined with at least two visits to a health-care provider or one visit and a regimen of continuing treatment, or incapacity due to pregnancy, or incapacity due to a chronic condition. Other conditions may meet the definition of continuing treatment.

**3.15** **Serious Injury or Illness** means, in the case of a current member of the armed forces (including a member of the National Guard or Reserves), an injury or illness that was incurred by the member in line of duty on active duty in the armed forces, or that existed before the beginning of the member's active duty and was aggravated by service in line of duty on active duty in the Armed Forces, and that may render the member medically unfit to perform the duties of the member's office, grade, rank, or rating. In the case of a Covered Veteran, serious injury or illness means a qualifying injury or illness that was incurred by the member in line of duty on active duty in the armed forces or that existed before the beginning of the Covered Veteran's active duty and was aggravated by service in line of duty on active duty in the armed forces and that manifested itself before or after the member became a veteran and is: (1) a continuation of a serious injury or illness that was incurred or aggravated when the Covered Veteran was a member of the armed forces and rendered the servicemember unable to perform the duties of the servicemember's office, grade, rank, or rating; or (2) a physical or mental condition for which the Covered Veteran has received a U.S. Department of Veterans Affairs Service-Related Disability Rating of 50 percent or greater, and such rating is based, in whole or in part, on the condition precipitating the need for military caregiver leave; or (3) a physical or mental condition that substantially impairs the Covered Veteran's ability to secure or follow a substantially gainful occupation by reason of a disability or disabilities related to military service, or would do so absent treatment; or (4) an injury, including a psychological injury, on the basis of which the Covered Veteran has been enrolled in the Department of Veterans Affairs Program of Comprehensive Assistance for Family Caregivers.

**3.16** **Son or Daughter,** for the purposes of birth or placement leave or family-care leave (as defined below), means a biological, adopted, or foster child, stepchild, legal ward, or child of a person standing in loco parentis who is either under age 18, or age 18 or older and "incapable of self-care because of a mental or physical disability." For the purposes of qualifying exigency leave (as defined below), a son or daughter means the employee's biological, adopted, or foster child, stepchild, legal ward, or child for whom the employee stood in local parentis and who is on covered active duty or call to covered active duty status and who is of

4

any age. For the purposes of military caregiver leave (as defined below), a son or daughter means the Covered Servicemember's biological, adopted, or foster child, stepchild, legal ward, or a child for whom the Covered Servicemember stood in loco parentis and who is of any age.

**3.17**   **Spouse** means the other person with whom an individual entered into marriage as defined or recognized under state law for purposes of marriage in the State in which the marriage was entered into or, in the case of a marriage entered into outside of any State, if the marriage is valid in the place where entered into and could have been entered into in at least one State.   This definition includes an individual in a same-sex or common law marriage that either: (1) was entered into in a State that recognizes such marriages; or (2) if entered into outside of any State, is valid in the place where entered into and could have been entered into in at least one State.

**3.18**   **Treatment** includes examination to determine if a serious health condition exists and evaluations of the condition. Treatment does *not* include routine physical examinations, eye examinations, or dental examinations.

**3.19**   **Veteran** has the meaning given the term in 38 U.S.C. Section 101.

## 4.   APPLICABILITY

This policy applies to employees of Inc. Businesses in the United States.   Non-United States based employees should follow local in-country laws and policies.   Violations of this policy are subject to disciplinary action, up to and including termination.

## 5.   REQUIREMENTS

**5.1**   **Eligibility.** An employee is eligible for FMLA leave if he or she has been employed by the Inc. Business for at least one year, has worked at least 1,250 hours during the previous 12 months.

**5.2**   **Leave Entitlement.**

a. An eligible employee is entitled to 12 workweeks of FMLA leave during a 12-month rolling backward period for:

- The birth of a son or daughter and to care for the newborn child; or for the placement with the employee of a son or daughter for adoption or foster care (called birth or placement leave), with the entitlement to this leave ending on the one year anniversary of such birth or placement.

- To care for the employee's spouse, son, daughter, or parent with a serious health condition (called "family care leave").

- Because of any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a military member on active duty or call to covered active duty, or has been notified of an impending call or order to covered active duty (called qualifying exigency leave).

- Because of a serious health condition that makes the employee unable to perform the functions of his or her position (called employee's own medical leave).

**b.** A leave of up to 26 weeks may be taken in a single 12-month rolling forward period by an eligible employee who is the spouse, son, daughter, parent or next-of-kin of a Covered Servicemember to care for the Covered Servicemember with a Serious Injury or Illness (called military caregiver leave). Military caregiver leave shall only be available during a single 12-month period, and when combined with other FMLA-qualifying leave may not exceed 26 weeks during a single 12-month period.

**5.3    Leave Computation.** Leave computation is affected by certain conditions including:

**a.** FMLA leave will run concurrently with the employee's use of any paid leave or time-off benefits (e.g., vacation, paid time off, sick time, personal holidays, etc.).

**b.** FMLA leave will run concurrently with the employee's total state and local leave entitlement if the reason for leave is also covered by a similar leave provided for by state or local laws.

**c.** FMLA leave will run concurrently with the employee's workers' compensation absence and/or receipt of workers' compensation insurance benefits if the reason for leave is due to a job-related injury or illness. Similarly, if the reason for an employee's leave is due to a short or long-term disability, the FMLA leave will run concurrently with the employee's absence during the period of disability and/or receipt of disability insurance benefits.

**d.** If a holiday occurs during a week the employee is on FMLA leave, the holiday is counted in the computation of the 12- or 26-week period. However, if an employee is using FMLA leave in increments of less than one week, the holiday will not count against the employee's FMLA entitlement unless the employee was otherwise scheduled and expected to work during the holiday.

**e.** If the organization in which the employee works is closed for one or more weeks, the closure time does not count against the employee's FMLA entitlement.

**5.4** **Use of Paid Time.** Use of paid leave time is governed by the following stipulations:

**a.** FMLA leave is unpaid leave.

**b.** Eligible employees are required to apply any accrued paid leave (e.g., vacation, paid time off, sick time, etc.) prior to going to an unpaid leave.

**c.** In cases where employees are receiving payments from a disability insurance plan or workers' compensation insurance, the requirement to apply paid leave is inapplicable.

**d.** The substitution of paid time for unpaid FMLA leave time does not extend the length of an FMLA leave, and the paid time will run concurrently with an employee's FMLA entitlement.

**5.5** **Employee Notice and Scheduling Requirements.** An employee in need of FMLA leave is required to meet the following notification and documentation requirements. Failure to meet these requirements may result in the delay or denial of FMLA leave.

**a.** **Foreseeable Leave**. With the exception of qualifying exigency leave, if the need for leave is foreseeable, the employee must provide the leave administrator with at least 30 calendar days' notice before FMLA leave is to begin. For qualifying exigency leave, if the need for leave is foreseeable, the employee shall provide such notice as soon as practicable, regardless of how far in advance such leave is foreseeable.

**b.** **Unforeseeable Leave**. If 30 days' notice is not practicable – due to reasons such as a lack of knowledge of approximately when leave will begin, circumstances surrounding the need for leave were not known, an unexpected change in circumstances, or a medical emergency – notice must be given as soon as practicable which, in most situations, will be considered the same day as or the next business day after the employee learns of the need for leave.

**c.** **Content of Notice**. When providing notice, the employee must provide sufficient information that will allow the Leave Administrator to reasonably determine whether the leave may qualify under FMLA. The employee must describe the reasons for the leave request and the anticipated timing and duration of the leave. Employees may do this by either requesting FMLA leave specifically or explaining the reasons for leave so as to allow the Leave

Administrator to determine whether the leave is FMLA-qualifying. For example, employees might explain that:

- A medical condition renders them unable to perform the functions of their job.

- They are pregnant or have been hospitalized overnight.

- They or a covered family member are under the continuing care of a health-care provider.

- The leave is due to a qualifying exigency cause by a covered military member being on covered active duty or called to covered active-duty status.

- That the condition involving a family member renders that family member unable to perform daily activities and/or that the family member is a Covered Servicemember with a serious injury or illness.

Calling in "sick" without providing the reasons for the needed leave will not be considered sufficient notice for FMLA leave under this policy. Employees must respond to the Inc. Business' questions to determine if absences are potentially FMLA-qualifying.

If employees fail to explain the reasons for FMLA leave, the leave may be denied. When employees seek leave due to FMLA-qualifying reasons for which the Inc. Business has previously provided FMLA-protected leave, they must specifically reference the qualifying reason for the leave or the need for FMLA leave.

d. **Providing Notice.** Employees must contact the Leave Administrator to request leave, absent unusual circumstances.

e. **Scheduling Planned Medical Treatment.** When planning medical treatment, employees must consult with their manager or Human Resources Business Partner and make a reasonable effort to schedule the treatment so as not to unduly disrupt operations, subject to the approval of the health-care provider.

f. **Intent to Return to Work**. The Leave Administrator may require employees on FMLA leave to notify their supervisors periodically of their status and intention to return to a regular work schedule.

g. **Fitness for Duty Certification**. Before employees may return to work from an employee's own leave, they may be required to obtain and present certification from their health-care provider that they are able to resume work. Employees will be informed of the need for such certification at the time that their FMLA Leave is designated by the Leave Administrator.

8

**5.6     Intermittent or Reduced Leave.** Intermittent or reduced leave is governed by the following:

   **a.**   Intermittent or reduced leave is permitted when medically necessary for the employee's own leave, family-care leave, qualifying exigency leave and military caregiver leave.

   **b.**   Intermittent or reduced leave is permitted in response to a planned medical treatment; however, the employee must make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the Inc. Business, subject to the approval of the health-care provider.

   **c.**   When taking approved intermittent or reduced family leave based on planned medical treatment, the employee may be required to transfer temporarily to an available alternative position for which the employee is qualified, as long as the position has equivalent pay and benefits and better accommodates the required recurring periods of leave than the employee's regular position. Such transfers must be in compliance with any applicable collective bargaining agreement and applicable law.

   **d.**   Intermittent leave cannot be taken for birth, adoption, or foster care purposes unless required by applicable state or local law.

   **e.**   A full-time employee who is temporarily moved to a part-time status due to his or her intermittent FMLA will continue to receive all full-time benefits which he or she had prior to taking the intermittent FMLA leave.

   **f.**   When a transferred employee no longer needs to continue on intermittent or reduced scheduled FMLA leave, the employee will be placed in the same or equivalent position as he or she had when the leave commenced.

**5.7     Notice of Eligibility and Designation of FMLA Leave.** Notice of eligibility and designation of FMLA leave is governed by the following:

The Leave Administrator will inform employees who are requesting leave whether they are eligible under FMLA. If an employee is eligible, he or she will be notified and any additional information required by the Leave Administrator will be specified. The employee will also receive notice of his or her rights and responsibilities under the FMLA. If an employee's leave request is not covered under the FMLA, the Leave Administrator will provide a reason for ineligibility.

The Leave Administrator will inform employees whether their leave will be designated as FMLA-protected and the amount of leave that may be considered as part of the leave entitlement. If the Leave Administrator determines that the leave is not FMLA-protected, the Leave Administrator will notify the employee.

**5.8**  **Certification Requirements**. Appropriate certification may be required of employees requesting FMLA leave for the employee's own leave, family care leave, qualifying exigency leave, or military caregiver leave. The Leave Administrator will notify the employee each time such certification is required and provide the employee with the appropriate certification form for completion. The following conditions also apply:

**a.**  If the FMLA leave is related to the employee's own leave or family-care leave, the employee must submit a medical certification form completed by the employee's or family member's health care provider, as applicable.

**b.**  If the FMLA leave is related to a qualifying exigency leave, the employee must submit a form signed by the employee substantiating that the need for leave qualifies as a "qualifying exigency." In addition, the first time an employee requests qualifying exigency leave, the Leave Administrator may require the employee to provide a copy of the military member's active duty orders or other documentation issued by the military to verify the covered active-duty or call to active duty status and the dates of such service.

**c.**  If the FMLA leave is military caregiver leave, the employee must submit either a medical certification form completed by an authorized health-care provider of the Covered Servicemember or invitational travel orders or invitational travel authorizations issued to any family member to join the Covered Servicemember at his or her bedside.

**d.**  All required certifications must be complete and sufficient. If a certification is incomplete or insufficient, the Leave Administrator will advise the employee, in writing, of what information is necessary to make the certification complete and sufficient. The employee will then have seven calendar days to cure any such deficiency, with the exception of certain situations in which it is not practicable despite the employee's good faith efforts. If the specified deficiencies are not remedied in the resubmitted certification, the employee's request for FMLA leave may be denied.

**e.**  For FMLA leave related to the employee's own leave or family-care leave, the employee may be required to obtain subsequent re-certifications every 30 days at a minimum, unless the period of incapacity specified on the initial certification form is more than 30 days. If medical certification indicates the minimum duration of the condition is more than 30 days, the Leave Administrator will wait until that minimum duration expires before requesting medical recertification. The Leave Administrator may request re-certification sooner if circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of absences, the severity of the condition, complications) or if an Inc. Business receives information that casts doubt upon the employee's stated reason for the absence. This applies to

both full-time and intermittent FMLA leaves. In all cases, the Leave Administrator may request re-certification of a medical condition every six months in connection with an employee's absence.

**5.9    Impact on Position and Employee Benefits.** Position and employee benefits of employees taking FMLA leave are governed by the following:

a.  When an employee returns to work following FMLA leave within the applicable 12- or 26-week reinstatement period, he or she will be restored to the same position held when the leave began, or restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

b.  Taking unpaid FMLA will not result in the loss of any employee benefits accrued prior to the date on which the leave began.

c.  Entitlement to benefits, other than group health benefits, during a period of FMLA leave will be administered in accordance with the provisions set forth in the applicable plan or policy.

d.  The Inc. Business will maintain the employee's coverage under the group health plan benefits throughout the duration of the FMLA leave under the same terms and conditions as if the employee was actively at work. If the employee elects to continue these benefits during the leave, the employee will be required to continue to make all premium payments that he or she would have had to make if actively employed. For an employee on Inc. Business-paid leave (i.e., continuing to receive vacation, sick, etc. pay via Inc. Business payroll), an employee's benefit premiums will continued to be deducted from his or her paychecks. An employee on unpaid FMLA leave who chooses to continue benefits coverage will be required to pay his or her portion of the cost of those benefits during the leave. If an employee chooses not to retain group health plan coverage during FMLA leave, the employee is entitled to be reinstated to the plan upon return from leave under the same terms as prior to taking leave, to the extent that the Inc. Business continues to maintain such plan.

e.  If the employee fails to return to work at the conclusion of the leave, the Inc. Business may require the employee to pay the full cost of health care coverage during any period of FMLA leave. However, the employee may not be asked to reimburse the Inc. Business if the employee fails to return to work because of the continuation, recurrence, or onset of a serious health condition. This is subject to medical certification.

**5.10   Questions and/or Complaints about FMLA Leave.** Questions and/or complaints about FMLA leave will be addressed by the Leave Administrator. The Inc. Businesses are committed to complying with the FMLA and shall interpret

and apply this policy whenever necessary in a manner consistent with the FMLA. The FMLA makes it unlawful for employers to:

**a.** Interfere with, restrain, or deny the exercise of any right provided under FMLA; or

**b.** Discharge or discriminate against any person for opposing any practice made unlawful by FMLA or involvement in any proceeding under or relating to FMLA.

If employees believe their FMLA rights have been violated, they should contact the BAE Systems, Inc. Resource Center immediately. The Inc. Business will investigate any FMLA complaints and take prompt and appropriate remedial action to address and/or remedy any FMLA violation. Employees also may file FMLA complaints with the U.S. Department of Labor or may bring private lawsuits alleging FMLA violations.

## 6.    REFERENCES

Supplemental Family and Medical Leave Policy
Miscellaneous Leave Policy
Inc. Businesses Paid Time Off Policy

## 7.    EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the BAE Systems, Inc. Senior Vice President, Human Resources and Administration (or designee).

12



**BAE Systems, Inc.**
**Management Policy**

| | |
|---|---|
| **SUBJECT:** | Work Schedules |
| **NUMBER:** | 135 |
| **REVISION:** | Two |
| **EFFECTIVE:** | July 1, 2012 |

*Linda P. Hudson*
Linda P. Hudson

## 1.     POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses establish and maintain work schedules that adhere to federal and state laws governing the assignment of work schedules and related pay considerations, assist management in meeting work commitments, and ensure that employees have a clear understanding of assigned work schedules and related compensation.

## 2.     PURPOSE AND SCOPE

The purpose of this policy is to set forth the criteria for the establishment of work schedules. Inc. Businesses utilize a variety of work schedules based on work locations, business practices, and/or customer requirements. This policy can be changed at any time by BAE Systems, Inc. at its sole discretion. It is neither intended to, nor does it create, any contractual relationship between an employee and an Inc. Business. Once printed or duplicated, this policy is not a controlled document. The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

## 3.     DEFINITIONS

3.1     The following terms, which may be referred to within this policy, are defined under a separate policy, as indicated below:

    a. **Call-Back** - Pay Practices Policy

    b. **Call-In** - Pay Practices Policy

    c. **Exempt Employee** - Employee Classification Policy

    d. **Non-Exempt Employee** - Employee Classification Policy

    e. **On-Call** - Pay Practices Policy

1

  **f. Overtime** - Pay Practices Policy

  **g. Report-In** - Pay Practices Policy

**3.5** **Compensatory Time** means time off granted to exempt employees in recognition of additional time worked beyond the employee's work schedule.

**3.3** **Compressed Work Schedule** means a longer daily work shift with corresponding fewer scheduled workdays per workweek and is typically established to provide 24-hour and/or seven-day coverage.

**3.4** **Flexible Work Schedule** means a work schedule that enables regular employees to vary arrival and departure times within limits, as long as it does not adversely impact customer needs or the local work environment and is pre-approved by management.

**3.5** **Full-Time Schedule** means a work schedule in which the employee is regularly scheduled to work 40 or more hours per workweek.

**3.6** **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses. For purposes of this policy, this term shall refer to Inc. Businesses located in the United States, unless otherwise specified.

**3.7** **Meal Period** means a period set aside for an employee to eat a regular meal. A meal period generally lasts between 30 minutes and one hour.

**3.8** **Non-Standard Work Schedule** means a work schedule that occurs on a regular, repetitive basis that does not conform to an established standard work schedule (e.g. a flexible work schedule; a compressed work schedule, or a part-time schedule).

**3.9** **Part-Time Schedule** means a work schedule in which the employee is regularly scheduled to work less than 40 hours per workweek.

**3.10** **Breaks** means non-work periods of 20 minutes or less that are considered part of the work shift.

**3.11** **Standard Work Schedule** means work schedules that are defined by the Inc. Businesses as standard, such as 5/40 (40 hours in five days) or 9/80 (80 hours in nine days).

**3.12** **Workday** means a day in which an employee is regularly scheduled to work.

**3.13** **Workweek** means a fixed period of seven consecutive 24-hour days, beginning at the same time on the same calendar-day each week and ending at the same

2

time on the same calendar-day each week and covering 168 consecutive hours, as determined by the Inc. Businesses.

**3.14    Work Schedule** means the agreed upon schedule (days and times) between the employee and the manager. This is the schedule the employee will work except in special circumstances.

**3.15    Work Shift** means the hours during which the employee is regularly scheduled to work on each workday.


## 4.    APPLICABILITY

This policy applies to all Inc. Businesses. Non-United States based employees should follow local in-country laws and policies. For those employees subject to a collective bargaining agreement (CBA), if there is any conflict between the provisions of this policy and the terms of the applicable CBA, the CBA will govern with the exception of those provisions mandated by law.


## 5.    REQUIREMENTS

**5.1    Work Schedules**. Each employee will be assigned a work schedule as established by his or her manager or supervisor to meet the needs of the business. Depending on the location, business practices and customer requirements, the employee may be assigned a standard or non-standard work schedule. To the extent possible, non-standard work schedules should provide for consistent and predictable work shifts.

   **a. Adherence to Work Schedule**. Employees are responsible for adhering to assigned and/or agreed upon work schedules and notifying their manager or supervisor as soon as possible when changes or deviations from regular work schedules are needed.

   **b. Overtime.** Non-exempt employees may not work outside their established work schedules without prior management approval, including but not limited to periods before start time and after end time that result in overtime accrual.

   **c. Compensatory Time.** Compensatory time for non-exempt employees is prohibited by law and is not allowed by the Inc. Businesses.  For exempt workers, the Company recognizes that there will be situations where extra effort in excess of the standard workweek will be required. In those circumstances and in accordance with the business unit's labor-charging practices, managers may consider allowing exempt employees compensatory time, called Exempt Time Off (ETO), in recognition of additional time worked beyond the employee's regular work schedule.  A sector or business unit may

3

choose, but is not required, to implement a formal ETO program (see KnowledgeBase for listing of Sectors or business units that participate in formal ETO programs)  ETO programs that expand beyond a pay period must:

- Be reviewed by Sector Legal counsel and approved in advance by Sector HR and Finance Vice Presidents and BAE Systems, Inc. SVPs of HR and Finance.
- Follow an established time and labor recording procedure (see applicable KnowledgeBase content).

**d.  Changes to Work Schedule.** Work schedules may be changed by the Inc. Businesses at any time to meet scheduling or other changing business needs. When appropriate, changes will be announced as far in advance as possible. There may be times, however, where advance notice is not possible such as when a call-in, call-back or report-in occurs.

**e.  Employee Requests.** Inc. Businesses recognize that there may be times when an employee would prefer to work a different schedule due to his or her personal situation. When evaluating an employee's request for a change in his or her work schedule, a manager may take into consideration the needs of the business, the job responsibilities of the requesting employee, the extent of interaction with others, the work schedules requested or being worked by other employees in the unit, the requesting employee's length of service, the extent to which the requesting employee has demonstrated responsibility and dependability, and other factors as applicable to the type of work schedule requested and available.

**f.   Make-Up Time.** Non-exempt employees may make up missed time from work instead of using vacation or taking leave without pay if and only if the time that is made up is within the same standard workweek. The employee must first obtain approval from his or her supervisor to work make-up time.  Make-up time may be accomplished by the employee by working extra time before or after their normally scheduled workday. Working through a Break or Meal Period is not permitted in those states where such periods are prescribed by law.  For those non-exempt employees in states which provide for daily overtime, additional requirements, such as limits on the amount of make-up time per day and the need for signed written requests forms, may apply.

**5.2   Work Shifts.** Inc. Businesses utilize a variety of work shifts based on work locations, business needs and/or customer requirements. Managers or supervisors will set work shifts that meet the business needs and adhere to Company requirements.

**a.** When establishing a work shift for a non-exempt employee, the manager must ensure that time for certain work-related activities—such as mandatory training, informational meetings, and the application and removal of protective garments or equipment, as well as time for non-work-related activities such as breaks and meal periods— are considered.

**b.** Non-exempt employees may not begin to work before their established start time or after their established end time without manager approval.

## 5.3   Breaks and Meal Periods

**a.** Employees will be provided with reasonable breaks and meal periods during the workday depending on the duration of their work shift and business requirements, in accordance with applicable state and local law.

**b.** In general, breaks may not be combined or used as a substitute for meal periods or to make-up lost time, unless otherwise permitted by applicable law. Similarly, scheduled breaks must be taken by non-exempt employees.

**c.** Meal periods may not be combined or used at the beginning or end of a work shift unless permitted by law and prior approval has been granted by Human Resources.

**d.** Employees must be relieved of all work duties during a meal period. If approved by local management and permitted by state law, non-exempt employees may be allowed to eat while performing their job; in such cases, the time working while eating would be considered work time.

**e.** Inc. Businesses recognize the importance of supporting working mothers who wish to express breast milk for their nursing children. A lactating employee may, at her discretion, take a reasonable amount of break time each day to express milk for her child for up to one year after the child's birth. To the extent possible, non-exempt employees should schedule these breaks to coincide with the employee's other breaks or meal periods. If an employee is subject to a state or local law that provides for break time beyond one year after the child's birth, the state or local law shall apply. Nursing Mothers will be provided with a place, other than a bathroom, that is near the employee's work area to express breast milk. The location will be shielded from view and free from intrusion from coworkers and the public. Some facilities will have designated rooms for this purpose; others will make use of visiting or vacant offices.

**f.** Managers must seek advice from Human Resources before changing any established breaks or meal periods.

5

## 6.   REFERENCES

Pay Practices Policy
Time Collection Policy
Employee Classification Policy


## 7.   EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the BAE Systems, Inc. Senior Vice President, Human Resources and Administration (or designee).

**BAE SYSTEMS**
INSPIRED WORK

**VIA ELECTRONIC MAIL**

February 14, 2017

Ms. Emily Mauga
Honolulu Local Office
300 Ala Moana Blvd
Room 7-127
Honolulu, HI 96850

Dear Ms. Mauga:

In an effort to bring resolution to the Charge of Discrimination brought by Mr. Chester Staples ("Mr. Staples"), BAE Systems Hawaii Shipyards Inc. (the "Company" or "BAE HSY") would like to submit supplemental information to the Company's Position Statement dated September 22, 2016.[1]

During the regularly scheduled bi-monthly Training Meeting held on January 9, 2017 to assess employees who may be eligible for promotion based on their demonstrated skills and abilities, it was determined that Mr. Staples possessed the minimum requirements for a Journeyperson Welder. Mr. Staples was therefore promoted. The effective date of Mr. Staples promotion was January 2, 2017.

Mr. Staples was recommended for promotion by Craft Foreperson, Leander Knox and Craft Manager, Brian Adams. His promotion was approved by Director of Operations, Frank Brooks and Procurement Manager, Rhonda Carvalho. The demographic information for the assessors and approvers of Mr. Staples promotion to Journeyperson Welder is as follows:

| Name | Title | Race | Age |
|------|-------|------|-----|
| Leander Knox | Craft Foreperson | Black/African American | 27.7 |
| Brian Adams | Craft Manager | White | 51.5 |
| Frank Brooks | Director of Operations | Black/African American | 55.2 |
| Rhonda Carvalho | Manager of Procurement | Multiple Ethnicities | 55.3 |

[1] This information, including any and all attached exhibits, is regarded by the Company as confidential business information. It has been provided to the EEOC solely and exclusively for the purposes of resolving the above-referenced matter. The Company requests that this information not be distributed or disseminated to any individuals or entities, except as is necessary to investigate the above-referenced matter, as is necessary to resolve the above-referenced matter or as is permitted by statute, case law or administrative regulation. The Company submits this information at the request of the EEOC. It is based solely upon the information that the Company is aware of at the present time. The Company reserves the right to further amend or supplement such information, if necessary, at any time in the future. Under no circumstances does the Company concede the admissibility of this information, or of any of the facts or information contained herein, in connection with any future proceeding before the EEOC, any other administrative agency or in court.

1



INSPIRED WORK

This information demonstrates there is no evidence of Mr. Staples being discriminated against nor is there evidence of Mr. Staples being retaliated against. Five (5) of the six (6) individuals who supervise Mr. Staples are diverse, with two (2) of the six (6) being African American. Three (3) of the four (4) managers who approved Mr. Staples promotion to Journeyperson were diverse.[2] Three (3) of the six (6) individuals who supervise Mr. Staples are over age 50. Three (3) of the four (4) managers who approved his promotion are over the age of 50. These types of demographics, coupled with the fact that Mr. Staples was promoted, cut against Mr. Staples claims of discrimination and retaliation.

The additional information the Company has provided in this matter again confirms that Mr. Staples has not experienced any retaliation from any members of the management team. Rather, the Company offered and provided Mr. Staples with specialized training and additional feedback so that he could improve his performance. The Company requests that the Commission enter a finding of no probable cause and dismiss this Charge.

The Company intends to continue to cooperate, to the greatest extent possible, during the course of this investigation. Consequently, if you should have any further questions regarding the Company's position in this case, please do not hesitate to contact me at 757-494-4795.

Sincerely,

Amanda V. Burns
Director, HR III

Enclosures

---

[2] Note again that Director of Operation Frank Brooks is an African-American male who is age 54. Mr. Brooks was hired on or around December 30, 2013 at age 52. Reporting to Mr. Brooks is Craft Manager Brian Adams (White). Mr. Adams is age 51. He was hired on or around June, 2, 2015. Such facts further demonstrate that the Company does not discriminate on the basis of race or age.

2

# EXHIBIT 1

**BAE SYSTEMS**

BAE Systems, Inc.
Management Policy

| SUBJECT: | Equal Employment Opportunity, Anti-Harassment & Affirmative Action |
|---|---|
| NUMBER: | 101 |
| REVISION: | Ten |
| EFFECTIVE: | April 1, 2016 |

Gerard J. DeMuro

## 1.   POLICY

It is the policy of BAE Systems, Inc. that all Inc. Businesses be equal opportunity employers and comply with all applicable federal, state and local anti-discrimination laws, orders, directives and regulations.  As U.S. Government federal contractors, Inc. Businesses are required to maintain affirmative action programs in compliance with Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, as amended, and Section 402 of the Vietnam Era Veteran's Readjustment Assistance Act of 1974, as amended.

Inc. Businesses administer all employment decisions on a nondiscriminatory basis without regard to an applicant's or employee's race, color, religion, sex, gender, national origin, ancestry, age, status as a qualified individual with a disability, genetic information, pregnancy status, medical condition, marital status, sexual orientation, status as a U.S. veteran, gender identity and expression, or any other characteristic protected by applicable federal, state, or local law.  In addition, Inc. Businesses prohibit Harassment on the basis of these protected characteristics.  This policy extends to all terms, conditions, and privileges of employment including but not limited to: job advertisement; recruitment and hiring; promotion; demotion; transfers; layoff and termination; compensation; benefits; education and training; reasonable accommodation due to disability or religion; work assignments; social and recreational programs, and other working conditions.

All employees are responsible, in accordance with this policy and the BAE Systems Code of Conduct, for promoting a work environment that is free of discrimination and Harassment, supports diversity and inclusion, and encourages dignity and respect for others.  Inc. Businesses do not tolerate unlawful discrimination or Harassment by any employee.  Overall responsibility for the establishment and enforcement of this policy is vested with the President and Chief Executive Officer of BAE Systems, Inc.

2.    **PURPOSE AND SCOPE**

The purpose of this policy is to identify and define the Company's policy regarding Equal Employment Opportunity and Affirmative Action. This policy can be changed at any time by BAE Systems, Inc. in its sole discretion. It is neither intended to, nor does it create, any contractual relationship between an employee and an Inc. Business. Once printed or duplicated this policy is not a controlled document. The most up-to-date version of the policy exists in electronic form on the Corporate Policy web site.

3.    **DEFINITIONS**

3.1    **Color** means an individual's pigmentation, complexion, or skin shade or tone. This could include lightness or darkness of the skin and discrimination based on color can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity.

3.2    **Gender Expression** means any or all of the external characteristics and behaviors that are socially defined as either masculine or feminine, such as dress, grooming, mannerisms, speech patterns, and social interactions, whether or not stereotypically associated with the person's designated sex at birth.

3.3    **Gender Identity** means a person's innate, deeply felt psychological identification as male or female, which may or may not correspond to the person's body or designated sex at birth.

3.4    **Harassment** means unwelcome conduct that intimidates, threatens, or coerces a person based on employee's race, color, religion, sex, gender, national origin, ancestry, age, status as a qualified individual with a disability, genetic information, pregnancy status, medical condition, marital status, sexual orientation, status as a U.S. veteran, gender identity and expression, or any other characteristic protected by applicable federal, state, or local law that: (1) has the purpose or effect of creating an intimidating, hostile, or offensive work environment; (2) has the purpose or effect of unreasonably interfering with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities.

3.5    **Inc. Businesses** means BAE Systems, Inc. and its owned and/or managed businesses. For purposes of this policy, this term shall refer to Inc. Businesses located in the United States, unless otherwise specified.

3.6    **National Origin** means the place of origin of an individual or his or her ancestors, or because an individual has the physical, cultural, or linguistic characteristics of a national origin group.

3.7    **Qualified Individual with a Disability** means an individual with a physical or mental impairment that substantially limits one or more aspects of the individual's

2

major life activities, and who, with or without reasonable accommodation, can perform the essential functions of a position that the individual holds or has applied for.   This definition includes individuals who have a record of such impairment or who are regarded as having such impairment.

3.8     **Race** means belonging to or being perceived as belonging to a particular grouping of persons related by common ancestry or heredity. Discrimination based on race generally encompasses discrimination due to a person's racial or ethnic ancestry; physical characteristics such as a person's color, hair, facial features, height and weight; race-linked illnesses such as sickle cell anemia; and cultural characteristics such as a person's name, cultural dress and grooming practices, or accent or manner of speech.

3.9     **Religion** means an individual's beliefs, observances, or practices concerning the ultimate ideas about life, purpose, and death, as well as the morals or standards of belief as to what is right and wrong that are held with the strength of traditional religious views.

3.10    **Sexual Harassment** means unwelcome or unwanted conduct of a sexual nature that: (1) creates an intimidating, hostile or offensive work environment; (2) influences or tends to affect the individual's career, compensation, working conditions, responsibilities, duties, or other aspects of the employment relationship; or (3) creates an explicit or implicit term or condition of an individual's employment (e.g., where an employee's submission or rejection of this conduct affects decisions regarding hiring, evaluation, promotion, or some other aspects of employment). This includes gender-based Harassment of a person of the same or opposite gender. The victim can be anyone affected by the conduct, not just the individual at whom the offensive conduct is directed.

3.11    **Sexual Orientation** means having or being perceived as having an orientation toward heterosexuality, bisexuality, or homosexuality.

3.12    **Veteran Status** means a classification of past U.S. Military service, which may include discharge status and protected veteran status under applicable non-discrimination and affirmative action provisions (i.e., disabled veteran, recently separated veteran, active duty wartime or campaign badge veteran, an Armed Forces service medal veteran, or any other veteran status protected by applicable law).

3

4.      **APPLICABILITY**

This policy applies to all Inc. Businesses.  Employees of Inc. Businesses who are U.S. citizens and work in a foreign country are specifically covered by this policy (unless application of this policy would violate the law of the foreign country in which the workplace is located).  Subject to the above exception, non-United States-based businesses should follow local in-country laws and policies.

For those employees subject to a collective bargaining agreement (CBA), if there is a conflict between this policy and the applicable CBA, the CBA will govern with the exception of those provisions mandated by law.

Inc. Businesses will communicate the requirements of this policy to outside firms responsible for providing temporary workers and employment candidates to the Inc. Businesses.  This policy also applies to contractors, vendors, and non-employees while performing work for or on behalf of Inc. Businesses. The policy applies to any Harassment that occurs during employment or application for employment regardless of whether it occurs on the premises of an Inc. Business workplace or at a work-related setting, such as business trips, customer sites, or Company social events and functions.

5.      **EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION PRACTICES**

5.1     The Company is committed to equal employment opportunity, which means that all applicants and employees have access to employment and advancement opportunities on the basis of qualifications, performance, and other job-related factors, without regard to their membership in a protected class.  To this end, the Company is committed to taking reasonable steps to prevent unlawful discrimination from occurring.

5.2     The Company is committed to providing a reasonable accommodation to employees and applicants for employment in order to assure that individuals with disabilities enjoy full access to equal employment opportunity.  Inc. Businesses will engage in an interactive dialogue with employees who request reasonable accommodations due to their disability.   Inc. Businesses shall provide a reasonable accommodation to such employee and/or applicant unless the accommodation would result in an undue hardship to the employer.[1]   The applicable Inc. Business is responsible for determining the most appropriate accommodations to be made, if any.

---

[1]      For example, if a pregnant employee requests an accommodation for a disability caused or contributed to by the pregnancy, the employer is to explore reasonable accommodations, including leave, with the pregnant employee, and will endeavor to provide a reasonable accommodation unless doing so would impose an undue hardship on the employer. In determining undue hardship, consideration is given to the employer's size, financial resources, and the needs of the business.

4

5.3     The Company also is committed to providing reasonable accommodations to employees and applicants due to their religion. Inc. Businesses will engage in an interactive dialogue with employees who request reasonable accommodations because of their religious beliefs. Inc. Businesses shall provide a reasonable accommodation to such employee and/or applicant unless the accommodation would result in an undue hardship to the employer.[2] The applicable Inc. Business is responsible for determining the most appropriate accommodations to be made, if any.

5.4     Inc. Businesses shall not refuse to hire or terminate an individual because of his or her citizenship or because of the individual's national origin. Further, in verifying or re-verifying an individual's eligibility to work in the United States (e.g., through the E-Verify process and form I-9), Inc. Businesses shall not treat an employee or candidate for employment differently because of his or her citizenship or national origin. Notwithstanding any of the foregoing, when required or permitted by applicable law, regulation, or other U.S. Governmental directive (e.g., to meet ITAR compliance or security clearance requirements), Inc. Businesses shall conduct a separate and discrete review of any existing employee's or new hire candidate's eligibility to meet such position requirements, including where applicable his or her citizenship or national origin. Failure to meet such eligibility requirements may preclude an individual from being hired or in the case of an existing employee, may result in reassignment or termination.

5.5     The Company will not discharge or in any other manner discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions cannot disclose the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is: (a) in response to a formal complaint or charge; (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the Company; or (c) consistent with the Company's legal duty to furnish information.

5.6     The Company is committed to complying with its affirmative action obligations, as required by applicable law, including by taking positive actions and making good-faith efforts to ensure equal employment opportunities without regard to race, color, religion, sex, national origin, disability or status as a protected veteran. The Company's commitment to affirmative action in this regard does not require or permit any quota systems

5.7     Implementation of this policy, including the development and management of the Inc. Businesses' affirmative action programs, shall be the responsibility of the Inc. SVP - Human Resources & Administration (or designee).

---

[2]     In determining undue hardship, consideration is given to the employer's size, financial resources, and the needs of the business.

6.    **HARASSMENT**

6.1    Any type of Harassment or Sexual Harassment, whether engaged in by fellow employees, supervisors, or non-employees with whom an employee or applicant comes into contact during the course of employment (e.g., customers, vendors, suppliers, etc.) or application for employment, is contrary to this policy and will not be tolerated.

6.2    Examples of harassing conduct that violate this policy and will not be tolerated include, but are not limited to:

   **a.** Verbal or physical contact related to a person's protected class (e.g., epithets, belittling jokes, slurs or negative stereotyping)

   **b.** Threatening, intimidating, or hostile acts that relate to a person's protected class

   **c.** Display or circulation in the workplace of written or graphic material that demeans or shows hostility or aversion toward an individual or group because of their protected class

   **d.** "Jokes," "pranks" or other forms of "humor" that are demeaning and/or hostile with regard to a person's protected class

6.3    Examples of Sexual Harassment that violate this policy and will not be tolerated include, but are not limited to:

   **a.** Unwanted sexual advances, including sexual flirting and propositions

   **b.** Direct or implied requests for sexual favors

   **c.** Verbal, nonverbal, or written communications of a sexual nature (such as sexual innuendo and language); suggestive or lewd comments; comments about an individual's dress or physical appearance; gestures; leering; sexually oriented jokes or teasing; or using sexually degrading words to describe an individual

   **d.** Display of visual objects, images, pictures, or printed matter of a sexual nature, such as sexually suggestive or pornographic pictures, videos, cartoons or posters

   **e.** Unwanted physical contact or conduct of any kind, including touching, patting, pinching, purposefully brushing against, assaulting, impeding, or blocking movements

6.4   Harassment and Sexual Harassment includes any of the above types of behaviors initiated using electronic media, including but not limited to blogs, text messages, e-mails, social networking, message boards, and/or instant messaging. Further, statements or actions need not be intended to be offensive to be in violation of this policy.

## 7.   PERSONAL RELATIONSHIPS IN THE WORKPLACE

Personal relationships, such as dating, romantic, or sexual, between employees in the workplace must be carefully managed to ensure the effective operation of the workplace. The following considerations apply:

7.1   The relationships must not create an uncomfortable work environment for others.

7.2   Neither of the employees may have a direct supervisory, disciplinary, or evaluative responsibility with respect to the other employee.

7.3   Any employee with potential control or influence over the terms and conditions of employment for someone they are romantically or sexually involved with must disclose this relationship to Human Resources and/or their management chain immediately. Failure to do so is a serious violation.

7.4   Any employee who has been involved in a romantic or sexual relationship with another employee and who believes that he or she has been adversely affected by such a relationship, notwithstanding its disclosure, must make his or her views about the matter known to management and/or Human Resources.

7.5   This policy shall apply without regard to gender and without regard to the sexual orientations of the participants in a relationship described above.

## 8.   REPORTING AND RESPONDING TO CONCERNS

8.1   Any individual who experiences or witnesses what he or she perceives to be discrimination or Harassment in violation of this policy is required to immediately report the alleged act to one or more of the following:

a. His/her immediate supervisor, supervisor's manager, or any member of management;

b. A Human Resources Department representative; and/or

c. A business conduct (ethics) officer or the BAE Systems, Inc. Ethics Helpline.

7

8.2   If the alleged perpetrator is the employee's supervisor, the employee should direct his or her complaint to any Human Resources Department representative or business conduct (ethics) officer.  Human Resources Department employees with personal concerns regarding Harassment or discrimination should report those concerns to the BAE Systems, Inc. Ethics Helpline, or to line management.

8.3   To the extent practicable, the investigation will be conducted in a manner so as to protect the confidentiality of all individuals involved.  In certain cases, the Inc. Business may be able to address and remedy concerns without revealing who brought the complaint.  In other situations, however, it may be necessary to disclose the complainant's identity to fully investigate the matter or allow the accused to respond to the allegations against him or her.

8.4   All allegations of Harassment or discrimination will be promptly reviewed by the Human Resources Department, and if necessary, an investigation will be conducted in a prompt, thorough, and impartial manner.  If the preliminary inquiry indicates that any applicable laws and/or regulations may have been violated, then the investigator shall promptly consult the cognizant Legal Department office.

8.5   The appropriate Inc. Business shall take corrective action, up to and including termination, against any employee violating this policy.

8.6   Anyone who files a complaint pursuant to this policy in which he or she knowingly makes false allegations of fact shall be in violation of this policy, and may be subject to corrective action, up to and including termination of employment.


## 9.   RETALIATION

9.1   The Company strictly prohibits any form of retaliation (e.g., Harassment, intimidation, threats, coercion, discrimination, etc.) by an Inc. Business against an applicant or employee who in good faith makes or files a complaint; raises a concern; opposes any unlawful act or practice; provides information, or otherwise assists in an investigation, compliance evaluation, hearing, other proceeding or any other activity; regarding any conduct that he or she has a reasonable objective belief to be in violation of the Code of Conduct, Company policies, or as a protected right by applicable laws, rules or regulations.

9.2   No Inc. Business may engage in any retaliation against an applicant or employee even if his or her complaints are proven unfounded by an investigation, unless the applicant or employee knowingly made a false allegation, provided false or misleading information in the course of an investigation, or otherwise acted in bad faith.  Applicants and employees have an obligation to participate in good faith in any internal investigation of retaliation.

9.3   Any applicant or employee who believes he or she has been retaliated against must report such belief to any of the individuals listed in Section 8.1 immediately. Inc. Businesses shall take all complaints of retaliation very seriously. All such complaints will be reviewed promptly and, where appropriate, investigated. Anyone found to have intentionally engaged in retaliation shall be subjected to immediate corrective action, up to and including termination of employment.

## 10.   RESPONSIBILITIES

10.1   All managers and supervisors are responsible for:

a.   Immediately informing their local Human Resources representative of any observations or complaints of discrimination or Harassment;

b.   Ensuring that their employees are aware that discrimination and Harassment, in any form, is prohibited, and that any perceived incidents of discrimination or Harassment are to be reported immediately; and

c.   Informing employees that any reported discrimination or Harassment will be promptly investigated and appropriate disciplinary action will be taken, up to and including termination of employment.

10.2   Human Resources is responsible for:

a.   Actively participating in and/or taking the lead in resolving any complaint and ensuring that appropriate corrective action is taken; and

b.   Leading investigations and ensuring that complaints are thoroughly resolved.

## 11.   REFERENCES

EEO is the Law
EEO is the Law Supplement

## 12.   EXCEPTIONS

BAE Systems, Inc. has the sole and exclusive authority to interpret each policy.

Exceptions to this policy require the prior written approval of the President & CEO of BAE Systems, Inc. and the Inc. SVP, Human Resources & Administration.

# EXHIBIT 2

BAE SYSTEMS HAWAII SHIPYARDS
AND
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO, HAWAII FEDERAL and AMALGAMATED LOCAL
LODGE 1998
AND
THE INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON
SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS,
AFL-CIO, AND ITS LOCAL LODGE 627
OCTOBER 1, 2012 TO SEPTEMBER 30, 2015

ARTICLE 3. NON-DISCRIMINATION, RECOGNITION, UNION
SECURITY AND HIRING
3.1 Non-Discrimination:
The Employer and Joint Representative agree that there will
be no discrimination in employment because of race, creed,
color, national origin, union membership, age, sex, handicap,
marital status, sexual orientation, or arrest and court record,
as defined by Federal and State Laws. Nor shall there be
any discrimination of disabled veterans or veterans of the
Vietnam era. In referring to Employees in this Agreement,
the masculine gender is used for convenience only and shall
refer both to males and females. Compliance with State and/
or federal laws shall not be considered discrimination under
this sub-section.



**BAE SYSTEMS**
INSPIRED WORK

# 2015 BAE SYSTEMS CODE OF CONDUCT

I acknowledge and confirm that I have received a copy of the BAE Systems Code of Conduct (Version 3). I have read this document and agree that while in the employment of BAE Systems I will conduct myself in accordance with BAE Systems Code of Conduct.

_Chtr L. Stph_

(Signature)

_Chstol A Staples_

(Printed Name)

_3-2-15_

(Date)

_C0473_

(Employee ID Number)



Hawaii Shipyards

# BAE Systems Policy Acknowledgment

I acknowledge and confirm that I have received a full copy of the two (2) BAE Systems policies listed below:

1. Standards of Conduct and Corrective Action
   Number 100, Revision Two, Effective 12/19/2011

2. Prohibition Against Harassment and Sexual Harassment
   Number 102, Revision Five, Effective 9/1/2011

By signing below, I acknowledge that I have read and understand both policies. I agree that as an employee of BAE Systems I will conduct myself in accordance with both policies. I further understand that any employee who violates these policies will be subject to corrective action, up to and including termination.

Employee Name: _Chester A. Staples_     EmpID: _40473_

Employee Signature: _Chester A. Staples_     Date: _1-27-15_



RECEIVED JAN 29 2014 By_____



**Hawaii Shipyards**

# Prohibition Against Harassment and Sexual Harassment
## Acknowledgement and Receipt of Policy

Before signing the acknowledgement below, I verify that I have received a copy of the Prohibition Again Harassment and Sexual Harassment policy (No. 102, Rev, 5). I have read, reviewed and understand the policy. Should I have any questions about this policy, it is my responsibility to contact my supervisor and/or Human Resources.

I understand that as a BAE Systems Hawaii Shipyards employee, it is my responsibility to follow the Prohibition Against Harassment and Sexual Harassment policy and abide by its provisions.

Employee Name: _Chester A Taylor_   EmpID: _40473_

Employee Signature: _Chester A. Taylor_   Date: _2-27-13_

# BAE SYSTEMS

### Hawaii Shipyards

## NON-DISCRIMINATION/HARASSMENT POLICY

I.    SCOPE: This policy applies to all employees of all divisions of BAE Systems Hawaii Shipyards (the "Company").

II.    POLICY: The Company is committed to providing a work environment free of unlawful discrimination or harassment. The Company maintains a strict policy prohibiting discrimination, sexual harassment or harassment based on race, sex, religious creed, color, national origin, ancestry, handicap, sexual orientation, medical condition, mental disability, physical disability (including persons infected with the HIV virus or persons with AIDS), marital status, age, or any other status protected by federal, state, or local law, ordinance or regulation. This policy applies to all persons employed by the Company and prohibits discrimination or harassment by any other employee, including supervisors and co-workers. Discrimination or harassment in any form, including termination, denial of promotion, verbal, physical and visual conduct, threats, demands and retaliation, is prohibited. Violation of this policy will result in discipline, which may include suspension without pay or discharge, depending on the seriousness of the violation.

III.    DISCRIMINATION/HARASSMENT DEFINED:
Discrimination is disparate treatment of an individual based in whole or part on the individual's sex, race, ancestry, handicap, sexual orientation, mental condition, marital status, age, or other protected status. Discrimination includes, but is not limited to:

•    Refusal to hire or promote, or demotion or discharge of an individual because of membership in a protected class.

•    Denial of equal pay or benefits in whole or in part because of membership in a protected class.

•    On the job segregation, or exclusion from Company sponsored social or recreational activities.

Harassment is unwelcome verbal, visual, or physical conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Such conduct constitutes harassment when:

•    Submission to the conduct is made either an explicit or implicit condition of employment; or

•    Submission to or rejection of the conduct is used as the basis for an employment decision; or

•    The harassment unreasonably interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment.

Harassing conduct includes, but is not limited to:

•    Verbal conduct such as epithets, derogatory, offensive, or explicit comments, slurs or, in the case of sexual harassment, unwanted sexual advances, invitations, or comments.

•    Visual conduct such as the display of derogatory, offensive, or explicit posters, photography, cartoons, drawings or gestures.

•    Physical conduct such as assault, unwanted touching, blocking normal movement or interfering with work, directed at the employee because of his/her sex, race or other protected status.

•    Threats and/or demands to submit to sexual requests in order to keep one's job or avoid some other loss, and offers of job benefits in return for sexual favors.

•    Retaliation for having reported or threatened to report harassment.

IV.    PROCEDURE:

A.    EMPLOYEE RESPONSIBILITY: If an incident occurs where an employee feels he or she is being wrongfully discriminated against or is the victim of harassment, he or she should report the incident to the division Human Resource Manager as soon as possible, but in no event later than 72 hours after the incident occurs. The complaint shall be in writing on a form to be provided by the Human Resources Department and shall specify the date, time, details of the incident or incidents, the name(s) of the individual(s) involved and the name(s) of any witness(es).

B.    COMPANY RESPONSIBILITY: The Human Resource Manager will immediately undertake an investigation and will document his or her findings in writing. If the Company determines that prohibited discrimination or harassment has occurred, effective remedial and/or disciplinary action will be taken which is commensurate with the severity of the offense. In all cases a written report of the conclusions of the Human Resource Manager and action taken by the Company will be supplied to the employee and all implicated personnel. The Company will not retaliate against the employee for filing a complaint and will not tolerate retaliation by supervisors and/or co-workers.

## ACKNOWLEDGEMENT OF POLICY

I acknowledge having read and received a copy of the above non-discrimination/harassment policy. I specifically recognize and agree that, while the company has a strict policy of investigating alleged acts of discrimination and/or harassment and taking corrective action or disciplining those involved in proven cases, no investigation of any alleged incident can be commenced or disciplinary/corrective action taken unless the incident is reported by the aggrieved employee. I further specifically acknowledge that I have the affirmative obligation and responsibility to report, in the manner and time period described in the policy, any incident of discrimination or harassment to which I feel I am subjected.

_Chester A. Staples   40473_                    _Chester A. Staples_
PRINT NAME/BADGE NO.                                 EMPLOYEE'S SIGNATURE

Date: _8-10-13_

State Enforcement Procedure
Discrimination and harassment and retaliation for opposing discrimination or harassment or participating in investigations of allegations of discrimination or harassment are illegal. Complaints of discrimination or harassment also may be directed to the Hawaii Civil Rights Commission ("HCRC") which has the authority to conduct investigations of the facts. The deadline for filing complaints with the HCRC is 180 days from the date of the alleged unlawful conduct. If the HCRC believes that a complaint is valid and settlement efforts fail, the employee may file a lawsuit in court. Both the HCRC FEHC and the courts have the authority to award monetary and nonmonetary relief in meritorious cases. You can contact the nearest HCRC or the EEOC at locations listed on our posters or by checking the state government listings in your local telephone directory.

BAE Systems Hawaii Shipyards
Non-Discrimination and Harassment
Revised 07/01/05

RECEIVED
AUG 19 2013
By _____

## BAE SYSTEMS CODE OF CONDUCT

I acknowledge and confirm that I have received a copy of the BAE Systems Code of Conduct. I have read this document and agree that while in the employment of BAE Systems I will conduct myself in accordance with BAE Systems' Code of Conduct.

_Chester A. Styple_
(Signature)

_Chester A. Staples_
(Printed Name)

_10-24-11_
(Date)

_25640473_
(Employee ID Number)

Detach this form from the document and return it to your line manager or supervisor.



**BAE SYSTEMS**
REAL PERFORMANCE. REAL ADVANTAGE.



**Hawaii Shipyards**

## NON-DISCRIMINATION/HARASSMENT POLICY

I.    SCOPE: This policy applies to all employees of all divisions of BAE Systems Hawaii Shipyards (the "Company").

II.    POLICY: The Company is committed to providing a work environment free of unlawful discrimination or harassment. The Company maintains a strict policy prohibiting discrimination, sexual harassment or harassment based on race, sex, religious creed, color, national origin, ancestry, handicap, sexual orientation, medical condition, mental disability, physical disability (including persons infected with the HIV virus or persons with AIDS), marital status, age, or any other status protected by federal, state, or local law, ordinance or regulation. This policy applies to _all_ persons employed by the Company and prohibits discrimination or harassment by any other employee, including supervisors and co-workers. Discrimination or harassment in any form, including termination, denial of promotion, verbal, physical and visual conduct, threats, demands and retaliation, is prohibited. Violation of this policy will result in discipline, which may include suspension without pay or discharge, depending on the seriousness of the violation.

III.    DISCRIMINATION/HARASSMENT DEFINED:

Discrimination is disparate treatment of an individual based in whole or part on the individual's sex, race, ancestry, handicap, sexual orientation, mental condition, marital status, age, or other protected status. Discrimination includes, but is not limited to:

- Refusal to hire or promote, or demotion or discharge of an individual because of membership in a protected class.
- Denial of equal pay or benefits in whole or in part because of membership in a protected class.
- On the job segregation, or exclusion from Company sponsored social or recreational activities.

Harassment is unwelcome verbal, visual, or physical conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Such conduct constitutes harassment when:

- Submission to the conduct is made either an explicit or implicit condition of employment; or
- Submission to or rejection of the conduct is used as the basis for an employment decision; or

- The harassment unreasonably interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment.

Harassing conduct includes, but is not limited to:

- Verbal conduct such as epithets, derogatory, offensive, or explicit comments, slurs or, in the case of sexual harassment, unwanted sexual advances, invitations, or comments.
- Visual conduct such as the display of derogatory, offensive, or explicit posters, photography, cartoons, drawings or gestures.
- Physical conduct such as assault, unwanted touching, blocking normal movement or interfering with work, directed at the employee because of his/her sex, race or other protected status.
- Threats and/or demands to submit to sexual requests in order to keep one's job or avoid some other loss, and offers of job benefits in return for sexual favors.
- Retaliation for having reported or threatened to report harassment.

IV.    PROCEDURE:

A.    EMPLOYEE RESPONSIBILITY: If an incident occurs where an employee feels he or she is being wrongfully discriminated against or is the victim of harassment, he or she should report the incident to the division Human Resource Manager as soon as possible, but in no event later than 72 hours after the incident occurs. The complaint shall be in writing on a form to be provided by the Human Resources Department and shall specify the date, time, details of the incident or incidents, the name(s) of the individual(s) involved and the name(s) of any witness(es).

B.    COMPANY RESPONSIBILITY: The Human Resource Manager will immediately undertake an investigation and will document his or her findings in writing. If the Company determines that prohibited discrimination or harassment has occurred, effective remedial and/or disciplinary action will be taken which is commensurate with the severity of the offense. In all cases a written report of the conclusions of the Human Resource Manager and action taken by the Company will be supplied to the employee and all implicated personnel. The Company will not retaliate against the employee for filing a complaint and will not tolerate retaliation by supervisors and/or co-workers.

### ACKNOWLEDGEMENT OF POLICY

I acknowledge having read and received a copy of the above non-discrimination/harassment policy. I specifically recognize and agree that, while the company has a strict policy of investigating alleged acts of discrimination and/or harassment and taking corrective action or disciplining those involved in proven cases, no investigation of any alleged incident can be commenced or disciplinary/corrective action taken unless the incident is reported by the aggrieved employee. I further specifically acknowledge that I have the affirmative obligation and responsibility to report, in the manner and time period described in the policy, any incident of discrimination or harassment to which I feel I am subjected.

_Chester A. Staples 25640473_          _Chester A. Staples_

PRINT NAME/BADGE NO.                                          EMPLOYEE'S SIGNATURE

Date:    _2-23-11_

<u>State Enforcement Procedure</u>

Discrimination and harassment and retaliation for opposing discrimination or harassment or participating in investigations of allegations of discrimination or harassment are illegal. Complaints of discrimination or harassment also may be directed to the Hawaii Civil Rights Commission ("HCRC") which has the authority to conduct investigations of the facts. The deadline for filing complaints with the HCRC is 180 days from the date of the alleged unlawful conduct. If the HCRC believes that a complaint is valid and settlement efforts fail, the employee may file a lawsuit in court. Both the HCRC FEHC and the courts have the authority to award monetary and nonmonetary relief in meritorious cases. You can contact the nearest HCRC or the EEOC at locations listed on our posters or by checking the state government listings in your local telephone directory.

# EXHIBIT 3

**BAE SYSTEMS**

# Disciplinary Notice

Badge #: 25640473

Employee's Name: Chester Staples

Division: Production

Department: 080 Labor

Job Code: Production Labor

The following action was observed and hereby recorded on or about:

Date: 2/4/16   Time: 1600   ☑ a.m ☐ p.m.   Location: USS Halsey

☐ Absenteeism       ☐ Conduct          ☐ Insubordination      ☑ Safety Rules Violation
☐ Carelessness      ☐ Dishonesty       ☐ Low Productivity     ☐ Tardiness
☑ Company Policy Violation  ☐ Housekeeping  ☐ Poor Workmanship   ☐ Other:

Details of Infraction (must be completed):

On 2/4/16, Ship Fitter/Welder, Chester Staples, was scheduled to work from 1600-0230. Chester Staples was assigned to remove a beam in USS Halsey Generator Room 3. Upon initiating his work, Chester needed scaffolding to be modified and lowered it by 2 feet. Chester Staples decided to modify the scaffolding himself and change the configuration in order to accomplish his work.

The next night 2/5/16 Chester Staples self-reported to his night shift supervisor, David Merced, that he modified the staging. Upon further investigation, David Merced found the scaffolding that was "Red Tagged-Danger" and deemed unsafe by Amscaff Competent Person. The scaffolding needed to be re-configured and re-certified. David Merced explained to Chester Staples the importance to have a scaffold competent person to modify and certify the staging.

Chester Staples was in direct violation of BAE Systems Procedure 1100-42, Scaffolding and Staging which states, "Only a scaffold competent person is qualified to assess the safety and readiness for use of a particular stage of scaffold. The erection of any scaffold is to be undertaken only under the supervision of a competent person". Chester Staples also failed to follow paragraph 5.4.3 which states, "Scaffolding user responsibilities to refrain from modifying or altering the scaffold in any way."

Chester Staples had training on Scaffolding Awareness on 4/29/15.

Comments:

Chester Staples is not a scaffold competent person and at no time should he be erecting, dismantling, altering or modifying scaffolding.

Safety is our #1 priority and BAE Systems Hawaii Shipyards strives for a safe working environment and total accident prevention in the workplace. This safety effort depends on the awareness and attitudes of all employees. Any further violations may result in disciplinary action up to and including termination.

COMPANY ACTION TAKEN:
☐ Verbal Warning
☑ Written Warning
☐ Suspension for _____ day(s). From _____ to _____   Return to work on _____
☐ Separation effective: _____   (Please attach completed Separation Report)

COMPANY & EMPLOYEE ACKNOWLEDGMENT:

Initiator's Name: Brian Adams   Signature: _Fariah Brady_   Date: 2.12.16

Employee's Name: Chester Staples   Signature: _Chester L. Staples_   Date: 2-12-16

Witness/Representative's Name: SHANE K. FERREIRA   Signature: _Shane K. Ferreira Jr_   Date: 2/12/16

HUMAN RESOURCES DEPARTMENT USE ONLY

Discipline Log: 2.17.16   Acknowledgment by: _nefde_   Title: HR Manager/HRBP / HR Assistant   Date: 2/17/16

Revised 8/19/2013

**Salvador, Donovan A (US)**

| | |
|---|---|
| **From:** | Knox, Leander (US) |
| **Sent:** | Friday, February 12, 2016 5:32 AM |
| **To:** | Salvador, Donovan A (US) |
| **Subject:** | Chester Staples |

Morning,

In regards to Chester Staples situation with the staging. The incident took place on Thursday February 4th on nightshift between the hours of 4pm-230am. Chester did not report that he modified the staging until Friday at the start of nightshift. After he reported that he modified the staging, the nightshift supervisor then went down to the space and saw that it was red tagged. The nightshift supervisor then cancelled the firewatchers and reassigned Chester to a new job. Chester lowered the staging 2 ft. to the next rung on the staging. The staging was not in any danger to anyone but BAE trades are not allowed to modify staging which is why the staging was red tagged. The nightshift supervisor spoke to Chester and explained to him what he did wrong and warned him that it was a possibility that he could be written up because of this infraction. The nightshift supervisor called and told the dayshift supervisor about the situation so they could fix it the next day.

Leander A. Knox Jr

1

# EXHIBIT 4

**BAE SYSTEMS**

# SKILLS AND ABILITY LIST

Department:   Shipfitter/Welder
Classification:   Journeyman

Employee's Name: _____

| Skill and Ability | Can Do | Cannot Do |
|---|---|---|
| 1.   Able to perform with limited to no supervision. | _____ | _____ |
| 2.   Knowledgeable with shipboard terminology, nomenclature & location. | _____ | _____ |
| 3.   Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | _____ | _____ |
| 4.   Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | _____ | _____ |
| 5.   Capable in lay-out of plate from shop drawings. | _____ | _____ |
| 6.   Knowledgeable/capable in operation of shear and ironworker. | _____ | _____ |
| 7.   Knowledgeable/capable in targeting  and lay-out work. | _____ | _____ |
| 8.   Capable of being certified to other BAE HSY welding process control procedures. | _____ | _____ |
| 9.   Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement.  See item #11.) | _____ | _____ |
| 10.  Has a minimum of two certs. List certs:    1 _____ | _____ | _____ |
|                                                 2 _____ | _____ | _____ |
| 11.  Capable to interpret specs, ship check, gather materials, and execute job | _____ | _____ |

| | Satisfactory | Needs Work |
|---|---|---|
| 12.   Attendance. | _____ | _____ |
| 13.   Attitude. | _____ | _____ |
| 14.   Ability to communicate. | _____ | _____ |
| 15.   Valid Driver's License | _____ | _____ |

Comments: _____

_____

Prepared by: _____          Date: _____
                Print Name                    Signature

Acknowledged by: _____     Date: _____

# EXHIBIT 5

**BAE SYSTEMS**

## SKILLS AND ABILITY LIST

Department:      Shipfitter/Welder
Classification:   Journeyman

Employee's Name: _CHESTER STAPLES_

| | Skill and Ability | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Able to perform with limited to no supervision. | ✓ | |
| 2. | Knowledgeable with shipboard terminology, nomenclature & location. | | ✓ |
| 3. | Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | | ✓ |
| 4. | Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | | ✓ |
| 5. | Capable in lay-out of plate from shop drawings. | | ✓ |
| 6. | Knowledgeable/capable in operation of shear and ironworker. | | ✓ |
| 7. | Knowledgeable/capable in targeting and lay-out work. | | ✓ |
| 8. | Capable of being certified to other BAE HSY welding process control procedures. | | ✓ |
| 9. | Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement.  See item #11.) | | ✓ |
| 10. | Has a minimum of two certs. List certs:  1 M1-B   2 M11-B.1 | | |
| 11. | Capable to interpret specs, ship check, gather materials, and execute job | | ✓ |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 12. | Attendance. | ✓ | |
| 13. | Attitude. | ✓ | |
| 14. | Ability to communicate. | ✓ | |
| 15. | Valid Driver's License | ✓ | |

Comments: _MR. STAPLES HAS ALOT OF ITEMS TO WORK ON._
_CURRENTLY ON NIGHT SHIFT. WILL ROTATE BACK TO DAY SHIFT TO WORK ON ITEMS._

Prepared by: _WAYLEN ARMSTRONG_                     Date: _5/1/14_
                 Print Name              Signature

Acknowledged by: _____        Date: _____

— _RE-EVALUATE AT A LATER TIME._

# EXHIBIT 6

**BAE SYSTEMS**

## SKILLS AND ABILITY LIST

Department:     Shipfitter/Welder
Classification:  Journeyman

Employee's Name: *CHESTER STAPLES*

| | Skill and Ability | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Able to perform with limited to no supervision. | | ✓ |
| 2. | Knowledgeable with shipboard terminology, nomenclature & location. | | ✓ |
| 3. | Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | | ✓ |
| 4. | Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | | ✓ |
| 5. | Capable in lay-out of plate from shop drawings. | ✓ | |
| 6. | Knowledgeable/capable in operation of shear and ironworker. | | ✓ |
| 7. | Knowledgeable/capable in targeting and lay-out work. | | |
| 8. | Capable of being certified to other BAE HSY welding process control procedures. | | ✓ |
| 9. | Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement. See item #11.) | | ✓ |
| 10. | Has a minimum of two certs. List certs:   1 *HI-8*   2 *HII-8.1* | | ✓ |
| 11. | Capable to interpret specs, ship check, gather materials, and execute job | | |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 12. | Attendance. | ✓ | |
| 13. | Attitude. | ✓ | |
| 14. | Ability to communicate. | ✓ | |
| 15. | Valid Driver's License | | |

Comments: *CHESTER NEEDS TO WORK ON WELDING & AREAS IDENTIFIED ABOVE.*

Prepared by: *WAYLAN. ARMSTRONG* [signature]          Date: *5/17/16*
　　　　　　　　Print Name　　　　　　　Signature

Acknowledged by: _____          Date: _____

Skills and Ability for Chester Staples                                    Page 2

1. When Chester is given a job assignment, he has to be supervised in order to complete the job. If he is not supervised he will not bring the required tools needed for the job and take long breaks.
2. Chester has little knowledge of ship's locations for the job site. If Chester has not been in the assigned space before, you must walk him to the job site. A journeyman should be able to locate a space using just the space number.
3. Chester cannot go to a job site and identify discrepancies as found or job status.
4. Chester does not have the basic knowledge of the work standards for the various government agencies.
5. Chester is not capable of laying out plates from drawings.
6. Chester can operate shear only. I have inquired about him operating the ironworker, but was informed by Waylen Armstrong that he could not. I have never seen Chester operate the ironworker.
7. Chester has not shown the capabilities to perform lay-outs or targets.
8. Chester currently holds two certifications. I strongly suggest he continue to work on his welding certs and his workmanship before certifying other welding process control procedures.
9. Chester cannot read blue-prints and do lay-outs. He has yet to prove to me he can.
10. Can do
11. Chester cannot execute a job from start to finish, because he cannot read specs, do ship checks, or gather materials.
12. Satisfactory
13. Satisfactory
14. Satisfactory
15. Satisfactory

**BAE SYSTEMS**

# SKILLS AND ABILITY LIST

Department:    Shipfitter/Welder
Classification:   Journeyman

Employee's Name: _Chester STAPLOS_

| | Skill and Ability | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Able to perform with limited to no supervision. | | ✓ |
| 2. | Knowledgeable with shipboard terminology, nomenclature & location. | | |
| 3. | Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | | ✓ |
| 4. | Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | | ✓ |
| 5. | Capable in lay-out of plate from shop drawings. | ✓ | |
| 6. | Knowledgeable/capable in operation of shear and ironworker. | | |
| 7. | Knowledgeable/capable in targeting and lay-out work. | ✓ | |
| 8. | Capable of being certified to other BAE HSY welding process control procedures. | | ✓ |
| 9. | Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement. See item #11.) | | ✓ |
| 10. | Has a minimum of two certs. List certs:  1  M(-B    2  M11-B1 | | |
| 11. | Capable to interpret specs, ship check, gather materials, and execute job | | ✓ |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 12. | Attendance. | ✓ | |
| 13. | Attitude. | ✓ | |
| 14. | Ability to communicate. | ✓ | |
| 15. | Valid Driver's License | | |

Comments: _____

Prepared by: _Kimo Kaaima_ _____   Date: _____
           Print Name          Signature

Acknowledged by: _____   Date: _____

**Chester Staples**

1. Needs more supervision more often than others.

2. Chester has a hard time locating locations inside of the ship.

3. Chester cannot perform a 006 before start of work.

8. Needs to work on his workmanship before taking on any weld procedures.

11. Cannot read specs or ship checks or gather material.

**BAE SYSTEMS**

# SKILLS AND ABILITY LIST

Department:      Shipfitter/Welder
Classification:  Journeyman

Employee's Name: _Chester  Staples_

| | Skill and Ability | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Able to perform with limited to no supervision. | | ✓ |
| 2. | Knowledgeable with shipboard terminology, nomenclature & location. | | ✓ |
| 3. | Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | | ✓ |
| 4. | Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | | ✓ |
| 5. | Capable in lay-out of plate from shop drawings. | | ✓ |
| 6. | Knowledgeable/capable in operation of shear and ironworker. _shear only_ | ✓ | |
| 7. | Knowledgeable/capable in targeting and lay-out work. | | ✓ |
| 8. | Capable of being certified to other BAE HSY welding process control procedures. | | ✓ |
| 9. | Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement. See item #11.) | | ✓ |
| 10. | Has a minimum of two certs. List certs:  1  M i B     2  M II ~ B.i | | |
| 11. | Capable to interpret specs, ship check, gather materials, and execute job | | ✓ |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 12. | Attendance. | ✓ | |
| 13. | Attitude. | ✓ | |
| 14. | Ability to communicate. | ✓ | |
| 15. | Valid Driver's License | ✓ | |

Comments: _See  Attached_

Prepared by: _Leander Knox_ _____ Date: _5-17-16_
                Print Name          Signature

Acknowledged by: _____ Date: _____

SKILLS AND ABILITY LIST

Re: Chester Staples


1. Chester does not perform work without supervision. Unable to perform journeyman's duties IAW skills & ability list.

2. Not able to locate spaces onboard ship without supervisor identifying work areas.

3. Chester is not capable to accomplish accurate job memos. No past history recorded that Chester did accomplish the following.

4. Not familiar with Navy MIL-STD.

6. Able to use shear only. Never witnessed Chester utilizing Iron Worker equipment.

7. Does not perform duties to target or lay out work due to not acknowledging that he can read blue prints.

8. Is not able to pass any other weld test, based upon welding performance onboard ship.

9. Does not show any knowledge of blue print reading. Never asked to see blueprints for any task.

11. Not able to interpret specs, ship checks, gather material or execute job as it states.

5/17/16

# EXHIBIT 7

**BAE SYSTEMS**

# SKILLS AND ABILITY LIST

Department:      Shipfitter/Welder
Classification:  Journeyman

Employee's Name:  _Chester Staples_

| | Skill and Ability | Can Do | Cannot Do |
|---|---|---|---|
| 1. | Able to perform with limited to no supervision. | ✓ | |
| 2. | Knowledgeable with shipboard terminology, nomenclature & location. | ✓ | |
| 3. | Knowledgeable to initiate accurate job memos (discrepancies, as founds, job status, etc.) | ✓ | |
| 4. | Knowledgeable with differing work standards for the various government agencies (Navy vs. Coast Guard vs. MSC etc.). | ✓ | |
| 5. | Capable in lay-out of plate from shop drawings. | ✓ | |
| 6. | Knowledgeable/capable in operation of shear and ironworker. | ✓ | |
| 7. | Knowledgeable/capable in targeting and lay-out work. | ✓ | |
| 8. | Capable of being certified to other BAE HSY welding process control procedures. | ✓ | |
| 9. | Knowledgeable of Blue Print Reading and Layouts. (Note: This item can be used to qualify for the certs requirement.  See item #11.) | | ✓ |
| 10. | Has a minimum of two certs. List certs:   1  MI-B   2  Mil-b-1 | | |
| 11. | Capable to interpret specs, ship check, gather materials, and execute job | ✓ | |

| | | Satisfactory | Needs Work |
|---|---|---|---|
| 12. | Attendance. | ✓ | |
| 13. | Attitude. | ✓ | |
| 14. | Ability to communicate. | ✓ | |
| 15. | Valid Driver's License | | |

Comments:  _Please See Attached Email + Cover Sheet_

Prepared by:  _Brian Adams_                _(B)_                Date:  _8-8-16_
                 Print Name                  Signature

Acknowledged by:  _____          Date:  _____

The questions asked and Chester's answers are listed below:

Please note that the Union Rep was taking notes as well.

1Q. I asked if he could identify the Drawing #.
1A. Chester did identify the drawing #.

2Q. I asked if he could identify what the REV (Revison) was.
2A. Chester could not identify the Revision was.

3Q. I asked if he knew when looking at a Plan View in what direction was this view being looked at.
3A. Chester could not tell me in what direction the Plan View was being looked at.

4Q. I asked him to where the Center Line was on the Plan View.
4A. Chester pointed to something other than the Centerline and could not identify it. I showed had to him.

5Q. I asked him to show me where the Longitudinal was on the Plan View.
5A. Chester could not identify where the Longitudinal was nor in what direction it was running and I had to show him what they were.

6Q. I showed him a drawing and told him I wanted to look at this drawing from a different direction (View) and asked him to show me how he would find it and to show it to me.
6A. Chester could not identify how to look at the drawing from a different View. At this point I asked him if he knew what directional symbols were and he did not know. I showed him what directional symbols were on the drawing and he still could not show me the drawing I requested showing me the different view from another direction. The drawing I wanted him to show me looking at the different direction (View) was on the same page directly below the first drawing I was questioning him about. I had to show him where it was.

7Q. I asked him to show me the cutline on the same drawing as listed above in Question 6.
7A. Chester pointed to the letters CL (This was incorrect). What he pointed to was the Centerline Beam and I told him what that was.

8Q. I drew him a symbol "$" and asked if he knew what that it was.
8A. Chester did not know what this was, so I told him it was the symbol for Cutline.

# EXHIBIT 8

# Employee Clock In and Outs

7/1/2016

| EmployeeID | EmployeeName | Department | shift | Clock Date | Missing | Clock In | Clock Out |
|---|---|---|---|---|---|---|---|
| Department: 010 | | | | | | | |
| ClockDate: 07/01/2016 | | | | | | | |
| 25640473 | Staples, Chester | 10 | 1 | 7/1/2016 | --- | 3:49 PM | 12:30 AM |
| ClockDate: 07/02/2016 | | | | | | | |
| 25640473 | Staples, Chester | 10 | 1 | 7/2/2016 | --- | 3:55 PM | 2:30 AM |
| ClockDate: 07/03/2016 | | | | | | | |
| 25640473 | Staples, Chester | 10 | 1 | 7/3/2016 | --- | 3:52 PM | 12:30 AM |

| STATE OF HAWAI'I<br>CIRCUIT COURT<br>OF THE FIRST CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER<br>18-1-1499-00<br>JPC |
|---|---|---|

| PLAINTIFF, | VS. | DEFENDANT. |
|---|---|---|
| Chester A. Staples | | BAE Systems Hawaii Shipyards Inc |

PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)

Chester A. Staples
91-915 Hoohomalu Pl
Ewa Beach HI 96706
808-391-3512

## TO THE ABOVE-NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon

_____ Chester A. Staples _____

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED<br>SEP 21 2018 | CLERK | |
|---|---|---|
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | Circuit Court Clerk | |

In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

eprographics (07/11)                                                                    SUMMONS TO ANSWER CIVIL COMPLAINT  1C-P-787